IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISRAEL ROMAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) JURY TRIAL |
| THE CITY OF MOUNT VERNON; POLICE | ) DEMANDED |
| COMMISSIONER SHAWN HARRIS; | ) |
| POLICE COMMISSIONER GLENN SCOTT; | ) |
| DET. ANTHONY BURNETT, Badge No. 109; | ) |
| DET. "JOHN" MITCHELL, Badge No. 163; P.O. | ) **COMPLAINT** |
| TARIQ K. HYLTON, Badge No. 4680; P.O. "JOHN" | ) |
| CERQUA, Badge No. XXX; P.O. SAIED KAROO, | ) |
| Badge No. 210; P.O. "JOHN" LLOYD | ) |
| Badge No. XXXX; LT. NICHOLAS MASTROGIORGIO, | ) |
| Badge No. 3019; SGT. JANIE MCKENNIE, Badge | ) |
| No. 3059; and unidentified Mount Vernon | ) |
| Police Department employees and officers, | ) |
| | |
| Defendants. | |

NOW COMES Plaintiff ISRAEL ROMAN and complaining of

DEFENDANTS THE CITY OF MOUNT VERNON (hereinafter, "City"),

POLICE COMMISSIONER SHAWN HARRIS, POLICE COMMISSIONER GLENN

SCOTT, DET. ANTHONY BURNETT, DET. "JOHN" MITCHELL, P.O. TARIQ K.

HYLTON; P.O. "JOHN" CERQUA; P.O. SAIED KAROO; P.O. "JOHN" LLOYD;

LT. NICHOLAS MASTROGIORGIO; SGT. JANIE MCKENNIE; and UNKNOWN

MOUNT VERNON POLICE DEPARTMENT EMPLOYEES AND OFFICERS, alleges

as follows:

### Introduction

1.   The City of Mount Vernon, through members of the Mount

Vernon Police Department, including Defendant Officers, and

other unknown members of the Mount Vernon Police Department, routinely conducts illegal strip searches and visual and physical body cavity searches[1] of Mount Vernon's citizens, in violation of the law and in violation of the City of Mount Vernon's own purported policies.  These illegal practices disproportionately affect Mount Vernon's residents of color, particularly African American and Latino residents.

2.    Plaintiff Israel Roman, who is Latino, was a victim of one of these illegal strip and visual body cavity searches, which he was subject to after his false and illegal arrest following a dispute with a neighbor.  The strip and visual body cavity search to which he was subjected was without justification, was humiliating and degrading, and served no valid law enforcement purpose.

3.    The United States Constitution requires that all searches be reasonable.  The United States Constitution requires that, to justify the strip search of an arrestee, law enforcement officials must point to specific, objective facts and rational inferences that establish particularized reasonable suspicion for that arrestee.  The standard for visual body

---

[1] A "strip search" occurs when a suspect is required by law enforcement to remove his clothes. A "visual body cavity search" is one in which the police observe the suspect's body cavities without touching them.  A "manual body cavity search" or a "physical body cavity search" includes some touching or probing of a body cavity that causes a physical intrusion beyond the body's surface.

cavity searches is even higher:  law enforcement must have a "specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity."  That is because courts have long recognized that, while strip searches are "uniquely intrusive," visual body cavity searches are "invasive and degrading, occasioning a serious invasion of privacy and working a significant harm to a person's bodily integrity."

4.    Invasive and degrading searches, whether strip or body cavity searches, "cannot be routinely undertaken as incident to all drug arrests or permitted under a police department's blanket policy that subjects persons suspected of certain crimes to these procedures."  Yet this is just what the City of Mount Vernon has done, not only for all arrestees charged with narcotics offenses, but also for those, like Mr. Roman, who are charged with non-narcotic crimes as well as violations, including such minor violations as loitering.  This is not only illegal, but intolerable.

5.    Despite the clear legal requirements for strip or body cavity searches, and the Mount Vernon Police Department's own written policy purportedly setting forth numerous, specific, particularized limits on the use of strip and/or body cavity searches, the Defendant Officers and other MVPD Officers routinely strip and/or body cavity search detainees and

3

arrestees without any semblance of the legal prerequisites necessary to support these invasive and demeaning searches and in the absence of the necessary preconditions required to make them safe and private.

6.    Conducting strip and/or body cavity searches on persons, including Plaintiff, without particularized suspicion borne of the facts on an individual case, is humiliatingly invasive, degrading, unconstitutional, and flatly prohibited by settled law.

7.    Israel Roman brings this civil rights action pursuant to the United States Constitution, as amended, the Civil Rights Act of 1871, 42 U.S.C. § 1982, and the New York State Constitution.  Mr. Roman seeks redress for Defendants' deprivation, under color of state law, of his rights, privileges, and immunities secured by the Constitution and laws of the United States and the State of New York.

**Jurisdiction and Venue**

8.    This action arises under the Fourth and Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the New York State Constitution and laws of the State of New York.

9.    This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

4

10.   Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, all of the parties reside in the Southern District of New York, and the events giving rise to the claims asserted herein all occurred within this district.

**Parties**

11.   Plaintiff Israel Roman is 29 year old Latino man who, until recently, resided in Mount Vernon, New York.

12.   Defendant City of Mount Vernon is a New York municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in Mount Vernon, New York.

13.   Defendant City of Mount Vernon maintains the City of Mount Vernon Police Department (MVPD), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, City of Mount Vernon.

14.   Defendant Police Commissioner Shawn Harris was a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as the Mount Vernon Police Commissioner.

15.   Defendant Police Commissioner Glenn Scott is a duly sworn police officer of the MVPD at all times relevant to this

action, acting under color of law and within the scope of his employment as the Mount Vernon Police Commissioner.

16.   Defendant Detective Anthony Burnett is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

17.   Defendant Detective "John" Mitchell is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer. Defendant Mitchell's first name is unknown; he is believed to use Badge No. 163.

18.   Defendant Police Officer Tariq K. Hylton is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

19.   Defendant Police Officer "John" Cerqua is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

20.   Defendant Police Officer Saied Karoo is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

21.   Defendant Police Officer "John" Lloyd is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

22.   Defendant Lieutenant Nicholas Mastrogiorgio is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

23.   Defendant Sergeant Janie McKennie is a duly sworn police officer of the MVPD at all times relevant to this action, acting under color of law and within the scope of his employment as a Mount Vernon police officer.

24.   Unidentified MVPD Officers and Employees are current and/or former employees, officers, and/or supervisors of the Mount Vernon Police Department who at all relevant times were acting under color of law and within the scope of their employment.

25.   Collectively, Defendants Harris, Scott, Burnett, Mitchell, Hylton, Cerqua, Karoo, Lloyd, Mastrogiorgio, McKennie, and the Unidentified MVPD Officers and Employees are referred to herein as the "Defendant Officers."  Each of the Defendant Officers is sued in his, her, and/or their individual capacities.

7

26.   At all times hereinafter mentioned, the Defendant Officers, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the City of Mount Vernon.

27.   Each and all of the acts defendants alleged herein were done by said defendants while acting within the scope of their employment by Defendant City of Mount Vernon.

**Israel Roman is Falsely Arrested, Illegally Strip and Visually Body Cavity Searched, and Maliciously Prosecuted**

28.   On October 5, 2019, Mr. Roman's young daughter was invited to celebrate a friend's birthday by that friend's father.  Mr. Roman and his partner (his daughter's mother) agreed that she could go to celebrate her friend's birthday.  At the end of the day, the adults disagreed about the arrangements for getting Mr. Roman's daughter home.  The disagreement escalated and MVPD police were called by both Mr. Roman's partner and the other child's father (hereinafter, the "Complaining Witness").  MVPD officers, including Defendants Hylton, Cerqua, and Karoo arrived on the scene and encountered Mr. Roman and his partner, who were waiting for them in front of the building.  Mr. Roman, his partner, and the officers returned to the Complaining Witness's apartment.

8

29.  Although Mr. Roman had committed no crime, he was nevertheless arrested and taken to the Mount Vernon Police Department, where he was charged with Assault in the Second Degree, a violation of PL 120.05, an E Felony.

30.  Defendant Hylton's sworn incident report, which was signed by his supervisor, Defendant McKennie, contained material false statements.

31.  Soon after arriving at the Mount Vernon Police Department, an unknown MVPD officer placed Mr. Roman in a cell and directed him to remove his clothing.  Mr. Roman objected but was told he had to participate in the strip search.  There was no basis for the unknown MVPD officer to believe that Mr. Roman had secreted contraband, weapons, or drugs within his clothing and therefore no legal basis to demand that Mr. Roman strip.

32.  Despite the absence of any legal authority, the unknown police officer directed Mr. Roman to remove each article of clothing, shake it out, and set it aside.  Mr. Roman was directed to remove and then replace his top, shoes, socks, pants, and underwear, which he did.

33.  This strip search revealed no contraband, weapons, or drugs, because Mr. Roman possessed no contraband, weapons, or drugs.  As a result, there was no legal basis to conduct a visual body cavity search.  Nevertheless, the unknown MVPD officer directed Mr. Roman to turn around, lift his genitals,

squat, and cough. Mr. Roman again objected to doing this but was
told by the unknown MVPD officer to comply, so he did.  As a
result, his buttocks, anus, and genitals were exposed to the
unknown MVPD officer.

34.  This visual body cavity search revealed no contraband,
weapons, or drugs, because Mr. Roman possessed no contraband,
weapons, or drugs.

35.  Following this strip and body cavity search, Mr. Roman
was placed in another cell where he was held overnight.  The
next day, he was interviewed by Defendants Burnett and Mitchell,
where he denied any wrongdoing.  Mr. Roman's partner was also
interviewed by Defendants Burnett and Mitchell; she took sole
responsibility for any physical contact with the complaining
witness in this case.  The Complaining Witness in this case
provided statements to Defendant Burnett, in which he stated
that it was Mr. Roman's partner who hit and injured him.  The
Complaining Witness alleged that Mr. Roman pushed, but did not
hurt, him.  While Mr. Roman disputes and has always disputed
ever pushing the Complaining Witness, the Complaining Witness's
allegations were insufficient to make out the elements of
Assault in the Second Degree.  Despite this infirmity,
Detectives Burnett and Mitchell charged Mr. Roman with Assault
in the Second Degree.

36.   Defendants Mastrogiorgio and McKennie were supervising officers who approved Mr. Roman's arrest and charges, despite their being no legal basis for same.

37.   Mr. Roman was held at the Mount Vernon jail until October 7, 2019 when he was presented to a judge and released on his own recognizance.   During this time, Mr. Roman was separated from his children.

38.   On October 7, 2019, Mr. Roman was falsely charged by a felony complaint sworn to by Detective Burnett with Attempted Assault in the Second Degree, a violation of Penal Law 110/120.05, an E Felony.   The felony complaint was insufficient on its face with respect to Mr. Roman.    As described above, Mr. Roman did not assault or attempt to assault the complaining witness and there was no evidence that he did assault him.   Mr. Roman has at all times denied the allegations in this felony complaint and Defendant Burnett knew they were false when he swore out the complaint.

39.   Defendants Mitchell, Hylton, Cerqua, Karoo, Lloyd, Mastrogiorgio, and McKennie, having observed and/or participated in the investigation of the events described above, knew that Mr. Roman had not committed any crime and therefore that the filing of the felony complaint violated Plaintiff's rights. Despite this knowledge, these defendants took no steps to intervene to prevent the violation of Plaintiff's rights.

11

40.   While Defendant Burnett and, potentially, others created material, false information and forwarded it to a prosecutor, Defendant Officers, including but not necessarily limited to, Defendants Mitchell, Hylton, Cerqua, Karoo, Lloyd, Mastrogiorgio, and McKennie withheld material exculpatory information from the prosecutor. Defendant Burnett also withheld material exculpatory information from the prosecutor.

41.   At his arraignment, Mr. Roman pleaded not guilty and was released on his own recognizance.  He appeared as required at every court date.

42.   As a result of Mr. Roman's false arrest and malicious prosecution, the Office of Children and Family Services opened an investigation into suspected child abuse or maltreatment. That investigation was determined to be "unfounded" on December 18, 2019.

43.   On November 18, 2019, a Superseding Misdemeanor Information was sworn to by Defendant Lloyd, in which Mr. Roman and his partner were charged with Assault in the Third Degree, a violation of Penal Law 120.00, an A Misdemeanor; Harassment in the Second Degree, a violation of Penal Law 240.26, a violation; Criminal Possession of a Weapon in the Fourth Degree, a violation of PL 265.01, an A Misdemeanor; and Endangering the Welfare of a Child, a violation of PL 260.10, an A Misdemeanor.

44.   At all times, Mr. Roman denied pushing the Complaining Victim and denied any involvement in any crime on October 5, 2019.

45.   On February 24, 2020, the charges against Mr. Roman were dismissed, because he was innocent of the charged crimes.

**Defendant City of Mount Vernon Has For Decades Ignored the Pattern of Illegal Strip and Body Cavity Searches, False Arrests, and Malicious Prosecutions, Instead Rewarding Officers Engaged in this Illegal Conduct**

46.   Defendant City of Mount Vernon has long been on notice that MVPD officers routinely engage in illegal strip and body cavity searches of arrestees, as well as other misconduct including fabricating crimes, falsifying reports, and illegally detaining individuals who have committed no crime, particularly against Black and Latino citizens.

47.   According to the Mount Vernon Police Department Manual, Defendants Harris and Scott, as Commissioners of Public Safety for the City of Mount Vernon during the relevant period, were specifically responsible for the "supervision, and control of the government, administration, disposition and discipline of the Police Department and of its officers . . ." The Mount Vernon Police Department Manual further provides that the Commissioner of Public Safety "is responsible for the supervision and field operational services of the Mount Vernon Police Department and exercise [sic] direct supervision and

13

control of all divisions and units . . ."; that he "shall make,
adopt, and enforce reasonable, rules, orders and regulations not
inconsistent with law. . ." and that he is "authorized and
empowered to make, adopt, promulgate and enforce reasonable
rules, orders and regulations for the government, discipline,
administration and disposition of the officers and members of
the Police Department and for the hearing, examination,
investigation, trial and determinations of charges made prepared
against any Officer or Member of said Department for the neglect
of official duty or incompetence or incapacity . . . or some
delinquency seriously affecting his general character or fitness
for the office; an[d] may in his discretion, punish any officer
or member . . ."

48.   Despite these responsibilities, neither Defendant
Harris nor Defendant Scott took any action to address the
illegal misconduct described herein, which was rampant during
the relevant period within the Mount Vernon Police Department.

49.   Similarly, according to the Mount Vernon Police
Department Manual, Defendants Mastrogiorgio, McKennie, Burnett,
and Mitchell, by virtue of their ranks, were obligated to
supervise other members of the Mount Vernon Police Department,
including Defendant Officers named herein, and in so supervising
others, ensure that their duties were carried out legally, to

14

"develop and improve" individuals under their command, inspect the work of others, and report misconduct.

50.   Despite these responsibilities, neither Defendant Mastrogiorgio, McKennie, Burnett, or Mitchell took any action to address the illegal misconduct described herein, which was rampant during the relevant period within the Mount Vernon Police Department.

51.   With respect to the routine, illegal strip and body cavity searches of arrestees, MVPD's official policy regarding searches of arrestees could not be more different than what goes on in practice.  The MVPD policy governing the search of arrested persons (Procedure No. 3.045), issued on January 4, 1993, provides, in relevant part:

> a. "a person arrested will not be subject to a full strip search unless there is a rational basis for doing so";
>
> b. "The Desk Officer or supervisor present will decide if a strip search should be conducted and is responsible that the search is conducted properly";
>
> c. "A 'Strip Search' will be utilized when the arresting officer reasonably suspects that weapons, contraband or evidence may be concealed upon the person or in their underclothing, in such a manner that they may not be discovered by the previous

15

search methods.  Other factors that should be considered in determining the necessity for a 'Strip Search' include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches."

d. "A 'Strip Search' will be conducted by a member of the same sex as the arrested person in a secure area in outermost privacy and with no other arrestee present.  It should not be necessary to touch the subject's body, except for the examination of the hair."

e. "If a 'Strip Search' is conducted, such information will be entered under 'Details' in the Arrest Book. A subsequent 'Strip Search' will not be conducted unless there is reasonable belief that the subject has acquired a weapon or contraband."

f. "Under no condition shall a 'Body Cavity Search' be conducted by any Member of the Department.  As a general rule, a warrant must be obtained before a 'Body Cavity Search' is performed.  For a 'Body Cavity Search' to be justified, there must be more than a mere chance of finding something.  The standard to be applied is "reasonableness' on the

facts.  Only where the arrestee or police officer would clearly be in danger or if there was a clear indication that evidence would be destroyed, should a 'Body Cavity Search' be conducted.

g. "Compelling, exigent circumstances must be presented before the warrant requirement can be waived."

h. "Due to availability of judges in Mount Vernon, a warrant will be obtained before a 'Body Cavity Search' is conducted.

i. "A 'Body Cavity Search' must be conducted by a medical doctor in privacy, in an examining room (doctor's office, hospital) so as to insure hygienic surroundings and minimal discomfort."

j. "If a 'Body Cavity Search' is considered necessary, the Duty District Attorney and Captain will be advised and their instructions complied with and entered in the Arrest Book."

52.  But this policy is regularly and routinely disregarded and the City has long been on actual and/or constructive notice that MVPD officers including the Defendant Officers routinely conduct illegal strip and/or body cavity searches of detainees and arrestees in Mount Vernon.

53.  As far back as 1999, if not earlier, an illegal strip search conducted by members of the MVPD Narcotics Squad of the

17

MVPD gave rise to a successful civil rights lawsuit.  *See Flores v. City of Mount Vernon, et al.,* 41 F. Supp.2d 439 (1999). Since then, numerous civil rights lawsuits have alleged illegal strip and body cavity searches by Mount Vernon Police Department Officers.  *See, e.g., Scott v. City of Mount Vernon et al.*, 14 CV 4441 (SDNY) (Members of a single family alleged that members of the Mount Vernon Police Department unlawfully entered their home, detained them without reason, and unlawfully strip searched one member of the family.  This case was settled for $175,000.[2]); *Williamson v. Mount Vernon Police Dept. et. al.*, 15 CV 5635 (S.D.N.Y. 2015), (pro se complaint alleging MVPD officers conducted illegal physical body cavity searches on him in an apartment following an illegal arrest); *Rutherford and Gallman v. City of Mount Vernon, et al.,* 18-cv-10706 (same); *Long v. City of Mount Vernon*, 18-cv-09068 (same).

54.  The City has also long been on actual and/or constructive notice that MVPD officers including the Defendant Officers routinely fabricate crimes, falsify reports, illegally detain individuals who have committed no crime, and use

---

[2] Ernie Garcia, "Mount Vernon to pay $175,000 in alleged home invasion", LoHud.com, Aug. 16, 2017, https://www.lohud.com/story/news/local/westchester/mount-vernon/2017/08/16/strip-search/570586001/

excessive force against citizens, particularly Black and Latino citizens.

55.   Pending and settled civil rights cases have alleged just this type of misconduct.  In addition to *Scott*, described above, examples include:  *Nunez v. City of Mount Vernon et al.*, 14 CV 08530 (SDNY) (Two brothers allege they were wrongly arrested and beaten by Mount Vernon Police Department Officers. This case was settled for $250,000.); *Fonseca v. City of Mount Vernon et al.*, 5459/2013 (N.Y. Sup.)(An individual alleged false arrest, malicious prosecution and excessive force.  This case was settled for $75,000.); *Giles v. City of Mount Vernon et al.*, 20 CV 5119(2020)(Plaintiff alleges that MVPD officers framed him for a narcotics offense, criminal charges that were ultimately dismissed.); *Govan v. City of Mount Vernon, et al.*, 19 CV 8830 (S.D.N.Y.)(Plaintiff alleges that MVPD officers framed him for a narcotics offense, falsely arrested and maliciously prosecuted him, and used excessive force against him.)

56.  Defendant City of Mount Vernon has also received numerous complaints by civilians about illegal strip and/or body cavity searches through formal and informal channels, as well as complaints about MVPD officers fabricating crimes, falsifying reports, illegally detaining individuals who have committed no

19

crime, and using excessive force against citizens.[3] These complaints, made over years, demonstrated a clear and obvious pattern of the type of misconduct at issue in this case.

57.   In addition to the above, the undersigned has also spoken with numerous individual residents of Mount Vernon who have described being required to submit to strip and/or body cavity searches while detained by MVPD officers and upon arrest by Mount Vernon Police Department officers in the absence of any articulable suspicion that they had secreted contraband, drugs, or weapons in their clothing or within their bodies.

58.   In addition, supervisors within the Department, specifically Defendants Harris, Scott, Burnett, Mitchell, Mastrogiorgio, and McKennie, had knowledge of the repeated complaints of strip and body cavity searches and other misconduct.

59.   In fact, numerous illegal strip and body cavity searches were conducted at the Mount Vernon Police Department, where supervisors were knowledgeable of the illegal searches.

60.   Indeed, upon information and belief, many of these illegal searches were video recorded by the MVPD.

---

[3] *See* George Joseph, "Corruption and Brutality Allegations Against Mount Vernon Detective Are Echoed by Civilian Complaints", GOTHAMIST, March 11, 2020, https://gothamist.com/news/corruption-and-brutality-allegations-against-mount-vernon-detective-are-echoed-civilian-complaints.

61.   Defendants know and at all times material herein have known that they may not institute, enforce, or permit enforcement of a policy or practice of conducting strip and/or visual body cavity searches without particularized reasonable suspicion.

62.   Defendants further know and at all times material herein have known that they may not institute, enforce, or permit enforcement of a policy or practice of conducting physical body cavity searches without probable cause and/or a warrant, or an exigent circumstance, and may not do so except if they are conducted in private in a safe, medically proper, and hygienic manner.

63.   Despite having been put on notice of the common use of illegal strip and body cavity searches , and other misconduct against, citizens by these complaints and lawsuits, the City of Mount Vernon ignored the existence of a clear pattern of illegal conduct, and did not recommend discipline for any of the subject officers.

64.   Despite their knowledge of these illegal searches and other misconduct, policymakers took no action to train, supervise, or discipline the officers who committed these knowingly illegal searches.

65.   Instead, certain of the Defendant Officers were rewarded with promotions for their aggressive police tactics and jobs well-done by their Supervisors.

66.   Despite such notice, Defendant City failed to take corrective action.  This failure caused the officers in the present case to violate Plaintiff's civil rights.

67.   Moreover, Defendant City was aware, prior to Plaintiff's arrests, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers.  Despite such notice, Defendant City retained these officers, and failed to adequately train and supervise them.

68.   As a direct result of the aforementioned failures, Plaintiff's rights were violated.

69.   All of the aforementioned acts of Defendants, their agents, servants, and employees were carried out under the color of state law.

70.   The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

71.   Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice procedure, or rule of the

respective municipality/authority, which is forbidden by the
Constitution of the United States.

### Mount Vernon's Policies and Widespread Practices

72.   The constitutional violations that caused Israel
Roman's illegal strip and body cavity search, false arrest, and
malicious prosecution were not isolated events.  To the
contrary, they were the result of the City of Mount Vernon's
policies and widespread practices of illegally strip and body
cavity searching detainees and arrestees, falsely arresting
innocent people, and falsifying police reports and other
official documents.

73.   The constitutional violations that caused Israel
Roman's illegal strip and body cavity search, false arrest, and
malicious prosecution were the result of the City of Mount
Vernon's policies and widespread practices of failing to
adequately train and supervise MVPD employees of their
obligations not to illegally strip and body cavity search
detainees and arrestees, fabricate and falsify official
documents, and falsely arrest, or maliciously prosecute
individuals.

74.   These constitutional violations were also the result
of the City's policies and widespread practices of failing to
discipline officers who illegally strip and body cavity search
detainees and arrestees, falsify and plant evidence, fabricate

and falsify official documents, and falsely arrest, or maliciously prosecute individuals.

75.   The constitutional violations that caused Israel Roman's illegal strip and body cavity search and the claims set forth in this Complaint were also the result of the City's policies and widespread practices of failing to intervene to prevent individual employees from violating citizens' constitutional rights.

76.   In accordance with these policies and widespread practices, City employees refused to report misconduct committed by their colleagues, including the misconduct at issue in this case.

77.   The City's failure to train, supervise, and discipline its officers and employees effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Israel Roman in this case.  Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and policies, as alleged above.

78.   The City and their employees failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct.  They thereby perpetuated the unlawful practices and ensured that no action would be taken to remedy Mr. Roman's ongoing injuries.

79.  The policies and practices described in the foregoing paragraphs were consciously approved by City policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

## Plaintiff's Damages

80.  As a result of his illegal strip and body cavity searches and his false arrest and malicious prosecution, Mr. Roman suffered emotional distress, anxiety, humiliation, shame and terror, as well as reputational harm.

81.  Mr. Roman is now fearful of people, particularly police officers or those he suspects to be undercover police officers.  He is afraid that he can be arrested for no reason at all, and can suffer intrusive bodily searches as a result of such false arrests.

82.  The incidents described herein also caused Mr. Roman emotional distress, anxiety, humiliation, shame and terror, as well as reputational harm, as a result of being separated from his children and subject to a child abuse investigation.

83.  As a result of the foregoing, Plaintiff has suffered emotional, psychological, and reputational damages, all caused by the Defendant Officers' misconduct.

## Count I – 42 U.S.C. § 1983
## Fourth Amendment/Illegal Search and Seizure

84.  Each Paragraph of this Complaint is incorporated as if restated fully herein.

85.  As described in the preceding paragraphs, the conduct of the Defendant Officers, while acting individually, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment, violated the Plaintiff's Fourth Amendment rights in that they seized Plaintiff without justification and without probable cause and conducted an illegal strip and body cavity searches of his body, which included the close observation of his buttocks and genitalia.

86.  As described in the preceding paragraphs, the Defendants violated Plaintiff's Fourth Amendment rights in that they seized Plaintiff without justification and without probable cause and conducted an illegal search of his body, strip searching him and visually body cavity searching him.

87.  The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

88.  As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of

liberty, and other grievous and continuing injuries and damages as set forth above.

89.   The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

## Count II — 42 U.S.C. § 1983
## False Arrest/Unlawful Imprisonment

90.   Each Paragraph of this Complaint is incorporated as if restated fully herein.

91.   As described in the preceding paragraphs, the Defendant Officers, while acting individually, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment, falsely arrested and unlawfully detained Israel Roman.

92.   The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

93.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

94.   The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

### Count III – 42 U.S.C. § 1983
### Malicious Prosecution

95.   Each Paragraph of this Complaint is incorporated as if restated fully herein.

96.   As described in the preceding paragraphs, the Defendant Officers, while acting individually, jointly, and in conspiracy with one or more persons, known and unknown, as well as under color of law and within the scope of their employment, caused Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for crimes for which there was no probable cause.  These judicial proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of his innocence.

97.   The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

98.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

28

99.   The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VII.

## Count IV – 42 U.S.C. § 1983
## Violation of a Right to Fair Trial

100. Each Paragraph of this Complaint is incorporated as if fully restated herein.

101. Defendant Officers created false evidence against Plaintiff and withheld exculpatory evidence against Plaintiff.

102. Defendant Officers forwarded this false evidence to, and withheld exculpatory evidence from, the Westchester County District Attorney's Office to be used against Plaintiff in legal proceedings, and it was used to perpetuate the proceedings against him.

103. As a result of Defendants' creation and use of false evidence, and withholding of exculpatory evidence, Plaintiff was deprived of his liberty and suffered a violation of his constitutional rights to a fair trial, as guaranteed by the United States Constitution.

104. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

105. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under

29

color of law such that their employers, City of Mount Vernon, are liable for their actions.

### Count V - 42 U.S.C. § 1983
### Failure to Intervene

106. Each Paragraph of this Complaint is incorporated as if restated fully herein.

107. In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

108. Defendant Officers failed to intervene to prevent the violations of Plaintiff's constitutional rights as set forth in this Complaint.

109. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's innocence.

110. As a result of Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, humiliation, degradation, emotional pain and suffering, loss of liberty, and other grievous and continuing injuries and damages as set forth above.

111. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Mount Vernon in the manner more fully described below in Count VI.

## Count VI – 42 U.S.C. § 1983
### Section 1983 Monell Claim

112. Each Paragraph of this Complaint is incorporated as if fully restated herein.

113. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

114. As described in detail above, the City of Mount Vernon is liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the policies, practices, and customs of the City of Mount Vernon as well as by the actions of policy-making officials for the City.

115. At all times relevant to the events described in this Complaint and for a period of time prior thereto, the City had notice of a widespread practice by their officers and agents of illegally and intrusively searching individuals without cause, using excessive force against individuals, manufacturing false evidence, suppressing exculpatory evidence, and instigating false criminal charges, including the falsification of

31

statements and reports, fabricating false evidence to implicate defendants in criminal conduct, and pursuing wrongful convictions through profoundly flawed investigations.

116. These widespread practices, individually and together, were allowed to flourish because the leaders, supervisors, and policymakers of the City directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately screen, hire, retain, train, supervise, and control their officers, agents, and employees, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff.

117. The above widespread practices and customs, so well settled as to constitute *de facto* policies of the City, were able to exist and thrive, individually and together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

118. At all times relevant to the events described in this Complaint and for a period of time prior and subsequent thereto, the City failed to promulgate proper or adequate rules, regulations, policies, and procedures for the searching of detainees and arrestees; the collection, documentation, preservation, testing, and disclosure of evidence; the writing of police reports and taking of investigative notes; obtaining

statements and testimony from witnesses; and maintenance of investigative files and disclosure of those files in criminal proceedings. In addition or alternatively, the City failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of officers and agents of the City, with respect to these subjects.

119. These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the City.

120. In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the City in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City or were actually committed by persons with such final policymaking authority.

121. As a result of the policies and practices of the City, numerous individuals have been illegally and intrusively searched and wrongly prosecuted and imprisoned for, as well as convicted of, crimes that they did not commit.

122. Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City, including but not limited to the individually named Defendants, who acted pursuant to one or more of the policies, practices, and customs

set forth above in engaging in the misconduct described in this Count.

## Count VIII – 42 U.S.C. § 1983
## Supervisory Liability

123. Each Paragraph of this Complaint is incorporated as if fully restated herein.

124. Defendants Harris, Scott, Burnett, Mitchell, Mastrogiorgio, and McKennie, and other unidentified supervisory MVPD employees and officers personally caused Plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

125. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

## Supplemental State Law Claims

126. Each Paragraph of this Complaint is incorporated as if fully stated herein.

127. Within the time set forth by law, Plaintiff duly served upon, presented to and filed with the City of Mount Vernon, a Notice of Claim setting forth all facts and information required under the General Municipal Law 50-e.

128. More than 30 days have elapsed since Plaintiff's 50-h hearing and the City of Mount Vernon has made no offer of an adjustment or payment thereof.

129. This action was commenced within one year and ninety days after the causes of action herein accrued as tolled by Governor Cuomo's Executive Order 202.8 et seq.

130. Plaintiff has complied with all conditions precedent to maintaining the instant action.

131. This action falls within one or more of the exceptions as outlined in C.P.L.R. 1602.

### Count VIII – New York State Law<br>Malicious Prosecution

132. Each Paragraph of this Complaint is incorporated as if fully restated herein.

133. The Defendant Officers initiated, commenced, and continued a malicious prosecution against Plaintiff.

134. Defendant City of Mount Vernon, as employer of the individually named Defendant Officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

135. Defendants caused Plaintiff to be prosecuted without probable cause until the charges were resolved in Plaintiff's favor in criminal court on or about February 24, 2020.

136. Defendants caused Plaintiff to be prosecuted without probable cause until the charges were resolved in Plaintiff's favor in criminal court on or about February 24, 2020.

**Count IX — New York State Law
Intentional Infliction of Emotional Distress**

137. Each Paragraph of this Complaint is incorporated as if fully restated herein.

138. The individual defendants intentionally and/or recklessly, and in breach of their duties owed to Plaintiff, directly and proximately caused Plaintiff to be illegally searched, falsely arrested, maliciously prosecuted, and wrongly imprisoned.

139. Defendants caused Plaintiff to suffer harm, including fear for his physical safety and emotional distress.

**Count XIV — New York State Law
Negligent Screening, Hiring, and Retention**

140. Each Paragraph of this Complaint is incorporated as if fully restated herein.

141. Upon information and belief, Defendant City of Mount Vernon failed to use reasonable care in the screening, hiring and retention of the aforesaid defendants who illegally searched, falsely arrested, manufactured evidence against, and maliciously prosecuted Plaintiff.

142. Defendant City of Mount Vernon knew, or should have known in the exercise of reasonable care, the propensities of

the Defendant Officers to engage in the wrongful conduct
heretofore alleged in this Complaint.

### Count XV – New York State Law
### Negligent Training and Supervision

143. Each Paragraph of this Complaint is incorporated as if
fully restated herein.

144. Defendant City of Mount Vernon failed to use
reasonable care in the training and supervision of the aforesaid
Defendants, who illegally searched, falsely arrested,
manufactured evidence against, and maliciously prosecuted the
plaintiff.

### Count XVI – New York State Law
### Respondeat Superior Liability

145. Each Paragraph of this Complaint is incorporated as if
fully restated herein.

146. Defendants were at all times material to this
complaint as employees of the Mount Vernon Police Department,
and acted within the scope of their employment in committing the
misconduct described above.

147. Defendants' tortious conduct was undertaken while
carrying out routine investigative functions.  The conduct was
reasonably expected by, and in fact foreseen by, Defendants'
employer.

148. Defendant City of Mount Vernon is liable as principal
for all intentional torts committed by its agents.

37

**WHEREFORE**, Plaintiff, ISRAEL ROMAN, respectfully requests that this Court enter judgment in his favor and against Defendants, THE CITY OF MOUNT VERNON; POLICE COMMISSIONER SHAWN HARRIS, POLICE COMMISSIONER GLENN SCOTT; DET. ANTHONY BURNETT; DET. "JOHN" MITCHELL; P.O. TARIQ K. HYLTON; P.O. SAIED KAROO; P.O. "JOHN" LLOYD; LT. NICHOLAS MASTROGIORGIO; SGT. JANIE MCKENNIE; and unknown Mount Vernon Police Department employees and officers, awarding compensatory damages and attorneys' fees against each Defendant, punitive damages against each of the Defendant Officers, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff ISRAEL ROMAN hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Karen A. Newirth
LOEVY & LOEVY
Attorneys for Plaintiff
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607
(718) 490-0028