IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ISRAEL ROMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-CV-2214-KMK |
| | ) | |
| THE CITY OF MOUNT VERNON; | ) | |
| DET. ANTHONY BURNETT, Badge No. 109; | ) | |
| DET.  MITCHELL, Badge No. 163; P.O. | ) | |
| TARIQ K. HYLTON, Badge No. 4680; P.O. | ) | |
| CERQUA,; P.O. SAIED KAROO, | ) | |
| Badge No. 210; P.O.  LLOYD | ) | |
| Badge; LT. NICHOLAS MASTROGIORGIO, | ) | |
| Badge No. 3019; SGT. JANIE MCKENNIE, | ) | |
| Badge No. 3059; and unidentified | ) | |
| Mount Vernon Police Department employees | ) | |
| and officers, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

Heather Lewis Donnell
LOEVY & LOEVY
311 N Aberdeen St., 3rd Floor
Chicago, Illinois 60607

Jarrett Adams
LAW OFFICE OF JARRETT ADAMS, PLLC
40 Fulton Street, Floor 23
New York, NY 10038

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTS .......................................................................................................................1

LEGAL STANDARD...................................................................................................3

ARGUMENT ..............................................................................................................5

I.    The Court Should Deny Defendants' Motion to Dismiss as an Improper and Premature Motion for Summary Judgment...................................................5

    A.  The Defendants improperly relied on extrinsic documents not attached to or incorporated into Plaintiff's SAC ...........................................................5

    B.  The Court should not take judicial notice of the extrinsic documents on which Defendants relied ...................................................................................7

    C.  The Court should deny Defendants' motion as procedurally improper..................8

II.    The Court Should Deny Defendants' Partial Motion to Dismiss ..................................9

    A.  The Court should not dismiss Plaintiff's federal and state malicious prosecution claim as to Defendants Burnett, Mitchell and Lloyd ................................9

        1.  Defendants Mitchell and Lloyd were involved in the initiation and continuation of the prosecution of Plaintiff....................................10

        2.  The SAC properly alleges that there was no probable cause that Plaintiff committed a crime ........................................................................10

        3.  Defendants may not avail themselves of qualified immunity argument ........12

        4.  The Court should infer that Defendants Burnett, Mitchell and Lloyd acted with actual malice due to the lack of probable cause ......................................13

    B.  The Court should not dismiss Plaintiff's failure to intervene claim .....................13

    C.  The Court should not dismiss Plaintiff's supervisory liability claim ...................14

    D.  The Court should not dismiss Plaintiff's *Monell* claims........................................14

        1.  The SAC contains sufficient facts to allege a consistent, widespread practice ..................................................................................................16

2.   The SAC contains sufficient facts to allege a failure to train or
Supervise.....................................................................................................20

3.   The SAC shows the causal link between the City's unconstitutional
policies and Plaintiff's constitutional injuries...........................................20

4.   Defendants' cases are distinguishable .......................................................21

E.   The Court should dismiss Plaintiff's state law claims for negligent screening,
hiring, and retention and for negligent training and supervision without
prejudice.............................................................................................................22

CONCLUSION.............................................................................................................22

## TABLE OF AUTHORITIES

*Accord Cash v. County of Erie,* 654 F.3d 324 (2d Cir. 2011) ........................................................ 19

*Alvarez v. County of Orange*, 95 F. Supp. 3d 385 (S.D. N.Y. 2015)...........................................7, 8

*Amnesty Am. v. Town of Hartford*, 361 F.3d 113 (2d Cir. 2004) .................................................17

*Arista Records, LLC v Doe 3,* 604 F.3d 110 (2d Cir. 2010) .......................................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................................3, 4

*Babi-Ali v. City of New York*, 979 F. Supp. 268 (274) (S.D.N.Y. 1997) ..................................... 17

*Barnett v. Westchester Cty.,* No. 18-CV-2483 (NSR), 2020 WL 1032445
    (S.D.N.Y. Feb. 28, 2020) ................................................................................................. 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 3-4

*Bethune v. Westchester Cty.,* No. 18-CV-3500 (NSR), 2020 WL 1032508,
    (S.D.N.Y. Mar. 2, 2020) ...................................................................................................21

*Biton v. City of New York,* No. 17CV3981LDHJO, 2020 WL 7024363
    (E.D.N.Y. Nov. 30, 2020)...................................................................................................12

*Bond v. City of New York*, 2015 WL 5719706 (E.D.N.Y. Sept. 28, 2015)....................................7

*Brandon v. City of New York*, 705 F. Supp. 2d 261 (S.D.N.Y. 2010) ........................................ 15

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir. 1993) .................................... 5

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)................................................... 5, 7

*City of Canton v. Harris*, 489 U.S. 278 (1989)...........................................................................19

*Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998)........................................................................... 4

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)........................................ 1, 3, 6, 7

*DiPippo v. Cnty. of Putnam*, 2019 WL 1004152 (S.D.N.Y. Feb. 28, 2019) ...............................16

*Dumel v. Westchester Cty.,* No. 19-CV-2161 (KMK), 2021 WL 738365
    (S.D.N.Y. Feb. 25, 2021) ............................................................................................. 21-22

*Ferrari v. Cnty of Suffolk*, 790 F. Supp. 2d 34 (E.D.N.Y. 2011)................................................ 17

*Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319 (2d Cir. 1986) ................................... 15, 17, 18

*Gavin v. City of New York*, 2021 WL 3774113 (S.D.N.Y. Aug. 24, 2021).................................. 16

*Guzman v. United States*, No. 11 CIV. 5834 JPO, 2013 WL 5018553
(S.D.N.Y. Set. 13, 2013)........................................................................................................16

*Hart v. City of Binghamton*, No. 3:10–CV–1064, 2012 WL 1565085
(N.D.N.Y. May 2, 2012) ....................................................................................................... 18, 19

*Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019)............................................................ 4

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701(1989) .................................................................. 16

*JP Morgan Chase Bank v. Altos Hornos de Mexico*, S.A. de C.V., 412 F.3d 418
(2d Cir. 2005)........................................................................................................................1

*Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*,
507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)...............................................14, 16

*McCants v. City of Newburgh*, No. 14 CV 556 VB, 2014 WL 6645987
(S.D.N.Y. Nov. 21, 2014) ...................................................................................................18

*McCrary v. County of Nassau*, 493 F.Supp.2d 581 (E.D.N.Y. 2007) ......................................... 15

*Metropolitan Property and Casualty Ins. Co. v. Sarris*, 2017 WL 3252812
(N.D. N.Y. July 28, 2017)...................................................................................................20

*Nielsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) ................................................................................ 4

*Obilio v. City Univ. of N.Y.*, 2003 WL 1809471 (E.D.N.Y. Apr. 7, 2003).....................................7

*Outlaw v. City of Hartford*, 884 F.3d 351 (2d Cir. 2018) ........................................................... 18

*Philpot v. ACB Assocs., L.P.*, No. 17 CIV. 4646 (DAB), 2018 WL 1801304
(S.D.N.Y. Mar. 23, 2018) .................................................................................................... 9

*Pina v. Henderson*, 752 F.2d 47 (2d Cir. 1985)............................................................................. 8

*Rentas v. Ruffin*, 816 F.3d 214 (2d Cir. May 27, 2010)................................................................13

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007)...................................................................... 16

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774
(2d Cir. 1984)......................................................................................................................4

*Sahu v. Union Carbide Corp.*, 548 F.3d 59 (2d Cir. 2008) ........................................................6, 9

*Schoolcraft v. City of New York*, 103 F. Supp. 3d 465 (S.D.N.Y. 2015)......................................22

*Slayton v. Am. Express Co.*, 460 F.3d 215 (2nd Cir. 2006) ......................................................... 13

*Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23 (2nd Cir. 2002).......................................13

*Tieman v. City of Newburgh*, No. 13–CV–4178 (KMK), 2015 WL 1379652
    (S.D.N.Y. Mar. 26, 2015) ...................................................................................................... 19

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85(2d Cir. 2021)..........................................9

*Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995)................................................... 15, 18, 19

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992)............................................................20

*Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995)...............................................................15

## STATUTES AND OTHER AUTHORITIES

Department of Justice, Justice Department Launches Investigation of the Mount Vernon Police
Department.  Press Release 21-1200. December 3, 2021 ............................................................17

Fed. R. Civ. P. 12(d) ................................................................................................................. 9

FED. R. EVID. 201(b) ................................................................................................................. 8

N.Y. Penal Code §§110 & 120.05 ........................................................................................ 11, 12

## INTRODUCTION

The Court should deny the Defendants' partial motion to dismiss Plaintiff's Second Amended Complaint ("SAC") for multiple reasons. For starters, Defendants' motion to dismiss is masquerading as a motion for summary judgment, which is both improper and premature at this phase in the proceeding. On that score, along with their motion papers, Defendants filed Mount Vernon Police Department ("MVPD") documents—including 23 pages of police reports and witness statements—that were not attached to the SAC, not incorporated by reference in the SAC, and were not mentioned in the SAC. These extrinsic documents are outside the allegations of SAC and not appropriate for Defendants to have relied upon in moving to dismiss. *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Not only did Plaintiff not have notice of a motion for summary judgment, but Plaintiff has not had the opportunity to conduct discovery to meet Defendants' facts with facts.  Plaintiff cannot properly respond to Defendants' mis-labeled and premature motion for summary judgment. Accordingly, the Court should deny it because it is procedurally improper. Furthermore, once the Defendants' motion is scaled back to its proper scope of accepting Plaintiff's allegations, Defendants' motion should be denied.[1]

## FACTS

This case arises out of dispute Plaintiff and his partner had with his neighbor back on October 5, 2019. Dkt. 38 at ¶24. Unfortunately, the incident resulted in violence—Plaintiff's

---

[1]    Defendants claim to move to dismiss all claims in the SAC except for the portion of Count I which pertains to illegal searches. Dkt. 47 at 1. However, Defendants' memorandum is completely void of any legal or factual argument pertaining to Count IX in the SAC, which alleges a claim under New York State Law for Respondeat Superior Liability. Defendants have, therefore, waived any such argument to raise in reply. *JP Morgan Chase Bank v. Altos Hornos de Mexico*, S.A. de C.V., 412 F.3d 418, 428 (2d Cir. 2005). Accordingly, the Court should not dismiss Count IX in Plaintiff's SAC.

partner struck the neighbor with a bat. Dkt. 38 at ¶24. After the incident escalated, Plaintiff and his partner called the Mount Vernon police to report the incident, including Plaintiff's partner admitting to hitting the neighbor. Plaintiff and his partner fully cooperated with the Defendants. Nevertheless, Defendants strip-searched Plaintiff without any reasonable basis to do so, prosecuted Plaintiff despite knowing that he had not been physically present with his Partner when she decided to hit the neighbor, a fact the neighbor (victim) corroborated, and despite lacking any probable cause to do so. *Id.* at ¶¶24-47. The import of this case is that Plaintiff alleges that he was unreasonably subjected to a strip search and maliciously prosecuted without probable cause—constitutional guarantees that exist even if the situation in which they arise are unfortunate and regrettable too.

Plaintiff's SAC alleges nine counts: he was unlawfully strip searched (Count I); maliciously prosecuted (Count II); Defendants failed to intervene (Count III); the City had a for a widespread practice of conducting unlawful strip searches that were the moving force behind the unlawful strip search (*Monell* claim) (Count IV); supervisory liability (V); and state law claims for malicious prosecution (Count VI), negligent screening and hiring (Count VII), negligent training and supervision (Count VII), and respondeat superior liability (Count IX). Dkt. 38 at ¶¶104-155.

Defendants' selective version of the facts rely heavily on the materials they attached to counsel's declaration. Dkt. 47 at 2-4. Indeed, out of the 30 sentences that comprise the "Pertinent Facts and Procedural History" section of Defendants' memorandum, only six sentences solely cite to the SAC. *Id*. And 13 of the 30 sentences cite exclusively to the MVPD extrinsic documents. *Id*.

These additional documents include: (1) the MVPD documents; (2) the Felony Complaint and Superseding Misdemeanor Information pertaining to Plaintiff's criminal proceedings; (3) the FAC; and (4) the SAC. Dkt. 46 at ¶¶3-6 at Exs. A-D. The MVPD documents attached as Exhibit C to the declaration consist of: (1) Pages 1 and 2 of a three-page Incident Report; (2) a Case Supplemental Narrative Report; (3) a Detective's Supplemental Report Narrative #1; (4) a Detective's Supplemental Report Narrative #2; (5) a Witness Deposition statement by Joseph Guerrero; (6) six Photo Array Forms; (7) two Line Up documents; (8) two Investigatory Copy documents; (9) the Supporting Deposition of Jose E. Roman; and (10) two Miranda Warning documents. Dkt. 46-3. None of the ten MVPD documents were attached to, incorporated by reference, or mentioned in the SAC. Dkt. 38.

Defendants claim that Plaintiff relied upon the MVPD documents in drafting the FAC and the SAC. Dkt. 47 at 2, n.1. However, Defendants do not cite to anything in the SAC or record to support Defendants' claim. *Id.*

Due to the fact that there has been no discovery in this case, Plaintiff cannot adequately respond to Defendants' motion which is a partial motion for summary judgment. Facts pertaining to the specific discovery needed by Plaintiff to respond will be set forth below in the "Argument" section of this memorandum. Defendants' motion should be denied as procedurally improper. *DiFolco*, 622 F.3d at 111, and further denied because Plaintiff's SAC satisfies Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "A Rule 12 motion must be denied if the complaint includes factual allegations that when taken as true "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 570 (2007); *see also Arista Records, LLC v Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010) (applying *Twombly*).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alternations, internal quotation marks, and citations omitted).  In ruling on a motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences" in favor of the plaintiff.  *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).  The Court must accept facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). In evaluating a motion to dismiss, "[t]he task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (quoting in part *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc*., 748 F.2d 774, 779 (2d Cir. 1984)).

**ARGUMENT**

I.    **The Court Should Deny Defendants' Motion to Dismiss as an Improper and Premature Motion for Summary Judgment**

A.   **The Defendants improperly relied on extrinsic documents not attached to or incorporated into Plaintiff's SAC**

Relying upon an outdated and incomplete presentation of the law, Defendants argue that the Court may consider material outside the SAC to decide the motion to dismiss. Dkt. 47 at 5-6. Specifically, Defendants cite *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) for the proposition:

> When determining the sufficiency of a claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs amended complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in brining suit.

Dkt. 47 at 5-6.

However, this is no longer the current state of the law. Since *Brass*, the Second Circuit has clarified the proper standard for considering outside materials which are not either attached to or incorporated by reference in a complaint when deciding a motion to dismiss. In *Chambers v. Time Warner, Inc.*, the court of appeals stated that the language in *Brass* has been misinterpreted. 282 F.3d 147, 153 (2d Cir. 2002). The court reiterated that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original). Since *Chambers*, the Second Circuit has further updated the standard for considering documents outside the complaint when deciding a motion to dismiss as follows: "Where a document is not incorporated by reference in the complaint, the court may

nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby

rendering the document integral to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d

104, 111 (2d Cir. 2010) (quotations omitted) (rejecting consideration of emails defendants

attached to their motion to dismiss in employment contract case where defendants claimed the

emails could be construed as repudiation of the contracts as a legal matter).

Under the proper standard, the Court should not consider the MVPD documents to decide

Defendants' motion to dismiss. First, the MVPD documents were not attached to the SAC. Dkt.

38. Second, the MVPD documents were not incorporated by reference in the SAC. *Id*. Third, no

evidence exists that Plaintiff relied heavily upon the terms and effect of the MVPD documents to

render them integral to the SAC. *Id*.

And, further to the extent that Plaintiff mentions documents such as the criminal

complaint, he has done so to support the plausibility of his factual allegations rather than

incorporating a document such as a contract or an employment agreement. *See, e.g.*, *Sahu v.

Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008) (plaintiffs' reliance on certain documents

"seem to have been used by the plaintiffs largely for the purpose of indicating that evidence

existed to support the complaint's assertions. . . . and therefore sufficient to survive a motion to

dismiss under Rule 12(b)(6). They are not extrinsic evidence incorporated into the complaint,

and they were not meant to counter a possible future motion for summary judgment brought by

the defendants under Rule 56.").

Indeed, were the Court to rely on all the extrinsic evidence Defendants have attached to

their motion to dismiss and convert it into a motion for summary judgment, Plaintiff will not

have been accorded sufficient notice and opportunity to respond.  *Sahu*, 548 F.3d at 70 ("Once

the court decided to consider extrinsic evidence to decide a motion for summary judgment rather

than limit itself to the pleadings as it would on a motion to dismiss, we think that the plaintiffs should have been given "a reasonable opportunity to meet facts outside the pleadings.") (reversing grant of summary judgment where court improperly relied on extrinsic evidence where plaintiffs' references to other materials, including another proceeding did not constitute incorporation). Accordingly, the MVPD documents are not appropriate for Defendants' motion to dismiss. *See Chambers*, 282 F.3d at 153; *see also DiFolco*, 622 F.3d at 111.

### B. The Court should not take judicial notice of the extrinsic documents on which Defendants relied

Defendants also argue that the Court may take judicial notice of the MVPD documents to decide their motion to dismiss. Dkt. 47 at 6. In support, Defendants cite *Bond v. City of New York*, 2015 WL 5719706, *2 (E.D.N.Y. Sept. 28, 2015) and *Obilio v. City Univ. of N.Y.*, 2003 WL 1809471, **4-5 (E.D.N.Y. Apr. 7, 2003) for the proposition that the Court may take judicial notice of police arrest reports on a motion to dismiss. *Id*. This Court has already rejected a similar such an argument and should do so here. *See Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 394 (S.D. N.Y. 2015).

In *Alvarez*, defendants asked the court to consider a police incident report in deciding their motion to dismiss. 95 F. Supp. 3d at 394 (S.D. N.Y. 2015). The court began by concluding that the incident report was an extrinsic document not integral to the plaintiff's amended complaint because the plaintiff did not heavily rely upon the terms and effect of the report. *Alvarez*, 835 F. Supp. 3d at 394-97. The Court then rejected the defendants' argument that the incident report was proper for judicial notice. *Id.* at 397-98. Specifically, the Court explained:

> Keeping in mind that caution must be used in determining that a fact is beyond controversy under Rule 201(b), and in light of the fact that district courts appear to be unsettled on whether judicial notice of materials such as these is appropriate at the motion to dismiss stage, the lack of Second Circuit authority on the issue,

> and Defendants' failure to explain how the source of these
> documents is unimpeachable, the Court declines to consider these
> documents in resolving the instant motion.

*Id.* at 398. The Court therefore did not consider the police incident report in deciding

Defendants' motion to dismiss. *Id.*

For the same sound reasoning that the Court employed in *Alvarez*, the Court should reject

Defendants' similar request to rely on extrinsic documents here. Defendants have failed to

explain how the documents they seek to rely upon are unimpeachable. Dkt. 45-47. Indeed, they

are not as they reflect witness accounts and police narratives that are not proper for judicial

notice, particularly where they are used to resolve a matter essential to a claim. *See, e.g.*, *Pina v.

Henderson*, 752 F.2d 47, 50 (2d Cir. 1985) ("The more critical an issue is to the ultimate

disposition of the case, the less appropriate judicial notice becomes. A court should not go

outside the record to supply a fact that is an essential part of a party's case unless the fact is

clearly beyond dispute.") (internal citations omitted) (declining to take judicial notice of NYP

police report); *see also* FED. R. EVID. 201(b) (courts may take judicial notice of adjudicated facts

"not subject to reasonable dispute" where facts are "generally known within the trial court's

territorial jurisdiction" or "can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned").   These documents do not meet the standard for

judicial notice and the Court should ignore them for purposes of Defendants' motion to dismiss.

*See Alvarez*, 835 F. Supp. 3d at 394-98.

### C.  The Court should deny Defendants' motion as procedurally improper

Pursuant to the Federal Rule of Civil Procedure governing motions to dismiss, "[i]f, on a

motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not

excluded by the court, the motion <u>must</u> be treated as one for summary judgment under Rule 56."

Fed. R. Civ. P. 12(d) (emphasis added). Under Second Circuit precedent, a district court presented with material outside the pleadings on a motion to dismiss must either exclude the material and decide the motion on the complaint or convert the motion to a motion for summary judgment. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

In this case, the Court should reject the Defendants' improper use of a Rule 12(b)(6) to file a motion for partial summary judgment prematurely and with no notice to Plaintiff or opportunity to respond. *Philpot v. ACB Assocs., L.P.*, No. 17 CIV. 4646 (DAB), 2018 WL 1801304, at *3 (S.D.N.Y. Mar. 23, 2018) ("The documents upon which Defendants rely are not incorporated by reference in the Amended Complaint. It is therefore improper for the Court to consider them in ruling on a Motion to Dismiss, and the Court declines to convert the instant Motion to a Motion for Summary Judgment.") (internal citation omitted).

For the reasons set forth above, the Court should reject the Defendants' attempt to file a motion for summary judgment in the guise of a motion to dismiss and ignore all extrinsic evidence submitted in support of their motion to dismiss.[2]

## II.     The Court Should Deny Defendants' Partial Motion to Dismiss

### A.  The Court should not dismiss Plaintiff's federal and state malicious prosecution claim as to Defendants Burnett, Mitchell and Lloyd

Defendants contend that Plaintiff's malicious prosecution claims should be dismissed because:  (1) probable cause or  arguable probable cause existed to charge Plaintiff with each crime; (2) there is qualified immunity; and (3) Plaintiff failed to plead sufficient facts to plausibly allege that the prosecution was initiated with actual malice. Dkt. 47 at 7-12. All of arguments should be rejected.

---

[2]     If the Court intends to rely on the attached documents, Plaintiff respectfully requests notice and an opportunity to file a declaration pursuant to Federal Rule of Civil Procedure 56(d) as to why discovery is necessary to respond to a motion for summary judgment. *Sahu*, 548 F.3d at 70.

### 1. Defendants Mitchell and Lloyd were involved in the initiation and continuation of the prosecution of Plaintiff [3]

Defendants contend that there is nothing in the SAC to show that Defendant Mitchell, and Lloyd initiated and continued the prosecution of Plaintiff. Dkt. 47 at 8-9.[4] On the contrary, the SAC contains adequate facts regarding these Defendants' involvement in the initiation and continuation of Plaintiff's prosecution.

To begin with, the SAC alleges that Defendants Mitchell and Lloyd continued the prosecution of Plaintiff because they knew the felony complaint contained false information and because they withheld exculpatory evidence. *Id.* at ¶¶54-57 & 50-60. Moreover, the SAC alleges that Defendant Lloyd continued the prosecution by swearing to the superseding misdemeanor information. *Id.* at ¶¶63-65. Lastly, the SAC alleges that the individual Defendants, including Defendants Mitchell and Lloyd, continued the prosecution because they knew that the superseding misdemeanor information contained false information. *Id.* at ¶65. Thus, the SAC contains sufficient factual allegations that Defendants Mitchell and Lloyd initiated and continued the prosecution of Plaintiff.

### 2. The SAC properly alleges that there was no probable cause that Plaintiff committed a crime

Defendants contend that there was probable cause to charge Plaintiff with assault, harassment, and endangering the welfare of a child, solely based upon the fact that Plaintiff entered a neighbor's apartment where Plaintiff's partner struck the neighbor with a baseball bat. Dkt. 47 at 10-12. This contention ignores several facts set forth in the SAC which show that

---

[3]     Plaintiff voluntarily dismisses his malicious prosecution claims as to Defendants Hylton, Cerqua, Karoo, Mastrogiorgio, and/or McKennie. Plaintiff is only proceeding on Count I as to Defendants Mitchell, Burnett and Lloyd.

[4]     Defendants do not argue that Plaintiff failed to plead Defendant Anthony Burnett initiated the prosecution. Dkt. 47 at 7-12.

there was no probable cause to prosecute Plaintiff for Assault in the Second Degree as to

Defendants Mitchell and Burnett (Dkt. 38 at ¶¶49-50 & 54-58) and the various charges in the

Superseding Misdemeanor Indictment as to Defendant Lloyd (Dkt. 38 at ¶¶63-64). Plaintiff's

factual allegations include:

- Plaintiff's partner struck the neighbor with the bat;

- Plaintiff did not assault the neighbor and was not present in the room when the
  assault occurred;

- Plaintiff did not have the intent to use the bat against or physically injure the
  neighbor;

- Plaintiff did not attempt to use the bat against or cause physical injury to the
  neighbor;

- Plaintiff did not cause physical injury to the neighbor;

- Plaintiff contacted and cooperated with the MVPD;

- Plaintiff's partner admitted to the MVPD that she was the one who struck the
  neighbor with the bat; and

- The neighbor, the complaining witness had "always maintained that Mr. Roman's
  partner had hit him with a bat." (Dkt. 38 at ¶511).

Dkt. 38 at ¶¶24-51. Moreover, at the time of swearing the felony complaint and misdemeanor

complaint, it was known that the neighbor (the complaining witness) was not alleging that

Plaintiff had struck or hit him. *Id.* at ¶51. In other words, taking the facts as true, at the time the

felony complaint was sworn, it was undisputed that Plaintiff had had no involvement in hitting

the neighbor. Based upon these facts in the SAC which must be accepted as true, there was no

probable cause for Defendant Burnett to prosecute Plaintiff for Attempted Assault in the Second

Degree, which requires that a person "with intent to cause serious physical injury to another

person, he causes such injury to such person or a third person." *Id.* at ¶¶54-58; *see also* N.Y.

Penal Code §§110 & 120.05. With regard to Defendant Lloyd, Plaintiff alleges that this

Defendant also lacked the sufficient factual basis to charge Plaintiff with Assault in the Third

Degree, which also requires that a person "with intent to cause serious physical injury to another

person, he causes such injury to such person or to a third person." *Id.* a ¶¶63-64; N.Y. Penal

Code 120.00.

In support of their argument that probable cause existed, Defendants rely on a case with

analogous facts in which the court granted summary judgment on the plaintiff's malicious

prosecution claim where probable cause existed for the criminal charges. Dkt. 47 at 11 (citing

*Biton v. City of New York,* No. 17CV3981LDHJO, 2020 WL 7024363, at *1 (E.D.N.Y. Nov. 30,

2020). In that case, the plaintiff and her daughter were involved in a physical altercation with

their landlady in which the plaintiff, in contrast to this case, was the individual who punched the

victim. *Id.* The court found that the plaintiff's malicious prosecution claim failed because she hit

the victim and was alleged to have acted in concert with her daughter causing the laceration of

the victim as well. *Id.* at *3-4. While Defendants may ultimately prevail on their claim, the

distinguishing feature of this case is that this was decided *after* discovery at summary judgment

where the plaintiff had failed "to adduce" evidence in support of her claims. *Id.* at *4-5. At the

stage, the Court should deny Defendants' motion to dismiss and permit discovery on Plaintiff's

claim as to Defendants Burnett, Mitchell and Lloyd.

### 3.   The Defendants may not avail themselves of qualified immunity

Defendants argue they are entitled to qualified immunity for the malicious prosecution

claim. Dkt. 47 at 13-14. The problem with Defendants' argument is that it is "[b]ased on

allegations in the FAC" and allegations that the neighbor identified Plaintiff. *Id.* at 14. The FAC

has been withdrawn and replaced by the SAC and therefore any statements in the FAC that were

withdrawn and superseded by the SAC are not judicially binding on Plaintiff, and any

contradictions between the FAC and SAC can only be used to attack a witness's credibility. *See Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2nd Cir. 2002), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215, 226-228 (2nd Cir. 2006). The Court therefore should not consider Defendants' qualified immunity argument based upon a superseded pleading which cannot be used to bind Plaintiff in the context of a motion to dismiss. *See id.*

Even so, there is no dispute that Plaintiff was present for the incident. What is at issue is whether Defendants can continue a prosecution once they are aware of facts that demonstrate that the criminal act—the assault—was not committed by plaintiff but his partner, which even the neighbor had conveyed.

### 4.  The Court should infer that Defendants Burnett, Mitchell and Lloyd acted with actual malice due to the lack of probable cause

The actual malice element of a malicious prosecution claim may be inferred when the prosecution lacks probable cause. *Rentas v. Ruffin*, 816 F.3d 214, 221-222 (2d Cir. May 27, 2010). As set forth above, the individual Defendant MVPD officers did not have probable cause to arrest Plaintiff because there was no evidence that Plaintiff assaulted or attempted to assault anyone, Plaintiff contacted and cooperated with the MVPD, and Plaintiff's partner admitted to committing the assault. Dkt. 38 at ¶¶24-31. Based upon the total lack of probable cause to prosecute Plaintiff, the Court should infer that Defendants acted with actual malice. *See Rentas*, 816 F.3d at 221-222.

### B.  The Court should not dismiss Plaintiff's failure to intervene claim

Defendants contend that Plaintiff's failure to intervene claim is too vague and conclusory. Dkt. 47 at 15-16. Contrary to this contention, the SAC describes how Defendants Burnett, Mitchell, Hylton, Cerqua, Karoo, Lloyd, Mastrogiorgio, and/or McKennie:  (1) participated in the October 5, 2019 incident by illegal seizing, illegally searching, and/or maliciously

prosecuting Plaintiff; (2) observed the seizure and searches of Plaintiff; (3) knew about the malicious prosecution of Plaintiff; (4) knew that Plaintiff committed no crime; and (5) knew the felony complaint against Plaintiff was false, yet took no action to stop the seizure, searches, or prosecution. Dkt. at 38 at ¶¶30, 32-35, 37, 43-46, 49-52 & 54-59. The SAC therefore alleges sufficient and specific facts for the failure to intervene claim. *Id.*

### C.  The Court should not dismiss Plaintiff's supervisory liability claim

Defendants argue that the SAC does not adequately plead that Defendants, Burnett, Mitchell, Mastrogiogrio, and McKennie violated Plaintiff's rights by their own conduct. Dkt. 47 at 17. In fact, the SAC alleges that:  (1) Defendants McKennie and Mastrogiogrio arrested Plaintiff and placed him in a cell; (2) the individual Defendant MVPD officers, including Burnett, Mitchell, Mastrogiogrio, and McKennie, observed the illegal strip search and visual body search of Plaintiff in a jail cell; (3) Defendants Burnett and Mitchell interviewed Plaintiff's partner who took sole responsibility for the assault; (4) Defendants Mastrogiorgio and McKennie were the supervising officers who approved the arrest and charges against Plaintiff; and (5) Defendant Burnett swore to the felony complaint against Plaintiff. Dkt.. 38 at ¶¶32, 37-46, 50, 52, 54, 56 & 58-60. The SAC therefore contains sufficient facts regarding the personal involvement of Defendants, Burnett, Mitchell, Mastrogiogrio, and McKennie for Plaintiff's supervisory liability claims and the Court should deny Defendants' motion to dismiss.

### D.  The Court should not dismiss Plaintiff's *Monell* claims

*Monell* claims are not subject to a "heightened" pleading standard beyond that defined in Rule 8(a)(2). *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993). To survive a motion to dismiss, Plaintiff must plead sufficient facts that "(1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a

14

constitutional right." *McCrary v. County of Nassau*, 493 F.Supp.2d 581, 588 (E.D.N.Y. 2007) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)).

A plaintiff can satisfy the policy requirements by alleging either "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted). *See also Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("A § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference."); *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327 (2d Cir. 1986)  (A municipality "should not take a laissez-faire attitude toward the violation by its peace officers of the very rights they are supposed to prevent others from violating. A principle that would give a municipality immunity from § 1983 liability for injury caused by its deliberate indifference to its police officers' use of excessive force in violation of constitutional principles would foster the denial—both by policemen and by civilians—of the very rights the city is responsible for safeguarding.").

Here, Defendants argue that the SAC fails to state a *Monell* claim because Plaintiff has failed to sufficiently plead a formal policy, that City policymaking officials caused his injuries, a consistent widespread unlawful practice, or a failure to adequately train or supervise. Doc. 47 at

17-21. Defendants also argue that the SAC fails to demonstrate a direct causal link between the

City's policy or custom and Plaintiff's alleged constitutional injuries. *Id.* at 21-22. While

Plaintiff concedes that the SAC does not contain a formal policy claim or that a policymaking

official caused his injuries, Defendants' remaining arguments should be rejected.

### 1. The SAC contains sufficient facts to allege a consistent, widespread practice

"*Monell*'s policy or custom requirement is satisfied where a local government is faced

with a pattern of misconduct and does nothing, compelling the conclusion that the local

government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds*

*v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S.

701, 737 (1989)). The SAC meets this standard, alleging that the City has been on notice of

MVPD officers routinely conducing illegal strip searches and body cavity searches, but have

ignored the pattern, did not discipline the officers involved, and failed to take any corrective

actions. Doc. 38 at ¶¶68, 72 & 83-86. Moreover, no heightened pleading standard exits for

*Monell* claims. *Leatherman*,, 507 U.S. at 168, *cited by Guzman v. United States*, No. 11 CIV.

5834 JPO, 2013 WL 5018553, at *4 (S.D.N.Y. Set. 13, 2013).

"[T]he pre-discovery pleading standard for a [*Monell*] custom or practice is not a high

bar, and just a handful of instances of similar unconstitutional misconduct, in addition to a

plaintiff's own experience, can warrant proceeding to discovery. *Gavin v. City of New York*,

2021 WL 3774113, at *4 (S.D.N.Y. Aug. 24, 2021) (quoting in part *DiPippo v. Cnty. of Putnam*,

2019 WL 1004152, at *9 (S.D.N.Y. Feb. 28, 2019)) (internal quotation marks omitted). The SAC

also satisfies this requirement, alleging several successful civil rights lawsuits against MVPD

officers for conducting illegal strip searches and body cavity searches. Doc. 38 at ¶73. The SAC

also alleges numerous successful civil rights lawsuits against MVPD officers for false arrests and

malicious prosecutions. *Id.* at ¶75. In addition, the SAC alleges that the City has received

numerous civilian complaints about illegal strip searches and body cavity searches. *Id.* at ¶76.

The also SAC alleges that the Westchester County District Attorney has called on the DOJ to

investigate the MVPD's pattern of conducting illegal strip searches. *Id.* at ¶77.[5]

These allegations set forth in the SAC should be more than sufficient at the pleading

stage to establish a consistent, widespread practice of MVPD officer misconduct. *See, e.g., Babi-*

*Ali v. City of New York*, 979 F. Supp. 268 (274) (S.D.N.Y. 1997) (*Monell* claim upheld where

plaintiff cited nine *Brady* violations over several years); *Fiacco v. City of Rensselaer*, 783 F.2d

319, 331 (2d Cir. 1986) (jury verdict affirmed where five prior police incidents over five years,

with additional evidence of lack of discipline and police department indifference sufficient to

uphold a verdict of municipal liability); *Amnesty Am. v. Town of Hartford*, 361 F.3d 113, 129

(2d Cir. 2004) (single "egregious" incident enough to support *Monell*); *Ferrari v. Cnty of*

*Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011) (denying motion to dismiss where three

instances, including plaintiff's own involving claim of denial of due process by hearing officers

was sufficient basis for a the plausible inference of a widespread practice or informal custom).

Defendants' argument that Plaintiff cannot rely on other allegations of misconduct,

including other civil lawsuits, Dkt. 47 at 19, is unavailing. *Fiacco*, 783 F.2d at 328.

Further, Plaintiff can rely on allegations of other similar misconduct in the form of other

complaints of police officer misconduct whether or not that incident resulted in a sustained

finding, discipline or adjudication on the merits of the alleged violation. Indeed, that is

---

[5] Since the filing of the SAC, the DOJ has announced a pattern and practice investigation of the MVPD
pertaining to officers conducting illegal strip searches and body cavity searches. *See* United States
Department of Justice Press Release, *available at:* https://www.justice.gov/opa/pr/justice-department-launches-investigation-mount-vernon-police-department.

frequently what plaintiffs alleging *Monell* violations must rely upon. "*Monell* liability, by its nature, will often turn on evidence concerning victims other than the plaintiffs and alleged misfeasors other than the individual defendants. In addition, a given officer's disciplinary history may be probative of whether it was foreseeable to the municipality that the officer would engage in misconduct yet again." *Outlaw v. City of Hartford*, 884 F.3d 351, 380 (2d Cir. 2018) *See, e.g.*, *Reynolds*, 506 F.3d at 192 (A municipality may be found to have a custom that causes a constitutional violation when "faced with a pattern of misconduct" it "does nothing, compelling the conclusion that [it] has ... tacitly authorized ... unlawful actions"); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (plaintiff may demonstrate deliberate indifference of the municipality by showing "of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."); *Fiacco v. City of Rensselaer,* N.Y., 783 F.2d 319, 328 (2d Cir. 1986) (affirming the trial court's admission of evidence of other police officer complaints of use of excessive force as *Monell* evidence because "[w]hether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force. The City's knowledge of these allegations and the nature and extent of its efforts to investigate and record the claims were pertinent to Fiacco's contention that the City had a policy of nonsupervision of its policemen that reflected a deliberate indifference to their use of excessive force"); *McCants v. City of Newburgh*, No. 14 CV 556 VB, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014), *clarified on denial of reconsideration,* No. 14 CV 556 VB, 2014 WL 7398910 (S.D.N.Y. Dec. 9, 2014) (denying city's motion to dismiss plaintiff's *Monell* claim based on failure to train and supervise officers regrading use of excessive force where complaint included seventeen other allegations in

a seven year time period stating "it matters not that the instances only prove a claimant asserted a violation, because they evidence the City was on notice to the possible use of excessive force by its police officers on seventeen different occasions.").

*Monell* liability will apply where "a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that" it has "tacitly authorized its subordinates' unlawful actions." *Reynolds*, 506 F.3d at 192.  Repeated and consistent conduct can indicate a municipality's involvement or acquiescence to a deprivation of liberty. *See City of Canton v. Harris*, 489 U.S. 378, 395 (1989) (holding that a municipality's "policy of inaction" may rise to "the functional equivalent of a decision by the city itself to violate the constitution"). *Accord Cash v. County of Erie,* 654 F.3d 324, 334 (2d Cir. 2011)) ("[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983.").

As is set forth *supra,* the SAC has identified numerous incidents, known to the City, which bear striking similarity to the incident in question, and which the Municipal Defendants responded to with a policy of inaction.  *See Tieman v. City of Newburgh*, No. 13–CV–4178 (KMK), 2015 WL 1379652, at *21 (S.D.N.Y. Mar. 26, 2015) (quoting *Hart v. City of Binghamton*, No. 3:10–CV–1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012)); *Vann*, 72 F.3d at 1049 ("[d]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.").

### 2. The SAC contains sufficient facts to allege a failure to train or supervise

The Second Circuit sets forth three prerequisites to a finding that a municipality's inaction constitutes deliberate indifference as is required to sustain a failure to train or supervise-based *Monell* claim: (1) the policymaker knows "to a moral certainty" that their employees will confront a given situation; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or ... there is a history of employees mishandling the situation;" and (3) mishandling the situation will "frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297–298 (2d Cir. 1992).

The SAC meets the *Walker* prerequisites. First, the SAC sets forth how Plaintiff called the MVPD to respond to and investigate a scene where an assault had occurred, and potentially to arrest and search people, which is certainly a situation MVPD employees will confront on a regular basis. Dkt. 38 at ¶¶29-30. Second, the SAC sets forth how the MVPD has a history of mishandling such a situation by conducting false arrests and illegal strip searches and body cavity searches. *Id.* at ¶¶73-78). Third, there is no question that mishandling such a situation leads to false arrests and illegal searches. *Id*. Accordingly, the SAC states a plausible claim for failure to train and supervise. *See Walker*, 974 F.2d at 297–298.

### 3. The SAC shows the causal link between the City's unconstitutional policies and Plaintiff's constitutional injuries

In two sentences, Defendants argue that the SAC fails to allege the causation requirement for the *Monell* claims. Dkt. 47 at 22. The Court should reject such an undeveloped and cursory argument. *See Metropolitan Property and Casualty Ins. Co. v. Sarris*, 2017 WL 3252812, *15 (N.D.N.Y. July 28, 2017).

The SAC plausibly alleges causation. To begin with, SAC alleges that by asserting that the City's failure to take corrective action in response to the widespread pattern of false arrests and illegal searches caused the violations of Plaintiff's rights. Dkt. 38 at ¶¶72-86. Plaintiff has also alleged that the City "failed to adequately train and supervise" the MVPD officers. *Id*. at ¶87. These actions by the City gave the individual Defendant MVPD officers greater access to individuals such as Plaintiff and greater freedom knowing there would be no oversight or consequences to their misconduct, allowing them to continue to engage in the misconduct that resulted in Plaintiff's injuries.

### 4. Defendants' cases are distinguishable

Finally, the cases relied upon by Defendants to argue inadequate pleading are telling, as each of those cases involved complaints completely devoid of any relevant facts, unlike the SAC. Dkt. 47 at 19-12. In *Bethune v. Westchester Cty.,* No. 18-CV-3500 (NSR), 2020 WL 1032508, (S.D.N.Y. Mar. 2, 2020), a detainee's pro se complaint included a failure to train and supervise Monell related to a claim for substandard food while held at the Westchester County Jail by jails official and the private food vendor servicing the jail. *Id*.at *1. In his complaint, the plaintiff referred to two prior lawsuits that had been settled without any factual allegations that connected those prior cases to the facts of his case. *Id.* at *5 ("Plaintiff here does not plead any facts establishing that any alleged abuses in those prior lawsuits were caused by a failure to train officers in the proper handling of the food issues alleged in the present complaint.") (cleaned up cite).The Defendants' other cases fair no better. *Barnett v. Westchester Cty.,* No. 18-CV-2483 (NSR), 2020 WL 1032445, at *5 (S.D.N.Y. Feb. 28, 2020), dealt with a virtually identical allegation and analysis for another pro se detainees *Monell* claim pertaining to jail food service and citation to two civil lawsuits without more was deficient. In *Dumel v. Westchester Cty*., No.

19-CV-2161 (KMK), 2021 WL 738365, at *5 (S.D.N.Y. Feb. 25, 2021), the Court granted a

motion to dismiss a *Monell* claim related to the failure to provide medical care at the jail where

the plaintiff "conclusorily claim[ed] that the County has a customary practice of "provid[ing]

inmates with unconstitutional medical treatment," . . . but he fail[ed] to allege the existence of

any other similar incidents or complaints, apart from a vague allusion to "the many federal

lawsuits, grievances[,] and complaints filed against these individuals. *Id.* at *5. In contrast,

Plaintiff's *Monell* allegations include a pattern of unlawful strip searches and malicious

prosecutions in at least nine other civil cases since 199 as well as civil complaints the City has

received. SAC at ¶¶73-76. The Court should deny Defendants' motion to dismiss Plaintiff's

*Monell* claim.

### E.  The Court should dismiss Plaintiff's state law claims for negligent screening, hiring, and retention and for negligent training and supervision without prejudice

Because the City has now admitted that the individual Defendant MVPD officers were

acting under color of law and within the scope of their employment. Dkt. 47 at 23-24. Plaintiff

agrees that the state law claims for negligent screening, hiring, and retention and for negligent

training and supervision should be dismissed without prejudice.  *Schoolcraft v. City of New York*,

103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015).

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny

Defendants' motion to dismiss.

RESPECTFULLY SUBMITTED,


**ISRAEL ROMAN**


/s/ Heather Lewis Donnell
*One of Plaintiff's Attorneys*

LOEVY & LOEVY
Attorneys for Plaintiff
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607
(312) 243-5900


Jarrett Adams
LAW OFFICE OF JARRETT ADAMS,
PLLC 40 Fulton Street, Floor 23
New York, NY 10038

23