UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISRAEL ROMAN,

                                Plaintiff,

                v.

THE CITY OF MOUNT VERNON, *et al.*,

                                Defendants.

No. 21-CV-2214 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Anand Swaminathan, Esq.
Heather L. Donnell, Esq.
Loevy & Loevy
Chicago, IL
*Counsel for Plaintiff*

Angela Perkins, Esq.
Jarrett Adams, Esq.
Law Office of Jarrett Adams, PPLC
New York, NY
*Counsel for Plaintiff*

Andrew C. Quinn, Esq.
Anthony J. DiFiore, Esq.
Marykate Acquisto, Esq.
Matthew K. Schieffer, Esq.
Steven J. Bushnell, Esq.
The Quinn Law Firm, PLLC
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Israel Roman ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983 ("§ 1983")

and New York state law, against the City of Mount Vernon ("Mount Vernon"), Mount Vernon

Police Department ("MVPD") Detective Anthony Burnett ("Burnett"), MVPD Detective

Mitchell ("Mitchell"), MVPD Police Officer Tariq K. Hylton ("Hylton"), MVPD Police Officer

Cerqua ("Cerqua"), MVPD Police Officer Saied Karoo ("Karoo"), MVPD Police Officer Lloyd ("Lloyd"), MVPD Lt. Nicholas MVPD Mastrogiorgio ("Mastrogiorgio"), MVPD Sgt. Janie McKennie ("McKennie"; with Burnett, Mitchell, Hylton, Cerqua, Karoo, Lloyd, Mastrogiorgio, "Defendant Officers"; altogether, "Defendants"), alleging that Mount Vernon, including Defendant Officers, "routinely conduct illegal strip searches and visual and physical body cavity searches of Mount Vernon's citizens, in violation of the law and in violation of the City of Mount Vernon's own purported policies," which "disproportionately affect[s] Mount Vernon's residents of color," including Plaintiff.  (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 38).)[1, 2, 3] Before the Court is Defendants' Partial Motion To Dismiss several claims brought in the SAC (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 45).)

For the reasons stated herein, the Motion is denied in part and granted in part.

I.  Background

A.  Allegations and Materials Appropriately Considered

As two separate but interrelated threshold matters, the Court must determine the proper treatment of: (1) potentially contradictory allegations within successive iterations of the pleading; and (2) two exhibits submitted alongside Defendants' Motion.  Regarding the latter, Defendants submitted a New York State incident report, (*see* Decl. of Steven Bushnell

---

[1] The SAC states that Mitchell's "first name is unknown" but "he is believed to use Badge No. 163."  (SAC ¶ 14.)

[2] The SAC fails to provide Cerqua's or Lloyd's first names.  (*See* SAC ¶¶ 16, 18; *see generally id.*)

[3] The SAC also names additional "unidentified Mount Vernon Police Department employees and officers" as defendants in the case caption.

("Bushnell Decl.") (Dkt. No. 46) Ex. C (Dkt. No. 46-3), and a felony complaint, (*see* Bushnell Decl. Ex. D (Dkt. No. 46-4).

Defendants appear to point to the prior pleadings and the extrinsic evidence as alternative routes to the same end: a way for Defendants to try to establish probable cause to arrest Plaintiff in order to defeat certain claims, notwithstanding the early stage of litigation.  The Court evaluates each route and the distinct governing doctrine.  In doing so, the Court concludes that it can consider neither the exhibits submitted nor the prior pleadings.

1.  Extrinsic Evidence

Defendants essentially argue that there are two separate but individually sufficient reasons as to why the Court can consider the exhibits submitted: that Plaintiffs relied upon the exhibits in drafting the SAC, and that the Court can take judicial notice of the exhibits themselves.  (*See* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 2 n.1, 6 (Dkt. No. 47); Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply Mem.") 3–4 (Dkt. No. 53).)  Neither argument withstands scrutiny.

a.  Applicable Law

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the [c]omplaint would convert the Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). However, "the Court's consideration of documents attached to, or incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on a Rule 12(b)(6) motion to dismiss," courts may

3

"consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." (alteration omitted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

"Moreover, 'where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 394 (S.D.N.Y. 2015) (alteration omitted) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). As the Second Circuit has reiterated, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (italics omitted).

Finally, "[u]nder Federal Rule of Evidence 201, a 'court may judicially notice a fact that is not subject to reasonable dispute." *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) (quoting Fed. R. Evid. 201(b)). "Such facts must either be (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* (citation and quotations omitted). In other words, facts appropriate for judicial notice must "either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).

4

b.  Applying the Law

Defendants, broadly speaking, argue that the documents are appropriately within the Court's consideration at this procedural posture because Plaintiff "had knowledge [of] and relied on" the documents "in bringing the suit."  (Defs.' Mem. 5–6 (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d. Cir. 1993)).  Specifically, Defendants assert that they "served Plaintiff with the MVPD reports, victim identifications and victim witness statements"—which encompasses the two exhibits at issue—"on September 4, 2020," more than six months prior to the commencement of this litigation, (Defs.' Reply Mem. 3; *see also* Defs.' Mem. 2 n.1), and Plaintiff does not dispute this, (*see* Defs.' Reply Mem. 3 (noting that Plaintiff does not dispute this assertion in his briefing papers)).  What Plaintiff does dispute, by contrast, is Defendants' characterization of the standards governing extrinsic evidence consideration, asserting it is "no longer the current state of the law."  (Pl.'s Mem. of Law in Opp. to Mot. ("Pl.'s Mem.") 5 (Dkt. No. 52).)  To wit, Plaintiff writes, *Brass* has been curtailed following misinterpretation on this very point.  (*See id.* at 5–6 (citing *Chambers*, 282 F.3d at 153).)

At the outset, it must be said that Plaintiff misstates the law and unfairly maligns Defendants' reading of applicable precedent.  In *Chambers*, the Second Circuit did in fact make clear that *Brass* has been "misinterpreted on occasion," but so, too, does *Chambers* only "*reiterate . . .* that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  282 F.3d at 153 (second emphasis in original).  Indeed, *Brass* states clearly—albeit in "dicta," *id.*—that a district court can consider an extrinsic document "either in [a] plaintiff['s] possession or of which plaintiffs had knowledge" if the plaintiff "relied on" said document "in bringing suit."  *Brass*, 987 F.2d at 153.  This standard

5

has not changed.  Indeed, published Second Circuit opinions continue to cite *Brass* for this very proposition.  *See, e.g., Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (citing *Brass* for the documents a district court may consider at the pleadings stage); *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (citing *Chambers* quoting *Brass* for the same principle); *see also Grant v. County of Erie*, 542 F. App'x 21, 23 n.1 (2d Cir. 2013) (summary order) (citing *Brass*); *Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183, 187 n.2 (2d Cir. 2012) (summary order) (same).

Plaintiffs are correct, however, that, on the merits, the SAC does not appear to "rel[y] heavily upon" the documents' "terms and effect."  *Chambers*, 282 F.3d at 153.  Because "[a] motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint," *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)), "[i]n most instances where [the] exception [permitting review of extrinsic documents at this stage] is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint," *Global Network Commc'ns*, 458 F.3d at 157.  This is not such an instance.

"[T]here is no indication in the record that [P]laintiff relied on these documents in drafting the [C]omplaint."  *Allyn v. Rockland County*, No. 12-CV-5022, 2013 WL 4038602, at *4 (S.D.N.Y. July 30, 2013), *aff'd*, 646 F. App'x 60 (2d Cir. 2016).  The reports are not referenced specifically, nor are they quoted.  (*See generally* SAC.)  It is instead more likely that "Defendant[s'] defense . . . 'relies heavily' upon the contents of the proffered documents and recording."  *Yi Sun v. N.Y.C. Police Dep't*, No. 18-CV-11002, 2020 WL 4530354, at *7 n.7

(S.D.N.Y. Aug. 6, 2020), *reconsideration denied*, 2020 WL 6820825 (S.D.N.Y. Sept. 2, 2020).

That, however, does not justify consideration at this stage. *See id.* Therefore, the Court finds

that Plaintiff did not rely upon either of the exhibits, despite how much Defendants may come to

do so at later stages of this Action, and therefore will not consider them as having been integral

to the SAC.

Precedent buttresses the Court's conclusion. Though "[s]ome courts have reasoned that it

is proper to consider incident reports, arrest reports, and police complaints in resolving 12(b)(6)

motions for false arrest claims because these documents are integral to such claims . . . [,] [o]ther

courts . . . have reached the opposite conclusion." *Alvarez*, 95 F. Supp. 3d at 394–95 (collecting

cases). Recent caselaw favors the latter. *See, e.g.*, *Bey v. Antoine*, No. 19-CV-1877, 2021 WL

3725985, at *7 (E.D.N.Y. Aug. 23, 2021) (observing that "courts generally decline to" consider

arrest reports on motions to dismiss); *J.H. v. City of Mount Vernon*, No. 18-CV-4399, 2019 WL

1639944, at *3 (S.D.N.Y. Apr. 15, 2019) (refusing to consider a domestic incident report arising

from an excessive force claim on a motion to dismiss); *Serrata v. Givens*, No. 18-CV-2016, 2019

WL 1597297, at *4 (E.D.N.Y. Apr. 15, 2019) (same regarding an arrest report for a cause of

action sounding in wrongful arrest); *Jones v. Rivera*, No. 13-CV-1042, 2015 WL 8362766, at *3

(S.D.N.Y. Dec. 7, 2015) (same).

Finally, the Court cannot take judicial notice of the exhibits at issue because they fail to

meet the high bar imposed by Rule 201. There is no credible argument that the allegations

contained in the arrest report are "common knowledge," and Defendants have not shown that the

assertions in the exhibits are "capable of accurate and ready determination by resort to sources

whose accuracy cannot reasonably be questioned" such that the Court could take judicial notice

of the report. *Dixon*, 994 F.3d at 102 (quotation marks omitted). Instead, the narratives put

7

forward in the exhibits are more properly understood as "simply one side's characterization of past events," *Bey*, 2021 WL 3725985, at *7, much the same way Plaintiff's allegations are. Accordingly, at this stage of litigation, the Court can—at most—take judicial notice of the exhibits "not for the truth of their contents, but rather [only] to establish their existence." *Alvarez*, 95 F. Supp. 3d at 397; *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (taking judicial notice of documents only for what they state, not to prove the truth of their contents); *J.H.*, 2019 WL 1639944, at *3 (holding that the court "may consider [the plaintiff's] arrest documents, but only for the fact of their existence, not for the truth of their contents").

### 2.  Amended Complaints as Replacing Prior Complaints

Defendants argue that the Court should "credit Plaintiff's previous admission[s]," made in prior iterations of his complaint, specifically as it relates to questions of probable cause in light of changes Plaintiff made to the allegations in this arena.  (Defs.' Reply Mem. 3 (quoting *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *3 (S.D.N.Y. Mar. 5, 2020)).)

### a.  Applicable Law

An amended complaint "ordinarily supersedes the original, and renders it of no legal effect." *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998) (quotation marks omitted); *see also Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint . . . supersedes the original and renders it of no legal effect."  (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977))); *Pratt v. City of New York*, 929 F. Supp. 2d 314, 319 n.3 (S.D.N.Y. 2013) ("[T]he general rule is that an amended complaint supersedes an original complaint and renders it without legal effect." (citing *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000); and *Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999))).

8

To date, the Court is aware of no ironclad Second Circuit case on how courts must treat successive iterations of pleadings when a plaintiff has *removed* allegations so as to vitiate a potential affirmative defense—particularly one that has already been foreshadowed via a pre-motion letter.  Arguably the most applicable precedent is *Tran v. Alphonse Hotel Corp.*, a labor law case, where the plaintiff first alleged that he worked 116 hours per work and then alleged in an amended complaint that he worked only 54 hours per week.  *See* 281 F.3d 23, 32 (2d Cir. 2002), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006). Subsequently, the plaintiff filed a second amended complaint that did not specify the numbers of hours worked, but moved post-trial to amend the second amended complaint to "conform to the evidence," which was for more than 54 hours per week.  *Id.*  The Second Circuit affirmed the district court's decision to permit the plaintiff to refile, as "[a] statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission."  *Id.*  The court noted simply that "the factfinder may very well find that such a contradictory statement reduces the credibility of the witness."  *Id.*  As the fact pattern makes clear, however, this case cannot be said to be highly instructive to the issue at hand.

Lacking clear guidance, district "[c]ourts in this circuit have taken various approaches to dealing with allegations in an amended complaint that directly contradict allegations set forth in a prior version of the complaint."  *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 712 (S.D.N.Y. 2021) (collecting cases) (alteration in original) (quoting *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *4 (E.D.N.Y. June 19, 2020)).  In some cases, courts have found that irrespective of the contradictions, "once an amended pleading is filed, a court may not import information that was contained in the prior

pleading but omitted from the amended pleading." *Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*, No. 08-CV-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) (citing *Tran*, 281 F.3d at 32); *see also Phillips v. City of Middletown*, No. 17-CV-5307, 2018 WL 4572971, at *4 (S.D.N.Y. Sept. 24, 2018) (noting that amended complaint omitted allegations in original complaint that undermined excessive force claim; concluding that "because [the] [p]laintiff has filed the Amended Complaint, the Court will not import information from the original Complaint"); *Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15-CV-4546, 2016 WL 3963113, at *3 (S.D.N.Y. July 20, 2016) ("Although the change in the Complaint – to a date by which [the] [p]laintiff would have completed ninety days of work before taking leave [and thus would have been eligible for certain benefits] – raises doubt, at the motion to dismiss stage the truthfulness of the allegations is assumed, and any attempt to use [the] [p]laintiff's prior pleadings against her as an admission is premature").

On the other hand, other courts have found that "where a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (alteration in original) (quoting *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)), *aff'd*, 356 F. App'x 535 (2d Cir. 2009); *Wheeler v. Slanovec*, No. 16-CV-9065, 2019 WL 2994193, at *6 (S.D.N.Y. July 9, 2019) ("In cases 'where allegations in an amended pleading directly contradict pleadings in the original complaint, courts have disregarded the amended pleading." (internal quotation marks omitted) (quoting *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070, 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014)); *see also Kilkenny*, 2012 WL

1638326, at *5 ("There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings."); *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011) (noting that "a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict the facts set forth in his original complaint" (citation, alteration, and quotation marks omitted)), *aff'd*, 457 F. App'x 40 (2d Cir. 2012); *Colliton*, 2008 WL 4386764, at *6 ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true" (quotation marks and alterations omitted)); *Wallace*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (dismissing pro se amended complaint based on facts "set forth in his original complaint" where "[t]he plaintiff blatantly change[d] his statement of the facts in order to respond to the defendants' motion to dismiss").

### b.  Plaintiff's Subsequent Amendment

In Plaintiff's Complaint, filed on March 13, 2021, he alleges that the individual assaulted giving rise to Plaintiff's criminal charge (the "victim" or the "Complaining Witness") gave a statement to the police that Plaintiff "pushed" him.  (Compl. ¶ 35 (Dkt. No. 1).)  In other words, Plaintiff alleged—and therefore conceded—in the Complaint that the Complaining Witness gave a statement to the police, and specifically Burnett, that provided probable cause.  Plaintiff further alleged in the Complaint that he "disputes and has always disputed ever pushing the Complaining Witness" and that "the Complaining Witness's allegations were insufficient to make out the elements of" the crimes charged.  (*Id.*)

11

On May 17, 2021, Defendants submitted a pre-motion letter to the Court that relied on this very concession.  Specifically, Defendants previewed their argument as follows:

> Probable cause for is a complete and absolute defense to a claim for false arrest.  Probable cause for *any* offense, not only the offense charged, renders an arrest privileged.  Defendants had probable cause to arrest Plaintiff for Harassment in the Second Degree, because Plaintiff alleges that the victim/complaining witness informed Defendants that Plaintiff pushed him.  It is well-established that police officers are permitted to make a finding of probable cause and base an arrest on statements from a victim.

(Letter from Andrew C. Quinn, Esq., to Karen Newirth, Esq. (May 17, 2021) 1–2 (Dkt. No. 18) (citations omitted).)

The following week, Plaintiff's counsel wrote a letter to Defendants' counsel stating an intention to amend the pleading while neglecting to detail what deficiencies would be cured in the amended complaint.  (Dkt. No. 19.)  Following the Court's granting of an extension to file the amended complaint, (Dkt. No. 21), Plaintiff filed the Amended Complaint, (Am. Compl. ("AC") (Dkt. No. 22)).

The AC's allegations regarding the Complaining Witness's statement are curtailed but still present.  In the entirety of Plaintiff's allegations on this point, the Amended Complaint reads: "The Complaining Witness also provided statements that were inconsistent with his prior statements, insofar as he alleged that Mr. Roman pushed, but did not hurt, him.  While [Plaintiff] disputes and has always disputed ever pushing the Complaining Witness."  (AC ¶ 36.)

Yet again, Defendants filed a pre-motion letter stating that Plaintiff had not cured the probable cause issue.  (*See* Letter from Andrew C. Quinn, Esq., to Karen Newirth, Esq. (June 28, 2022) 1–2 (Dkt. No. 23).)  In his responding pre-motion letter, Plaintiff argued otherwise.  (*See* Letter from Karen Newirth, Esq. to Andrew C. Quinn, Esq. (July 6, 2021) 2–4 (Dkt. No. 24).)

Plaintiff nonetheless sought to file yet another amended complaint when the Parties met for the pre-motion conference.  (*See* Dkt. (minute entry of Oct. 7, 2021).)

On his third attempt, Plaintiff further narrowed the reference to the Complaining Witness's statements, stating in its entirety only: "At all times, [Plaintiff] denied pushing the Complaining Victim and denied any involvement in any crime on October 5, 2019."  (SAC ¶ 66.)  In other words, Plaintiff removed all references to the victim's statements; it remains only an implication, an odd vestige insofar as that sentence is the *only* reference to a "push" throughout the entirety of the SAC.

Having already discussed at length the different approaches other courts in the Second Circuit and in this district have taken, *see supra* I.A.2.a, the Court ultimately is of the opinion that it cannot negate or disregard the allegations in the SAC for sake of the FAC for two reasons. First, while a potentially important omission, the omission at issue is not, by definition, a "contradict[ion]," as the SAC does not affirmatively state something contrary to what was said in its prior incarnations that would "justify . . . disregard[ing] the amended allegations."  *Robles*, 2020 WL 3403191, at *5.  *See Brooks*, 2014 WL 1875037, at *3 ("Where, however, an amended pleading is not in 'direct' contradiction with the original pleading, courts apply the general rule recognizing that an amended pleading completely replaces the original pleading."); *Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens*, No. 13-CV-965, 2014 WL 808013, at *6 (E.D.N.Y. Feb. 28, 2014) (finding that, "[t]aken as a whole, while not congruous, [the] [p]laintiff's allegations are not in such direct contradiction that the [c]ourt is moved to abandon the usual deference afforded to an [a]mended [c]omplaint").  Second, notwithstanding the sleight of hand Plaintiff seems to undertake with such tactics, "a prior inconsistent pleading should not trump the [c]ourt's obligation under Rule 12(b)(6) to accept a complaint's allegations as true."  *Palm Beach*, 2011

13

WL 1655575, at *6.  Accordingly, the Court will not revert back to Plaintiff's prior pleadings, either with respect to probable cause or more generally.

     B.  Factual Background

     For the above-stated reasons, the following facts are drawn solely from the SAC and are assumed to be true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

     1.  Plaintiff's Particular Incident

     Plaintiff "is a 29-year-old Latino man who, until recently, resided in Mount Vernon." (SAC ¶ 10.)  On October 5, 2019, Plaintiff "was involved in a dispute with a neighbor" involving Plaintiff's daughter, who was with the neighbor and the neighbor's daughter.  (*Id.* ¶ 24.)  "The dispute escalated and [Plaintiff's] partner struck the neighbor in the head with a bat."  (*Id.*)  Plaintiff, however, "did not physically assault the neighbor nor was he present in the room when it occurred."  (*Id.* ¶ 25.)  Plaintiff "did not have any intent to use the bat against the neighbor or to physically injure the neighbor," nor did he "attempt to use the bat against or cause physical injury to the neighbor."  (*Id.* ¶¶ 26, 27.)  Indeed, Plaintiff alleges that he "did not cause any physical injury to the neighbor."  (*Id.* ¶ 28.)

     Following this escalation between Plaintiff's neighbor and Plaintiff's partner, Plaintiff "and his partner left the neighbor's apartment and called the police to report what had occurred." (*Id.* ¶ 29.)  MVPD officers, "including but not limited to Hyloton, Cerqua, Karoo, and/or Mastrogiogrio," responded to the call.  (*Id.* ¶ 30.)  Plaintiff and his partner "fully cooperated with the Defendant Officers' investigation," (*id.*), including the fact that Plaintiff's "partner admitted to Defendant Officers that she had struck the neighbor," (*id.* ¶ 31).  "Despite his cooperation and

the fact that he had not hit or struck the neighbor, [Plaintiff] was arrested on the scene by

Defendant[] Officers, including but not limited to Hylton, Cerqua[,] McKennie[,] and/or

Mastrogiorgio." (*Id.* ¶ 32.)

Following his arrest, "at least one of Defendant Officers, including but not limited to []

Hylton and/or Cerqua," searched Plaintiff, including "patt[ing] down his entire body and

search[ing] his pockets." (*Id.* ¶ 33.) Plaintiff alleges that he "fully cooperated with this search,"

(*id.* ¶ 34), and that "[n]o weapons, drugs[,] or other contraband was found on [Plaintiff's]

person," (*id.* ¶ 35). Following the search, Plaintiff "was transported to the [MVPD]." (*Id.* ¶ 36.)

Once there, Plaintiff was ordered into a cell—in direct view of both MVPD officers (including

female officers) as well as other detainees (including detainees being transported to and from

court). (*See id.* ¶¶ 37–39.)

Plaintiff was then ordered to undertake a strip search, meaning he was to "remove each

article of clothing, shake it out, and set it aside. [Plaintiff] was directed to remove and then

replace his top, shoes, socks, pants, and underwear, which he did." (*Id.* ¶ 43.) Plaintiff states

that he objected to the search but complied nevertheless. (*Id.* ¶ 41.) The search "revealed no

contraband, weapons, or drugs, because [Plaintiff] possessed no contraband, weapons, or drugs."

(*Id.* ¶ 44.) Plaintiff states that, as a result, "there was no legal basis to conduct a visual body

cavity search" but was nonetheless "directed . . . to turn around, lift his genitals, squat, and

cough." (*Id.*) Plaintiff again objected but ultimately complied, meaning "his buttocks, anus, and

genitals were exposed" to MVPD officers and other passersby. (*Id.* ¶ 45.) Plaintiff avers that the

search "revealed no contraband, weapons, or drugs." (*Id.* ¶ 46.) During the strip and body cavity

searches, there was "[n]o protective covering, screen[,] or other protective shield . . . to protect

[Plaintiff's] privacy." (*Id.* ¶ 40.)

"Following th[e] strip and body cavity search[es], [Plaintiff] was placed in another cell where he was held overnight."  (*Id.* ¶ 48.)  Additionally, Plaintiff alleges, "there is no official police report documenting this strip search."  (*Id.* ¶ 47.)

MVPD interviewed Plaintiff, where he "repeated the account of events," which comported with his partner's and his neighbors retelling of events.  (*Id.* ¶¶ 49–51.)  Nonetheless, Plaintiff "was held at the Mount Vernon jail until October 7, 2019, when he was presented to a judge and released on his own recognizance.  During this time, [Plaintiff] was separated from his children."  (*Id.* ¶ 53.)

On October 7, 2019, Plaintiff was "charged by a felony complaint sworn to by [] Burnett with Attempted Assault in the Second Degree."  (*Id.* ¶ 54.)  Plaintiff alleges, however, that "[a]t the time he sworn [sic] the felony complaint, [] Burnett knew that it contained false information. Specifically, [] Burnett knew that Plaintiff never struck the neighbor that is because at the time he swore the criminal complaint it was clear that [Plaintiff] never struck, hit[,] or assaulted the neighbor."  (*Id.* ¶ 58.)  Plaintiff further alleges that the remaining Defendant Officers, "having observed and/or participated in the investigation of the events described above, knew that [Plaintiff] had not committed any crime and therefore that the filing of the felony complaint violated Plaintiff's rights.  Despite this knowledge, these defendants took no steps to intervene to prevent the violation of Plaintiff's rights."  (*Id.* ¶ 59.)

As a result of charges being filed against Plaintiff, "the Office of Children and Family Services opened an investigation into suspected child abuse or maltreatment. That investigation was determined to be 'unfounded' on December 18, 2019."  (*Id.* ¶ 62.)

On November 18, 2019, Lloyd swore to a Superseding Misdemeanor Information, charging Plaintiff and his partner with Assault in the Third Degree, Harassment in the Second

Degree, Criminal Possession of a Weapon in the Fourth Degree, and Endangering the Welfare of a Child.  (*Id.* ¶ 63.)  On February 24, 2020, Plaintiff's charges were dismissed.  (*Id.* ¶ 67.)

Plaintiff further alleges that, "by virtue of their ranks," Matsrogiorgio, McKennie, Burnett, and Mitchell "were obligated to supervise" other MVPD officers, including Lloyd, which includes ensuring legal compliance, but failed to do so insofar as they did not take "any action to address the illegal misconduct described herein."  (*Id.* ¶¶ 69–70.)

Plaintiff avers that as a result of these actions he has "suffered emotional distress, anxiety, humiliation, shame and terror, as well as reputational harm."  (*Id.* ¶ 100.)

### 2.  Mount Vernon's Practices

Plaintiff alleges that Mount Vernon "has long been on notice that MVPD officers routinely engage in illegal strip and visual and/or body cavity searches of arrestees, . . . particularly against Black and Latino citizens."  (*Id.* ¶ 68.)

Plaintiff alleges that the MVPD policy governing strip and cavity searches states the following:

- An arrestee "will not be subject to a full strip search unless there is a rational basis for doing so";

- "The Desk Officer or supervisor present will decide if a strip search should be conducted and is responsible that the search is conducted properly";

- A strip search is only to be "utilized when the arresting officer reasonably suspects that weapons, contraband[,] or evidence may be concealed upon the person or in their underclothing, in such a manner that they may not be discovered by the previous search methods" or when other factors, such as "the nature of the crime (serious violent felony), arrest circumstances, subject's reputation

> (extremely violent person), act of violence, and discoveries from previous
> searches," necessitate such a search;
>
> - A strip search "will be conducted by a member of the same sex as the arrested
>   person in a secure area in outermost privacy and with no other arrestee present";
>
> - A strip search is to be officially recorded;
>
> - "Under no condition" is a cavity search to be performed absent a warrant, as it
>   requires "more than a mere chance of finding something" and the warrant
>   requirement can only be waived under "[c]ompelling, exigent circumstances";
>
> - A cavity search "must be conducted by a medical doctor in privacy, in an
>   examining room . . . so as to insure [sic] hygienic surroundings and minimal
>   discomfort."

(*Id.* ¶ 71.)

Plaintiff alleges that "this policy is regularly and routinely disregarded and the City has long been on actual and/or constructive notice that MVPD officers including the Defendant Officers routinely conduct illegal strip, visual and/or body cavity searches of detainees and arrestees in Mount Vernon." (*Id.* ¶ 72.) Such conduct, Plaintiff alleges, "gave rise to a [multitude of] successful civil rights lawsuit[s]." (*Id.* ¶ 73.) So, too, Plaintiff avers, has Mount Vernon "been on actual and/or constructive notice that MVPD officers including the Defendant Officers routinely fabricate crimes, falsify reports, illegally detain individuals who have committed no crime, and use excessive force against citizens, particularly Black and Latino citizens." (*Id.* ¶ 74; *see also id.* ¶ 75 (discussing additional civil rights cases filed "alleg[ing] just this type of misconduct").) To that end, Mount Vernon "has also received numerous complaints by civilians about illegal strip and/or body cavity searches through formal and informal channels,

as well as complaints about MVPD officers fabricating crimes, falsifying reports, illegally detaining individuals who have committed no crime, and using excessive force against citizens," "demonstrat[ing] a clear and obvious pattern of the type of misconduct at issue." (*Id.* ¶ 76.) The Westchester County District Attorney has also requested the Department of Justice investigate such practices, as has she written to MVPD's Commissioner of Public Safety regarding such practices. (*Id.* ¶¶ 77, 78.)[4] "Despite such notice," Mount Vernon "failed to take corrective action," leading to the alleged violations in this Action. (*Id.* ¶ 86.)

C. Procedural Background

Plaintiff filed his initial complaint on March 13, 2021. (Dkt. No. 1.) Plaintiff filed the AC on June 14, 2021. (Dkt. No. 22.) Plaintiff filed the SAC on October 26, 2021. (Dkt. No. 38.)

Defendants filed the instant Motion and supporting papers on December 7, 2021. (*See* Not. of Mot.; Bushnell Decl.; Defs.' Mem.) Following several extensions, (Dkt. Nos. 49, 51), Plaintiff timely filed his Opposition on January 7, 2022, (Pl.'s Mem.). Finally, Defendants filed a Reply on January 21, 2022. (Defs.' Reply Mem.)

---

[4] The Court may take judicial notice of the fact that the Department of Justice has since responded to the District Attorney's request by launching the requested investigation, *see* Press Release, U.S. Dep't of Justice, Justice Department Launches Investigation of the Mount Vernon Police Department (Dec. 3, 2021), https://www.justice.gov/opa/pr/justice-department-launches-investigation-mount-vernon-police-department. *See Meisel v. Westchester County*, No. 18-CV-7202, 2020 WL 3472500, at *3 n.4 (S.D.N.Y. June 25, 2020) (holding that district court could take judicial notice of "DOJ Report" regarding conditions of Westchester County Jail); *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-CV-4921, 2020 WL 1330283, at *10 (S.D.N.Y. Mar. 22, 2020) (taking judicial notice of DOJ filing); *cf. HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *4 (S.D.N.Y. Sept. 27, 2012) ("[I]t is well established that courts may take judicial notice of publicly available documents on a motion to dismiss.") (collecting cases).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

    B.  Analysis

    Plaintiff brings the following federal claims: illegal search and seizure; malicious prosecution; failure to intervene; *Monell* liability; and supervisor liability.  (SAC ¶¶ 104–35.) Additionally, Plaintiff brings the following supplemental state law claims: malicious prosecution; negligent screening, hiring, and retention; negligent training and supervision; and, respondeat superior liability.  (SAC ¶¶ 136–55.)  Defendants' Motion seeks to dismiss: state and federal malicious prosecution claims; federal failure to intervene claims; federal supervisory liability claims; *Monell* claims; state law negligent screening, hiring, and retention claim; state law negligent training and supervision claim; and state respondeat superior claim.  (*See generally* Defs.' Mem.)  The Court reviews the claims at issue in the Motion and the arguments thereabout in turn.

### 1.  State, Federal Malicious Prosecution

Defendants argue that Plaintiff fails to adequately allege that the Defendant Officers initiated the prosecution or that the Defendant Officers acted with actual malice, two necessary elements of a malicious prosecution claim on both the state or federal level.  (*See* Defs.' Mem. 8–9, 14–15; Defs.' Reply Mem. 5.)  Defendants also contend that there existed probable cause for the arrest and prosecution, which serves as an absolute defense to the malicious prosecution claim.  (*See* Defs.' Mem. 9–12; Defs.' Reply Mem. 5.)  Finally, Defendants argue that the Defendant Officers are entitled to qualified immunity.  (*See* Defs.' Mem. 13–14; Defs.' Reply Mem. 5.)

The Court addresses these arguments to the extent necessary.

### a.  Applicable Law

To state a claim for malicious prosecution under § 1983, a plaintiff must allege the same elements of a state-law malicious prosecution claim.  *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).  "In order to state a claim for the tort of malicious prosecution under New York State law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions.'"  *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)); *see also Blue v. City of New York*, No. 16-CV-9990, 2018 WL 2561023, at *4 (S.D.N.Y. June 4, 2018) ("The elements of malicious prosecution are: (1) the initiation of a prosecution against a plaintiff; (2) without probable cause; (3) begun with malice; and (4) resulting in a termination in the plaintiff's favor." (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); and *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996)).

In addition to the elements of a state-law malicious prosecution claim, however, to state a federal malicious prosecution claim under § 1983, a plaintiff must also have suffered a post-arraignment deprivation of liberty implicating his Fourth Amendment rights. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) ("Additionally, there must be a post-arraignment seizure for a § 1983 malicious prosecution claim . . . ."); *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000) ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty.  A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'" (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995))).  In other words, "to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Woodward v. Morgenthau*, 740 F. Supp. 2d 433, 439 (S.D.N.Y. 2010) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

### b.  Application

Defendants do not dispute that Plaintiff's criminal charges ended in a favorable disposition, thereby satisfying the second element of a malicious prosecution claim.  (*See generally* Defs.' Mem.; Defs.' Reply Mem.)  Defendants do, though, make numerous arguments on the remaining elements.  (*See id.*)  The Court reviews them in turn.

### i.  Initiation of Prosecution

Defendants argue that Plaintiff has put forward no allegations showing Mitchell, Hylton, Cerqua, Karoo, Lloyd, Mastrogiorgio, and McKennie initiated the prosecution, thereby falling

short of the first requirement of a malicious prosecution claim.  (*See* Defs.' Mem. 8–9.)
Defendants tacitly concede, therefore, that Plaintiff has pled sufficient allegations regarding
Burnett's role.  (*See* Pl.'s Mem. 10 & n.4.)  In response, Plaintiffs only rebut such an assertion
with respect to Mitchell and Lloyd, voluntarily dismissing this claim as to Hylton, Cerqua,
Karoo, Mastrogiorgio, and McKennie.  (*See id.*)  Accordingly, the Court dismisses Plaintiff's
malicious prosecution claims against all Defendants save for Mitchell, Burnett, and Lloyd, and
evaluates whether Plaintiff's allegations as to Mitchell or Lloyd satisfies his burden.

      To initiate a prosecution, a defendant "must 'play[ ] an active role in the prosecution,
such as giving advice and encouragement or importuning the authorities to act.'"  *Maldonado v.
City of New York*, No. 11-CV-3514, 2014 WL 787814, at *6 (S.D.N.Y. Feb. 26, 2014) (alteration
in original) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)).  "In
malicious prosecution cases against police officers, plaintiffs have met this first element by
showing that officers brought formal charges and had the person arraigned, or filled out
complaining and corroborating affidavits, or swore to and signed a felony complaint."  *Llerando-
Phipps v. City of New York*, 390 F. Supp. 2d 372, 382–83 (S.D.N.Y. 2005) (citations omitted).
"In addition, a police officer 'may be held liable for malicious prosecution when [he] creates
false information likely to influence a jury's decision and forwards that information to
prosecutors.'"  *Maldonado*, 2014 WL 787814 at *6 (alteration in original) (quoting *Cameron v.
City of New York*, 598 F.3d 50, 64 (2d Cir. 2010)).  This element is also met when "an officer
causes the prosecution to initiate or continue criminal charges without disclosing evidence that
would negate probable cause."  *Newson v. City of New York*, No. 16-CV-6773, 2019 WL
3997466, at *9 (E.D.N.Y. Aug. 23, 2019) (citing *Dufort v. City of New York*, 874 F.3d 338, 355
n.7 (2d Cir. 2017)).  "Separately, [ ] officer[s] may be liable where they impede the prosecution's

ability to abide by its own constitutional duty to disclose exculpatory evidence to the defense." *Id*. (citing *Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019)) (collecting cases).

Finally, "there is no requirement that an officer have direct contact with the prosecutor." *Maldonado*, 2014 WL 787814, at *6 (citations and quotation marks omitted). "[T]he chain of causation [in a malicious prosecution suit] need not be considered broken if [a defendant government agent] . . . could reasonably foresee that his misconduct [would] contribute to an independent decision that results in a deprivation of liberty." *Cameron*, 598 F.3d at 63–64 (first, third, and fifth alterations in original) (quoting *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007)). "Although there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Id*. at 64 (quoting *Llerando-Phipps*, 390 F. Supp. 2d at 383). Indeed, district courts in the Second Circuit have "held that a jury could find an officer liable despite the fact that he did not bring the formal charges or fill out a complaining affidavit, [because] that officer reported the evidence to the complaining officer." *Bryant v. Crowe*, 697 F. Supp. 2d 482, 492–93 (S.D.N.Y. 2010) (citing *Llerando-Phipps*, 390 F. Supp. 2d at 383); *see also Phelps v. City of New York*, No. 04-CV-8570, 2006 WL 1749528, at *4 (S.D.N.Y. June 27, 2006) (holding that because officers' "statements to [the arresting officer] caused [the plaintiff] to be arrested and ultimately charged[,] . . . their actions could be deemed to have initiated the prosecution").

Plaintiff asserts that Mitchell and Lloyd "continued the prosecution of Plaintiff because they knew the felony complaint contained false information and because they withheld exculpatory evidence." (Pl.'s Mem. 10 (citing SAC ¶¶ 54–57, 50–60).) Plaintiff avers that

Mitchell and Burnett—not Lloyd—interviewed Plaintiff's partner, who, Plaintiff alleges, "again took sole responsibility for any physical contact with the neighbor." (SAC ¶ 50.) Lloyd's involvement, by contrast, stems from the fact that he "continued the prosecution" insofar as he signed the superseding misdemeanor information. (*See id.* ¶¶ 63–65.)

"At the pleading stage, a plaintiff can establish initiation by alleging that a defendant reported false inculpatory evidence that could likely influence a jury's decision, or that a defendant did not report exculpatory evidence that could negate probable cause." *Rodriguez v. City of New York*, No. 21-CV-1649, 2022 WL 768159, at *7 (E.D.N.Y. Mar. 14, 2022) (citing *Cameron*, 598 F.3d at 64). By virtue of Plaintiff's allegations regarding Mitchell's involvement in the interview, which he asserts "*cause[d]* the initiation of criminal process against . . . [P]laintiff," *Phelps*, 2006 WL 1749528, at *4 (emphasis in original) (citing *Sykes v. James*, 13 F.3d 515, 520 (2d Cir. 1993)), Plaintiff has met this burden. *See Jouthe v. City of New York*, No. 05-CV-1374, 2009 WL 701110, at *11 (E.D.N.Y. Mar. 10, 2009) ("A police officer may also be held liable for malicious prosecution if he provides false information to the prosecutor that influences a decision whether to prosecute." (quotation marks omitted)). Therefore, Plaintiff has established his burden with respect to all three remaining Defendants who were involved in the initiation of Plaintiff's prosecution.

### ii.  Probable Cause

Defendants argue that there existed probable cause to prosecute Plaintiff, thereby vitiating Plaintiff's claims for malicious prosecution. (*See* Defs.' Mem. 9–12.) However, Defendants' argument relies almost exclusively on documents that the Court cannot consider at this time. *See supra* I.A. Plaintiff, on the other hand, asserts that based on the four corners of

26

the SAC as well as the documents within the Court's consideration, there exists no probable

cause.  (*See* Pl.'s Mem. 10–12.)

Because a lack of probable cause is the third element of a malicious prosecution, by

definition, "[n]o claim for malicious prosecution can survive if there was probable cause for the

prosecution."  *Buari v. City of New York*, 530 F. Supp. 3d 356, 384 (S.D.N.Y. 2021) (citing *Boyd*

*v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)); *see also Betts v. Shearman*, 751 F.3d 78, 82

(2d Cir. 2014) ("Probable cause is a complete defense to a constitutional claim of false arrest[.]"

(citation omitted)).  "Probable cause exists when one has knowledge of, or reasonably

trustworthy information as to, facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that an offense has been or is being committed by the person to

be arrested."  *Betts*, 751 F.3d at 82 (citation and quotations omitted).  "[T]he probable cause

inquiry is based upon whether the facts known by the arresting officer at the time of the arrest

objectively provided probable cause to arrest," *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir.

2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004))—"i.e., it is objective rather than

subjective," *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010) (quotation

marks omitted).

"The question of whether or not probable cause existed may be determinable as a matter

of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may

require a trial if the facts are in dispute."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)

(citations omitted).  By contrast, "[w]here the question of whether an arresting officer had

probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent

events, the existence *vel non* of probable cause is to be decided by the jury."  *Murphy*, 118 F.3d

at 947.

"It is open to question on the facts that Plaintiff alleges . . . whether [Defendants] had arguable probable cause to arrest Plaintiff." *Alvarez*, 95 F. Supp. 3d at 401.  Accepting the factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, as the Court must at this procedural posture, Burnett, Lloyd, and Mitchell were aware of only the following information: there was a fight, during which Plaintiff's partner struck the victim; Plaintiff was not in the room when this occurred; Plaintiff did not intend to or attempt to strike the victim; Plaintiff did not cause any injury to the victim; Plaintiff's partner confessed to having hit the victim; and the victim "always maintained that [Plaintiff's] partner had hit him with a bat," not Plaintiff.  (SAC ¶¶ 25–51.)  This alone surpasses the bare minimum Plaintiff must allege to establish that the three Defendants in question did not have probable cause to arrest him.  In other words, "Plaintiff has alleged enough facts raising doubt about the veracity of the allegations of criminal wrongdoing by Plaintiff." *Alvarez*, 95 F. Supp. 3d at 401.

### iii.  Malice

With respect to the third requirement for a malicious prosecution claim, malice requires "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996), *as amended* (May 21, 1996) (quoting *Nardelli v. Stamberg*, 377 N.E.2d 975, 976 (N.Y. 1978)).  "A lack of probable cause generally creates an inference of malice." *Boyd*, 336 F.3d at 78 (citation omitted).  Additionally, "[f]alsifying evidence is sufficient to show malice." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 451 (E.D.N.Y. 2015) (collecting cases).

For the reasons stated above, Plaintiff has sufficiently alleged that Burnett, Mitchell, and Lloyd lacked probable cause to prosecute Plaintiff.  "[M]alice may be inferred from the lack of

28

probable cause." *Lowth*, 82 F.3d at 573 (quoting *Conkey v. State*, 427 N.Y.S.2d 330, 332 (App. Div. 1980)); *see also Simms v. The City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *2 (E.D.N.Y. Sept. 28, 2011) ("At the pleading stage, actual malice may be inferred from a lack of probable cause."), *aff'd sub nom. Simms v. City of New York*, 480 F. App'x 627 (2d Cir. 2012); *Babi-Ali v. City of New York*, 979 F. Supp. 268, 277 (S.D.N.Y. 1997) ("There is a close relationship under New York law as to the lack of probable cause and actual malice . . . . Thus, actual malice can be inferred from a lack of probable cause for the initiation of criminal proceedings.  Because [the] [p]laintiff has stated a lack of probable cause, an inference can be drawn under New York law that the prosecution was initiated with actual malice." (citations and quotation marks omitted)); *cf. Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) ("[L]ack of probable cause generally raises an inference of malice sufficient to withstand summary judgment.")  Thus, Plaintiff has met his burden for this element of his malicious prosecution claims.

### iv.  Qualified Immunity

Finally, Defendants contend that even if there is probable cause, they are to be entitled to qualified immunity because, "at a minimum, arguable probable cause existed to charge plaintiff for each of the above offenses."  (Defs.' Mem. 13.)  Plaintiff rebuts this argument by stating Defendants' qualified immunity claims are based entirely on the prior pleading, which, as the Court found, it cannot consider.  (Pl.'s Mem. 12–13.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  Qualified immunity shields a defendant from

standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (internal quotation marks omitted).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson*, 555 U.S. at 231–32). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion," but a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if "the facts supporting the defense appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004) (emphasis omitted). As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* at 436 (internal quotation marks omitted).

"At this stage of the litigation, without the benefit of discovery and the facts to be gleaned therefrom, the Court declines to decide whether [] Defendants are entitled to qualified immunity." *Doe v. Town of Greenwich*, 422 F. Supp. 3d 528, 538 n.2 (D. Conn. 2019). In other words, no facts alleged by Plaintiff support Defendants' decision to move forward with his prosecution, precluding a finding of arguable probable cause. *See supra* II.B.1.ii. Accordingly, the Court denies Defendants' Motion without prejudice with respect to Plaintiff's malicious prosecution claim against Burnett, Lloyd, and Mitchell before the benefit of discovery can give rise to Defendants' defense. *See Norman v. Mount Vernon Hosp.*, No. 17-CV-9174, 2020 WL

4432063, at *12 (S.D.N.Y. July 31, 2020) ("Thus, the [c]ourt will not dismiss [the] [p]laintiff's claim against [one defendant] based on qualified immunity at this early stage, without the benefit of discovery."); *Doe*, 422 F. Supp. 3d at 538 n.2; *cf. Bailey v. Pataki*, Nos. 08-CV-8563, 08-CV-8665, 08-CV-8923, 08-CV-8925, 08-CV-9609, 2010 WL 234995, at *2 (S.D.N.Y. Jan. 19, 2010) ("In its July [o]pinion this [c]ourt denied [the] defendant officials' motion to dismiss [the] plaintiffs' complaints on the basis of qualified immunity, finding that at that stage of the litigation, without the benefit of discovery, the [c]ourt could not find that [the]defendants were entitled to qualified immunity as a matter of law; but the [c]ourt gave them leave to raise the defense again at the close of discovery when a more complete factual predicate for making that determination would be available to the [c]ourt.").

### 2.  Failure to Intervene Under § 1983

Defendants argue that "Plaintiff has not plead sufficient facts for failure to intervene," either with respect to his claim for an unlawful strip search or with respect to his claim for malicious prosecution.  (Defs.' Mem. 15–16.)  Plaintiff rebuts this assertion based purely on the facts alleged without the benefit of a single case citation.  (*See* Pl.'s Mem. 13–14.)

### a.  Applicable Law

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v.*

31

*Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9,

11–12 (2d Cir. 1988)); *see also Valverde v. Folks*, No. 19-CV-8080, 2020 WL 5849515, at *7

(S.D.N.Y. Sept. 30, 2020) (same); *Bouche v. City of Mount Vernon*, No. 11-CV-5246, 2012 WL

987592, at *5 (S.D.N.Y. Mar. 23, 2012) (same); *cf. Theodat v. City of New York*, 818 F. App'x

79, 82 (2d Cir. 2020) (summary order) ("To succeed on a failure-to-intervene claim in

connection with a false arrest, the plaintiff is required to show that (1) the officer had reason to

know that a citizen was being unjustifiably arrested, and (2) the officer had a realistic

opportunity to intervene to prevent the arrest from occurring."). "The essential inquiry is

whether, under the circumstances actually presented, an officer's failure to intervene permits a

reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another."

*Figueroa v. Mazza*, 825 F.3d 89, 107–08 (2d Cir. 2016). Because "[w]hether an officer was

capable of preventing the harm and had sufficient time to intercede" is highly circumstance- and

fact-driven, courts generally treat it as "'an issue of fact for the jury unless, considering all the

evidence, a reasonable jury could not possibly conclude otherwise.'" *Gardner v. City of New

York*, No. 16-CV-6476, 2021 WL 3848112, at *7 (E.D.N.Y. Aug. 27, 2021) (quoting *Branen*, 17

F.3d at 557).

Finally, under a claim for failure to intervene, "liability may attach when a supervisor

fails to act on reports of a staff member's previous assaults on the plaintiff and the plaintiff is

assaulted again by that same staff member." *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585

(S.D.N.Y. 2009) (citing *Johnson*, 239 F.3d at 255).

### b.  Application

The Amended Complaint asserts that Defendant Officers failed to intervene to prevent

other Defendants as well as other officers from violating Plaintiff's constitutional rights,

specifically Plaintiff's unlawful strip search and his subsequent (and purportedly malicious) prosecution.  Specifically, in the SAC's fact section, Plaintiff states:

> Defendants Mitchell, Hylton, Cerqua, Karoo, Lloyd, Mastrogiorgio, and/or McKennie, having observed and/or participated in the investigation of the events described above, knew that [Plaintiff] had not committed any crime and therefore that the filing of the felony complaint violated Plaintiff's rights.  Despite this knowledge, these defendants took no steps to intervene to prevent the violation of Plaintiff's rights.

(SAC ¶ 59.)  Subsequently, Plaintiff alleges:

> during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

> . . . Defendant Officers failed to intervene to prevent the violations of Plaintiff's constitutional rights as set forth in this Complaint, specifically his Defendants' illegal strip and visual body cavity search of Plaintiff and their malicious prosecution of him.

(SAC ¶¶ 117–18.)  But given his conclusory and one-size-fits-all allegations, Plaintiff fails to plausibly allege a failure to intervene claim.

As evidenced by the SAC's text, "[i]t is unclear which defendants [P]laintiff is referring to.  [Plaintiff] only refers to the defendants in the collective, never identifying which defendants were responsible for specific actions."  *Bouche*, 2012 WL 987592, at *7 (dismissing the plaintiff's failure to intervene claim because the plaintiff's allegation that the "defendants had an affirmative duty to intervene on behalf of [the plaintiff], whose constitutional rights were being violated in their presence by other officers" did not sufficiently identify "which defendants were responsible for specific actions" (quotation marks omitted)).  In response to Defendants' argument, Plaintiff lumps all Defendant Officers together without articulating specifics about any one defendant, repeatedly using "and/or" as if to make Defendants guess who was where was where at what point in time to intervene.  (*See* Pl.'s Mem. 13 ("[T]he SAC describes how

Defendants Burnett, Mitchell Hylton, Cerque, Karoo, Lloyd, Mastrogiorgio, and/or McKennie"

failed to intervene); *see also* SAC ¶ 59.)  In other words, Plaintiff's allegations fail to dictate

"which . . . Defendant failed to intervene to prevent such violations from occurring."  *Clay v.*

*County of Clinton*, No. 10-CV-239, 2012 WL 4485952, at *14 (N.D.N.Y. Sept. 27, 2012)

(granting motion for judgment on the pleadings as to the plaintiff's failure to intervene claim,

because the plaintiff "fail[ed] to distinguish which . . . [d]efendant was responsible for actually

violating [the] [p]laintiff's constitutional rights and which, if any, [d]efendant failed to intervene

to prevent such violations from occurring"); *see also Ying Li v. City of New York*, 246 F. Supp.

3d 578, 619 (E.D.N.Y. 2017) (granting a motion to dismiss a failure to intervene claim where the

plaintiff "resorts to conclusory generalized allegations asserting her failure to intervene claim

against every single [d]efendant and refers to the numerous defendants collectively," because

"[s]uch conclusory and generalized allegations do not give any of the [d]efendants 'fair notice of

what [the] [p]laintiff's claim is and the grounds upon which it rests'" (alteration omitted)

(quoting *Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 212 (N.D.N.Y. 2008)); *Hardy v.*

*City of New York*, No. 12-CV-17, 2013 WL 5231459, at *4 (S.D.N.Y. Jul. 9, 2013) (observing

that "restatement of the legal standard . . . does not sufficiently allege constitutional violations in

which the [defendants] might have intervened").

The SAC lacks any specifics as to which defendants could have intervened, when they

could have intervened, and using what methodology.  Said otherwise, "[w]here were [Defendant

Officers] in relation to Plaintiff and in relation to each other?  What impermissible actions did

they take?  Which officers observed those actions?  Plaintiff does not say.  Accordingly, he fails

to nudge his failure to intervene claim from possible to plausible."  *Hardy*, 2013 WL 5231459, at

*4.  Therefore, the Court grants Defendants' Motion on this claim.  *See DiPippo v. County of*

*Putnam*, No. 17-CV-7948, 2019 WL 1004152, at *15–16 (S.D.N.Y. Feb. 28, 2019) (granting a

motion to dismiss with respect to a failure to intervene claim because, in reliance on *Ying Li*,

*Hardy*, and *Bouche*, the "[p]laintiff's failure to intervene claim against all [the] [d]efendants is

insufficiently pleaded" insofar as it lacks any detail as to who could have intervened, when, and

how); *Ying Li*, 246 F. Supp. 3d at 620; *Hardy*, 2013 WL 5231459, at *4; *Bouche*, 2012 WL

987592, at *7 (dismissing the plaintiff's failure to intervene claim because the plaintiff's

allegation that the "'defendants had an affirmative duty to intervene on behalf of [the plaintiff],

whose constitutional rights were being violated in their presence by other officers'" did not

sufficiently identify "which defendants were responsible for specific actions").

### 3.  Supervisory Liability Under § 1983

As an initial matter, Plaintiff appears to assert a separate claim of "supervisory liability"

against "McKennie, Mastrogiorgio, Mitchell[,] and/or Burnett."  (SAC at 34.)[5]  Defendants and

Plaintiff, however, instead argue solely about specific defendants' personal involvement in the

underlying offenses.  (*See* Defs.' Mem. 17; Pl.'s Mem. 14.)  Accordingly, the Court reviews and

adjudges only questions of personal involvement in the underlying violations rather than a

separate claim.

As stated, Defendants argue that Plaintiff has failed to adequately allege facts relating to

those defendants' personal involvement in the underlying constitutional violations alleged.  (*See*

Defs.' Mem. 17.)  Defendants do not parse out or identify which specific claims these four

defendants were purportedly not personally involved in; given the specific arguments posited,

however, the Court understands the Motion to assert that Burnett, Mitchell, Mastrogiorgio, and

---

[5] Plaintiff makes this assertion not in a numbered paragraph but in a sub-heading.
Accordingly, the Court cites to the ECF-stamped page number of the SAC on which the heading
can be found.

McKennie were not involved in *any* of the claims Plaintiff brings, including wrongful arrest. (*See id.*)  Plaintiff, however, retorts that McKennie and Mastrogiorgio were personally involved in the wrongful arrest, that Burnett, Mitchell, Mastrogiogrio, and McKennie were all involved in the illegal search, and that Burnett and Mitchell were involved in the malicious prosecution. (*See* Pl.'s Mem. 14.)

### a.  Applicable Law

To establish personal involvement, a plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  As the Second Circuit recently stated in *Tangreti*, "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary." *Id.* at 618 (second alteration in original) (quotation marks omitted).  Therefore, "[t]he violation must be established against the supervisory official directly" through his or her own individual conduct as it relates to the specific, underlying offenses at issue.  *Id.*

### b.  Application

First, Plaintiff alleges that "McKennie and Mastrogiorgio arrested Plaintiff and placed him in a cell," (Pl.'s Mem. 14; *see also* SAC ¶ 32), and that the same two individuals "approved [Plaintiff's] arrest and charges," (SAC ¶ 52).  While "[s]imply being present at the scene of an arrest does not suffice for personal involvement," *Arbuckle v. City of New York*, No. 14-CV-10248, 2016 WL 5793741, at *13 (S.D.N.Y. Sept. 30, 2016), Plaintiff's assertions stretch far beyond that, (*see* SAC ¶¶ 32, 52).  This satisfactorily pleads personal involvement for McKennie and Mastrogiorgio with respect to Plaintiff's claim for false arrest.  *See Coppola v. Town of Plattekill*, No. 17-CV-1032, 2018 WL 1441306, at *5 (N.D.N.Y. Mar. 22, 2018) (finding that

36

personal involvement of each of the defendant officers was pled where the plaintiff's "reference to 'the officers' suggests that she alleges that each officer present on her property" participated in the false arrest). Therefore, Defendants' Motion concerning Plaintiff's wrongful arrest claim against McKennie and Mastrogiorgio is denied.

Plaintiff does not, however, assert that Burnett and Mitchell were present or on the scene of the crime when Plaintiff was arrested. (*See generally* SAC (noting an absence of allegations regarding Burnett's or Mitchell's presence at the scene of the arrest); *cf. id.* ¶ 32 (listing specifically Hylton, Cerqua, McKennie, "and/or" Mastrogiorgio as the officers to have arrested Plaintiff).) Accordingly, Defendants' Motion on this point is granted and Plaintiff's claims for wrongful arrest against Burnett and Mitchell are dismissed for insufficient involvement. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege the defendants were "present" for, "participated directly" in, or "somehow permitted" the alleged violation); *cf. Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 386 (S.D.N.Y. 2013) (dismissing an excessive force claim against a police lieutenant where the complaint alleged that he "was never present at the scene" and did "not allege that he issued any orders to the officers who were present").

Defendants seemingly argue that Burnett and Mitchell were insufficiently involved in Plaintiff's prosecution to permit claims against them for malicious prosecution survive the Motion. (Defs.' Mem. 17.) The allegations plausibly show otherwise.

Plaintiff asserts that "Burnett and Mitchell interviewed Plaintiff's partner who took sole responsibility for the assault." (Pl.'s Mem. 14; *see also* SAC ¶ 50.) Having already found that Defendants conceded that Plaintiff has pled sufficient allegations regarding Burnett's role, *see*

*supra* II.B.i (citing Pl.'s Mem. 10 n.4; Defs.' Mem. 8–9), and having found that Mitchell's role in the interview wherein he is alleged to have provided false information leading to the malicious prosecution, *see supra* II.B.1.b.ii, each of these Defendants' personal involvement has already been addressed and shown that Plaintiff has met his burden.  Therefore, Defendants' Motion regarding insufficient involvement with respect to Plaintiff's claim of malicious prosecution against Burnett and Mitchell is denied.

Finally, Plaintiff alleges that Burnett, Mitchell, Mastrogiorgio, and McKennie, "observed the illegal strip search and visual body search of Plaintiff in a jail cell."  (Pl.'s Mem. 14.)  That these defendants were present for and observed the search satisfies Plaintiff's requirements at this stage.  *See Ficklin v. Rusinko*, 351 F. Supp. 3d 436, 456 (W.D.N.Y. 2019) (denying a motion to dismiss where the plaintiff alleges that the parole officer "was involved in the body cavity search or was at least present during it," thereby satisfying the personal involvement standard at the pleading stage); *Norton v. Galligan*, No. 17-CV-395, 2018 WL 564568, at *9 (D. Conn. Jan. 25, 2018) (denying a motion to dismiss on personal involvement grounds regarding a defendant who "present when the search . . . occurred"); *cf. Blue v. City of New York*, No. 14-CV-7836, 2018 WL 1136613, at *14 (S.D.N.Y. Mar. 1, 2018) (denying a motion for summary judgment where "the record [was] unclear as to whether [two police officer defendants] were present during the alleged strip search, and so their personal involvement in the matter is a disputed fact").  Accordingly, Defendants' Motion is denied on these grounds.

In sum, Plaintiff's claim for state and federal wrongful arrest is dismissed against Burnett and Mitchell, but Plaintiff otherwise alleges sufficient involvement for all other claims against all Defendants not already dismissed for other reasons.

4.  *Monell* Claim

Defendants contend that Plaintiff fails to plead sufficient facts to plausibly allege a

*Monell* claim.  Specifically, Defendants argue that Plaintiff pleads no facts to establish a formal

or informal policy or custom nor that such a policy or custom has a direct link to Plaintiff's

injuries.  (*See* Defs.' Mem. 17–22; Defs.' Reply Mem. 6–9.)  Plaintiff rebuts Defendants'

arguments by suggesting that Defendants seek to impose a "heightened" pleading standard on

Plaintiff's *Monell* claims and rebuts that he has met his burden.  (Pl.'s Mem. 14–22.)

a.  Applicable Law

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under

color of state law, deprived him of a federal constitutional or statutory right." *Sykes*, 723 F.3d at

405–06.  However, "Congress did not intend municipalities to be held liable [under § 1983]

unless action pursuant to official municipal policy of some nature caused a constitutional tort."

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a

municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove:

(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right;

(3) causation; (4) damages; and (5) that an official policy of the municipality caused the

constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*,

558 U.S. 933 (2009); *see also Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at

*10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not

allege that any policy or custom caused the deprivation of his rights), *report and*

*recommendation adopted*, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester*

*County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Jan. 3, 2011) (dismissing a claim

against the county because the complaint "[did] not allege the existence of an unconstitutional

custom or policy"), *report and recommendation adopted sub nom.*, *Arnold v. Westchester Cnty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010).

This multi-factor test, and particularly the fifth element, reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." (italics omitted)); *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes

40

proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Roe*, 542 F.3d at 36–37 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).  Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation.  There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.

41

1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (quotation marks omitted)).

### b.  Application

"Plaintiff concedes that the SAC does not contain a formal policy claim or that a policymaking official caused his injuries."  (Pl.'s Mem. 16.)  Accordingly, the Court need only determine whether there existed a sufficiently widespread practice to constitute a custom or whether policymakers failed to provide adequate training or supervision so grossly that it rises to gross indifference.  *See Brandon*, 705 F. Supp. 2d at 276–77.

### i.  Widespread Practice

To demonstrate a practice is sufficiently widespread and crystalized to constitute a custom under *Monell*, "a plaintiff must prove that the custom at issue is permanent and well-settled."  *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) (citing *Praprotnik*, 485 U.S. at 127).

Plaintiff rests his argument under this theory on three distinct but overlapping allegations: (1) that "numerous successful civil rights lawsuits against MVPD officers [have been filed] for false arrests and malicious prosecutions," (2) that Mount Vernon "has received numerous civilian complaints about illegal strip searches and body cavity searches," and (3) that the Westchester County DA has asked the U.S. Department of Justice "to investigate the MVPD's

pattern of conducting illegal strip searches." (Pl.'s Mem. 16–17 (citing SAC ¶¶ 75–77).) The Court reviews each of these lines of inquiry.

First, courts in this district have consistently held that "citations to lawsuits, even if they did involve comparable conduct, do not alone establish a custom or practice that is widespread and persistent, *particularly if the lawsuits did not result in an adjudication of liability*." *Bethune v. Westchester County*, No. 18-CV-3500, 2020 WL 1032508, at *5 (S.D.N.Y. Mar. 2, 2020) (emphasis added) (granting a motion to dismiss where the plaintiff premised *Monell* liability on, inter alia, citations to several filed lawsuits); *see also Barnett v. Westchester County*, No. 18-CV-2483, 2020 WL 1032445, at *5 (S.D.N.Y. Feb. 28, 2020) (same); *Vincent v. Winski*, No. 14-CV-7744, 2018 WL 1441370, at *17 (S.D.N.Y. Mar. 22, 2018) (granting the defendants' motion to dismiss *Monell* claims where "the only facts that Plaintiff identifie[d] in support of any pattern of mishandling situations because of a failure to train . . . consist[ed] of other litigations resulting in settlements"); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (concluding that "lawsuits cited by [the] [p]laintiff in the [proposed amended complaint], even when combined with [other] allegations . . . , are insufficient to plausibly support an inference of a widespread custom" to establish *Monell* municipal liability). Therefore, a closer examination of the lawsuits is required.

Plaintiff highlights five "successful civil rights lawsuits" against MVPD officers concerning illegal strip searches and body cavity searches: *Flores v. City of Mount Vernon, et al.*, No. 97-CV-6144 (S.D.N.Y.); *Scott v. City of Mount Vernon et al.*, No. 14-CV-4441 (S.D.N.Y.); *Williamson v. Mount Vernon Police Dept. et. al.*, No. 15-CV-5635 (S.D.N.Y.); *Rutherford & Gallman v. City of Mount Vernon, et al.*, No. 18-CV-10706 (S.D.N.Y.); and, *Long v. City of Mount Vernon et al.*, No. 18-CV-9068 (S.D.N.Y.). (*See* SAC ¶ 73.) Defendant is right that a

43

closer examination shows these purported pillars of Mount Vernon's custom do not support Plaintiff's assertions.  (*See* Defs.' Reply Mem. 6–7.)

*Williamson* was "dismisse[d] . . . for failure to prosecute and failure to comply with Court orders."  Order, *Williamson v. Mount Vernon Police Dept. et. al.*, No. 15-CV-5635 (S.D.N.Y. April 4, 2017), Dkt. No. 56.  So, too, was *Long*.  *See* Order, *Long v. City of Mount Vernon et al.*, No. 18-CV-9068 (S.D.N.Y. Oct. 20, 2021), Dkt. No. 23.  *Scott* was settled without an admission of liability.  *See* Order of Dismissal, *Scott et al. v. City of Mount Vernon et al.*, No. 14-CV-4441 (S.D.N.Y. July 26, 2017), Dkt. No. 68.  Finally, *Rutherford & Gallman* is actively in litigation, wherein expert discovery will not conclude until July 2022, meaning no conclusive findings have been made.  *See* Civil Case Discovery Plan and Scheduling Order, *Rutherford & Gallman v. City of Mount Vernon, et al.*, No. 18-CV-10706 (S.D.N.Y. February 22, 2022), Dkt. No. 156.  This leaves one case wherein, in 1999, another court in this district found *Monell* liability for a wrongful search.  *See Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 446 (S.D.N.Y. 1999).

However, even *Flores* is somewhat inapposite, as the court granted the plaintiff's motion on *only* one claim: the execution of strip searches "pursuant to an admitted policy of strip searching everyone who was arrested for narcotics activity."  *Id.*  Plaintiffs concede that no such policy exists in this Action, (Pl.'s Mem. 16), thereby undermining the applicability of *Flores*. Plaintiff is thus misguided to rely on one quasi-applicable case and four additional cases in which no liability has been determined as evidence of wrongful practice.  *See An v. City of New York*, 230 F. Supp. 3d 224, 229–30 (S.D.N.Y. 2017) (granting a motion to dismiss where a complaint similarly sought to establish *Monell* liability was based on "cites [to] six lawsuits filed between 2012 and 2016 and one newspaper report" but failed to plausibly allege a custom because "the Complaint fail[ed] to allege that any of the six lawsuits, which were filed over a

44

course of four years, resulted in a finding that the NYPD officers violated the plaintiffs' First Amendment rights").

Plaintiff engages in the same mislabeling vis-à-vis purportedly "*successful* civil rights lawsuits against MVPD officers for false arrests and malicious prosecutions." (Pl.'s Mem. 16–17 (emphasis added) (citing SAC ¶ 75).)  Specifically, Plaintiff cites *Nunez v. City of Mount Vernon et al.*, No. 14-CV-8530 (S.D.N.Y.); *Fonseca v. City of Mount Vernon et al.*, No. 5459/2013 (N.Y. Sup. Ct.); *Giles v. City of Mount Vernon et al.*, No. 20-CV-5119 (S.D.N.Y.); and *Govan v. City of Mount Vernon, et al.*, No. 19-CV-8830 (S.D.N.Y.).  (*See* SAC ¶ 75.) Defendants succinctly summarize these cases well: "*Fonseca* was settled with no admission of liability"; "*Giles* is a pending case, in which no determinations of liability have been made"; and, "*Govan* was recently tried before a jury, which rendered a unanimous verdict in favor of the defendant MVPD officers." (Defs.' Reply Mem. 7.)[6]

The existence of one lawsuit finding liability in two decades and many more that have come up short, notwithstanding the existence of two additional ongoing suits that have yet to make any investigative findings, "does not strike th[e] Court as enough to plausibly allege an obvious need to act on the part of [the municipality]." *Bethune*, 2020 WL 1032508, at *5; *An*, 230 F. Supp. 3d at 231 ("[T]he six lawsuits and one newspaper article over the span of four years is insufficient to plausibly allege the need [to act] was obvious.").

Second, Plaintiff alleges that Mount Vernon should have been made aware as a result of the civilian complaints sounding in the same violations at issue in this Action.  Specifically, Plaintiff avers in the SAC that the municipality has "received numerous complaints by civilians

---

[6] Defendants inadvertently forgot to discuss *Nunez*.  However, *Nunez*, too, was settled without an admission of guilt.  *See* Stipulation of Settlement and Order of Dismissal, *Nunez v. City of Mount Vernon et al.*, No. 14-CV-8530 (S.D.N.Y. Apr. 25, 2017), Dkt. No. 67.

about illegal strip and/or body cavity searches through formal and informal channels, as well as

complaints about MVPD officers fabricating crimes, falsifying reports, illegally detaining

individuals who have committed no crime, and using excessive force against citizens," and states

that these complaints have been made over an unspecific number of years.  (*See* SAC ¶ 76.)  In

support of this claim, Plaintiff points to one news article.  (*See id.* ¶ 76 n.3.)  Plaintiff's

allegations once again fall short.

        As alluded to, Plaintiff does not articulate the length of time over which these complaints

are to have been made, a relevant consideration.  *See Lopez v. City of New York*, No. 20-CV-

2502, 2022 WL 2078194, at *6 (S.D.N.Y. June 9, 2022) ("In considering whether a plaintiff has

pleaded facts in support of her *Monell* claim sufficient to defeat a motion to dismiss, a court may

also consider the time span of the actions alleged."  (citing *Lynch v. City of New York*, 952 F.3d

67, 82 (2d Cir. 2020)).  Beyond this omission, the alleged complaints appear to speak to

violations and misconduct not at issue here, including the fabrication of crime, the falsification of

reports, and the use of excessive force.  Indeed, the lone blog article buttressing Plaintiff's

allegation is an in-depth report regarding "numerous complaints against a controversial detective

[not at issue in this Action] that mirror accusations of brutality and corruption raised by a fellow

officer."  George Joseph, *Corruption and Brutality Allegations Against Mount Vernon Detective

Are Echoed by Civilian Complaints*, Gothamist (Mar. 11, 2020),

https://gothamist.com/news/corruption-and-brutality-allegations-against-mount-vernon-

detective-are-echoed-civilian-complaints (cited in SAC ¶ 76 n.3).  Accordingly, to the extent the

Court countenances these complaints, many would appear to be extraneous and irrelevant to the

claim here.

But arguably the largest—and insurmountable—flaw in this portion of Plaintiff's theory is that these allegations are not more than "a formulaic recitation of the elements of a cause of action," which the Supreme Court makes clear "will not do" to satisfy a complainant's pleading requirements under Rule 8. *Twombly*, 550 U.S. at 555. There is no specificity whatsoever as to how many complaints were made, to whom, or over what period of time they were made. Moreover, there is no discussion as to whether they were investigated or if "failed to make any meaningful investigation into charges that police officers had [acted] in violation of the complainants' civil rights." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Having failed to provide more than a "naked assertion[] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (quotation marks omitted), Plaintiff cannot sustain a *Monell* claim under this theory on the basis of otherwise unsupported allegations of civilian complaints.

Finally, Plaintiff asserts that the Westchester County District Attorney's request to investigate MVPD's strip search practices sufficiently establishes that there is a widespread practice sufficiently established to create municipal liability under *Monell*. (SAC ¶ 77.) However, this, too, fails to satisfy Plaintiff's burden. For the same reasons unsupported legal filings do not support a *Monell* claim, neither does the Westchester Attorney General's request for an investigation nor DOJ's response thereto, as neither substantiates wrongdoing of some kind. *Cf. Marom v. City of New York*, No. 15-CV-2017, 2016 WL 916424, at *22 (S.D.N.Y. Mar. 7, 2016) ("Neither a newspaper report nor an academic paper reporting on incidents that ought to be investigated is a showing of anything entitled to a presumption of truth."). In other words, "Plaintiff does not indicate the results of that investigation and the mere existence of the investigation does little to establish a custom." *Joseph v. Doe*, No. 16-CV-2004, 2017 WL 4233024, at *6 (E.D.N.Y. Sept. 22, 2017). *Cf. Shepherd v. Powers*, No. 11-CV-6860, 2012 WL

4477241, at *10 (S.D.N.Y. Sept. 27, 2012) (relying on a Department of Justice investigation in a motion to dismiss a *Monell* claim where the investigative findings were made in a publicly filed report and subsequently debated by the municipality). Therefore, neither the District Attorney's call for an investigation nor the existence of the said investigation push Plaintiff's theory from possible to plausible.

In sum, the three ways by which Plaintiff seeks to establish "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware," *Brandon*, 705 F. Supp. 2d at 276–77, each fall short in light of a lack of genuine findings of wrongdoing and a lack of detailed factual assertions. Plaintiff therefore cannot sustain a *Monell* claim under a theory of widespread custom or practice.

### ii. Adequate Training or Supervision

Plaintiff's final theory by which to plausibly allege *Monell* liability against Mount Vernon is to allege that there existed "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon*, 705 F. Supp. 2d at 277. To that end, Plaintiff avers in the SAC that "the City failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of officers and agents of the City, with respect to these subjects." (SAC ¶ 128.)

"[W]here municipal liability is based on a failure to train employees, the inadequate training must 'reflect deliberate indifference to . . . constitutional rights." *Hawthorne by Hawthorne v. County of Putnam*, 492 F. Supp. 3d 281, 292 (S.D.N.Y. 2020) (alteration omitted) (second alteration in original) (quoting *Harris*, 489 U.S. at 392). Moreover, the Second Circuit

48

has held that a finding of deliberate indifference requires: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (alteration in original) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).  Importantly, all three factors must be present. *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("In *Walker* . . . , we outlined the *requirements* that must be met before a local government or official's failure to act amounts to deliberate indifference." (emphasis added)).

"[A]n allegation of numerous claims of [the underlying constitutional wrong] by itself is insufficient to raise an inference of deliberate indifference due to failure to supervise." *Tieman*, 2015 WL 1379652, at *21.  Rather, a plaintiff must allege that "meaningful attempts to investigate repeated claims of excessive force are absent." *Id.* (quoting *Hart v. City of Binghamton*, No. 10-CV-1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012)).  In other words, "[f]or deliberate indifference to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints." *Hart*, 2012 WL 1565085, at *5.  Plaintiff does not make any such allegation.  (*See generally* SAC.)

So, too, does Plaintiff fail to identify a "specific deficiency in the municipality's training." *Tieman*, 2015 WL 1379652, at *22.  In order to meet a complainant's Rule 8 obligations under *Iqbal*, a pleading must specifically identify the type of training the government

employees lacked and include "enough factual material . . . for the court to reasonably infer that the police misconduct" was not the result of "the individual acts of the arresting officers." *Simms*, 2011 WL 4543051, at *2, *aff'd*, 480 F. App'x at 631 n.4 (2d Cir. 2012) ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery . . . this does not relieve them of their obligation under Iqbal to plead a facially plausible claim.")

Absent allegations that demonstrate specific indifference or that demonstrate with any degree of specificity the sort of training Mount Vernon should have but failed to conduct, Plaintiff has not met his burden under *Monell*.  Accordingly, Defendants' Motion with regard to municipal liability is granted and Plaintiff's claim is dismissed.  *See Pettiford v. City of Yonkers*, No. 14-CV-6271, 2021 WL 2556172, at *8–9 (S.D.N.Y. June 21, 2021) (dismissing *Monell* claim on failure to train theory where the plaintiff failed to identify specific training failures); *Rutherford v. Westchester County*, No. 18-CV-4872, 2020 WL 433841, at *13 (S.D.N.Y. Jan. 28, 2020) (collecting cases); *Triano*, 895 F. Supp. 2d at 539–41 (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").

### 5.  Remaining State Law Claims

Beyond the state law claims discussed *infra*, several claims sounding in state law remain: negligent screening, hiring, and retention; negligent training and supervision; and respondeat superior liability.  (SAC ¶¶ 147–55.)  Upon Defendants' Motion, Plaintiff voluntarily dismissed the first two.  (*See* Pl.'s Mem. 22 ("Plaintiff agrees that the state law claims for negligent screening, hiring, and retention and for negligent training and supervision should be dismissed

without prejudice.").)  Accordingly, the Court grants Defendants' Motion with regard to these two claims without prejudice.

However, Defendants' Motion with respect to Plaintiff's respondeat superior claim is slightly less clear-cut.  In their opening brief, Defendants state in a heading that Plaintiff's claim for respondeat superior fails as a matter of law.  (Defs.' Mem. 22.)[7]  However, Defendants do not so much as mention the claim in the substance of the brief, let alone substantiate their argument that the claim "fails as a matter of law."  (*See generally* Defs.' Mem. 22.)  Even after Plaintiff points out in his Opposition that "Defendants' memorandum is completely void of any legal or factual argument pertaining to" Plaintiff's respondeat superior claim and asserts that Defendants have therefore "waived any such argument . . . in reply," (Pl.'s Mem. n.1), Defendants still declined to even use the word "respondeat" in reply, let alone arguing in favor of dismissal, (*see generally* Defs.' Reply Mem.)

The Southern District of New York's local civil rules require that upon filing a motion, parties file a memorandum of law "setting forth the *cases and other authorities relied upon* in support of the motion."  Local Civ. R. 7.1(a)(2) (emphasis added).  That Defendants baldly assert that the claim fails as a matter of law without a single additional syllable cannot be said to comply with the rules.  Moreover, that Defendants failed to substantiate this argument violates the central idea that "[a]rguments not raised in a party's brief are deemed waived."  *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020).

---

[7] The titular assertion is also repeated in the brief's table of contents.  (*See* Defs.' Mem. ii.)

But even if the Court were to weigh and measure Defendants' argument, it would still be found wanting. "Unlike claims arising under [§] 1983, a municipality may be vicariously liable for the common law torts of its employees." *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 169 (E.D.N.Y. 2016). Accordingly, because Defendants have not disputed the illegal search and seizure claim in this Motion, (*see* Pl.'s Mem. 1 n.1 ("Defendants claim to move to dismiss all claims in the SAC except for the portion of Count I which pertains to illegal searches" (citing Defs.' Mem. 1))), and because the Court has not dismissed other claims, *see supra*, the Court cannot dismiss Plaintiff's claim for respondeat superior liability under New York law. *Cf. L.B. v. Town of Chester*, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002) ("Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of respondeat superior." (italics omitted)). Accordingly, Defendants' Motion with respect to this claim, to the extent the Court recognizes its existence, is denied.

## III.  Conclusion

For the foregoing reasons, Defendants' Motion is denied in part and granted in part. Defendants' Motion is also granted with respect to Plaintiff's claims for state and federal malicious prosecution as to Hylton, Cerqua, Karoo, Mastrogiorgio, and/or McKennie, as Plaintiff has voluntarily dismissed these claims. (*See* Pl.'s Mem. 10 & n.4.) Defendants' Motion regarding state and federal malicious prosecution claims against Mitchell, Burnett, and Lloyd is denied without prejudice, meaning Defendants can bring affirmative defenses probable cause and qualified immunity following discovery. *See supra* II.B.1. Defendants' Motion is granted as it pertains to Plaintiff's failure to intervene for failure to state a claim. *See supra* II.B.2. Defendants' Motion is granted regarding Plaintiff's claim for wrongful arrest against Burnett and

Mitchell, as Plaintiff has failed to plead personal involvement, meaning that claim is dismissed for those two Defendants. *See supra* II.B.3. Defendants' Motion with respect to Mount Vernon as a municipal defendant is granted, dismissing Plaintiff's *Monell* claim. *See supra* II.B.4. Finally, Plaintiff has voluntarily withdrawn all state law claims sounding in negligent screening, hiring, and retention as well as negligent training and supervision, while Plaintiff's state respondeat superior liability claim remains viable, both given Defendants' failure to argue the point and on its merits in light of remaining underlying state law claims. *See supra* II.B.5.

The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 45.) The Court will hold a status conference on August 3, 2022, at 12:00 p.m.

SO ORDERED.

Dated:   July 19, 2022
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge