UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISRAEL ROMAN,

                              Plaintiff,

        v.

CITY OF MOUNT VERNON, ET AL.,

                              Defendants.

No. 21-CV-2214 (KMK)

OPINION & ORDER

Appearances:

Anand Swaminathan, Esq.
Heather L. Donnell, Esq.
Loevy & Loevy
Chicago, IL
*Counsel for Plaintiff*

Jarrett Adams, Esq.
Angela Perkins, Esq.
Law Office Of Jarrett Adams, PLLC
New York, NY
*Counsel for Plaintiff*

Andrew C. Quinn, Esq.
Anthony J. DiFiore, Esq.
Lalit K. Loomba, Esq.
Marykate Acquisto, Esq.
Matthew K. Schieffer, Esq.
Steven J. Bushnell, Esq.
The Quinn Law Firm, PLLC
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Israel Roman ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983

("§ 1983") and New York state law, against the City of Mount Vernon ("Mount Vernon"), the

Mount Vernon Police Department ("MVPD"), Detective Anthony Burnett ("Burnett"), MVPD

Police Officer Gennaro Cerqua ("Cerqua"), MVPD Police Officer Tariq K. Hylton ("Hylton"),

MVPD Police Officer Kareem Lloyd ("Lloyd"), MVPD Lieutenant Nicholas Mastrogiorgio

("Mastrogiorgio"), and MVPD Sgt. Janie McKennie ("McKennie"; altogether, "Defendants").[1]

(*See generally* Second Am. Compl. ("SAC") (Dkt. No. 38).)  Plaintiff brings claims pursuant to

42 U.S.C. § 1983 and New York state law, including claims for unlawful search and seizure,

federal and state malicious prosecution, false arrest, and respondeat superior.  (*Id.*)  Before the

Court is Defendants' Motion for Summary Judgment for all of Plaintiff's claims.  (Not. of Mot.

(Dkt. No. 69).)  For the reasons that follow, Defendants' Motion is denied in its entirety.

## I.  Background

### A.  Factual Background

The facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1,

specifically:

- Defendants' 56.1 Statement, (Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 70));

- Plaintiff's Response to Defendants' 56.1 Statement, (Pl.'s Resp. to Defs.' 56.1 Statement

  ("Pl.'s Resp. 56.1") (Dkt. No. 79));

---

[1] Plaintiff initially brought suit against other Defendants as well, including MVPD Detective Darius Mitchell ("Mitchell"), and MVPD Police Officer Saied Karoo ("Karoo"), but he voluntary dismisses his claims against these Defendants, (Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. ("Pl.'s Mem.") at 13 n.3 (Dkt. No. 78) ("Plaintiff voluntarily dismisses [the false arrest claim] as to Defendant[] . . . Karoo.")), or abandons his claims again them, as he does not raise any arguments pertaining to these Defendants, *Capak v. Epps*, — F. Supp. 3d —, 2023 WL 2574879, at *2 (S.D.N.Y. Mar. 20, 2023) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (quoting *Xu v. City of New York*, No. 18-CV-1222, 2020 WL 2088301, at *4 (S.D.N.Y. Apr. 30, 2020)); *see also Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (same).

- Plaintiff's Statement of Additional Facts, (Pl.'s Statement of Add'l Facts ("PSOAF")

  (Dkt. No. 77).)[2]

Additionally, where necessary, the Court cites directly to the admissible evidence submitted by

the Parties.  The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.

*Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021).  The facts as described below are

undisputed unless otherwise noted.[3]

---

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (internal citation omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (adopting the same rule).

Because Defendants have not filed a response to Plaintiff's Statement of Additional Facts, (*see generally* Dkt.), the Court deems those facts admitted and will rely on them as relevant to deciding the instant Motion.  *See Polanco v. Porter*, No. 21-CV-10927, 2023 WL 2751340, at *2 n.3 (S.D.N.Y. Mar. 31, 2023) (deeming statement of additional facts admitted where opposing party did not respond).

[3] Where the Parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts, which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact."  *N.J. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021) (alteration adopted) (internal citation omitted); *see also Nimkoff v. Drabinsky*, No. 17-CV-4458, 2021 WL 4480627, at *1 n.2 (E.D.N.Y. Sept. 30, 2021) ("[T]o the extent a party's Rule 56.1 statement improperly interjects arguments and/or immaterial facts in response to facts asserted by the opposing party without specifically controverting those facts [with admissible evidence], the [c]ourt has disregarded the statement." (alteration adopted) (internal quotation marks and citation omitted)); *Baity*, 51 F. Supp. 3d at 418 ("Many of [the] [p]laintiff's purported denials— and a number of [the plaintiff's] admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by [the] [d]efendants, often speaking past [the] [d]efendants' asserted facts without specifically controverting those same facts. . . .  [A] number of [the] [p]laintiff's purported denials quibble with [the] [d]efendant['s] phraseology, but do not address the factual substance asserted by [the] [d]efendants." (internal citations omitted)).

### 1.  Parties

Plaintiff is a twenty-nine-year-old Latino man who resided in Mount Vernon in October 2019.  (SAC ¶ 10; Defs' 56.1 ¶ 13; Pl.'s Resp. 56.1 ¶ 13; PSOAF ¶ 1.)  Mount Vernon is a municipal corporation organized under the laws of the state of New York.  (Defs.' 56.1 ¶ 1; Pl.'s Resp. 56.1 ¶ 1.)  Defendant Burnett is a detective in the MVPD.  (Defs.' 56.1 ¶¶ 3–4; Pl.'s Resp. 56.1 ¶¶ 3–4.)  Defendant Hylton was a police officer in the MVPD, and is currently a detective in the MVPD.  (Defs.' 56.1 ¶ 5; Pl.'s Resp. 56.1 ¶ 5.)  Defendant Cerqua was, at all relevant times, a police officer in the MVPD.  (Defs.' 56.1 ¶¶ 6–7; Pl.'s Resp. 56.1 ¶¶ 6–7.)  Defendant Lloyd was, at all relevant times, a police officer in the MVPD, and is currently a sergeant in the MVPD. (Defs.' 56.1 ¶ 8; Pl.'s Resp. 56.1 ¶ 8.)

### 2.  Altercation at Jose Roman's Apartment

In October 2019, Plaintiff lived with his girlfriend, Jennifer Nero ("Nero") and their three children in Mount Vernon, New York.  (Defs.' 56.1 ¶ 13; Pl.'s Resp. 56.1 ¶ 13.)  An acquaintance of Plaintiff, Jose Roman ("Jose"), lived in a nearby apartment also located in Mount Vernon.  (Defs.' 56.1 ¶ 14; Pl.'s Resp. 56.1 ¶ 14.)  On October 5, 2019, Plaintiff and Nero were involved in a dispute with Jose, concerning Plaintiff's daughter, who was with Jose and Jose's daughter on that day.  (Defs.' 56.1 ¶¶ 16–19; Pl.'s Resp. 56.1 ¶¶ 16–19.)  The dispute escalated, and Plaintiff, Nero, and Nero's nephew went to Jose's apartment.  (Defs.' 56.1 ¶¶ 27, 36; Pl.'s Resp. 56.1 ¶¶ 27, 36.)  Upon arriving, and before heading upstairs to Jose's apartment, Nero grabbed one of her kids' baseball bats from the back of the car in which they arrived. (Defs.' 56.1 ¶ 32; Pl.'s Resp. 56.1 ¶ 32; PSOAF ¶ 26.)

Plaintiff, Nero, and the nephew took the elevator up to Jose's apartment, they knocked on Jose's door, and Jose opened it to let them in.  (Defs.' 56.1 ¶¶ 38–39; Pl.'s Resp. 56.1 ¶¶ 38–39;

PSOAF ¶ 31.)  The Parties differ as to what happened next.  Defendants claim that very shortly after Nero entered the apartment, she hit Jose on the back/side of the head with the baseball bat, and that Plaintiff was standing very close to Nero when she hit Jose.  (Defs.' 56.1 ¶¶ 41, 43.)  Defendants also maintain that after hitting Jose in the head, Nero passed the bat to Plaintiff.  (Defs.' 56.1 ¶ 45).  Plaintiff, on the other hand, states that he went directly to the bedroom to get his daughter while Nero and Jose engaged in a verbal dispute.  (PSOAF ¶ 32; Pl.'s Resp. 56.1¶ 43.)  Plaintiff contends that while he was in the bedroom, Nero hit Jose in the head with the bat.  (PSOAF ¶ 34; Pl.'s Resp. 56.1¶ 43.)  Moreover, Plaintiff denies receiving the bat from Nero.  (Pl.'s Resp. 56.1 ¶ 45).

Following the escalation between Jose and Nero, Plaintiff and Nero left Jose's apartment.  (Defs.' 56.1 ¶ 47; Pl.'s Resp. 56.1 ¶ 47; PSOAF ¶ 36.)  Nero and Jose separately called the police to report the assault.  (Defs.' 56.1 ¶ 52; Pl.'s Resp. 56.1 ¶ 52; PSOAF ¶ 34, 37.)  MVPD officers Hylton and Cerqua were the first to arrive at Jose's apartment.  (Defs.' 56.1 ¶¶ 53–55; Pl.'s Resp. 56.1 ¶¶ 53–55.)  Hylton and Cerqua had Plaintiff and Nero accompany them to Jose's apartment.  (PSOAF ¶ 41.)  Jose opened the door and identified Nero to Hylton and Cerqua as the one who had hit him.  (PSOAF ¶ 42.)  Hylton then spoke with Jose.  (Defs.' 56.1 ¶ 56; Pl.'s Resp. 56.1 ¶ 56.)

The Parties dispute the subsequent events.  Defendants contend that Hylton prepared an incident report concerning the altercation which recorded the details of his conversation with Jose.  (Defs.' 56.1 ¶ 57.)  Plaintiff admits that Hylton claims to have prepared the MVPD Incident Report, but notes that Burnett's, not Hylton's, name and signature are on the report.  (Pl.'s Resp. 56.1 ¶ 57.)  In addition, Plaintiff denies that the MVPD Incident Report recorded the details of Hylton's conversation with Jose.  (*Id.*)  Specifically, Plaintiff claims that the Additional

Narrative section of the MVPD Incident Report states that Plaintiff (identified in the Report as AR2) and Nero's nephew struck Jose repeatedly with closed fists, even though Jose denies telling the MVPD that Plaintiff punched him with closed fists.  (*Id.* ¶¶ 57–58.)

Jose was then transported to MVPD police headquarters ("MVPD Headquarters") where he was interviewed by Burnett.  (Defs.' 56.1 ¶ 60.)  During the interview, Burnett prepared a type-written deposition, which Jose reviewed and signed.  (Defs.' 56.1 ¶ 61.)  In the written witness deposition, Jose stated he was "bum rushed" by Nero, Plaintiff, and another male.  (*Id.* ¶ 63.)  Moreover, in response to Burnett asking Jose whether Plaintiff and the nephew hurt him as well, Jose answered that "[Plaintiff] pushed [him] around, but [Plaintiff] did not hurt [him]," and that "[t]hey all aided in this attack inside [his] home."  (*Id.*)  Plaintiff disputes these statements, noting that Jose testified at his deposition that the MVPD deposition of Jose is only somewhat accurate and is not worded the way Jose worded it.  (Pl.'s Resp. 56.1 ¶ 61.)  After the interview, Jose was transported to the hospital for treatment.  (Defs.' 56.1 ¶ 64; Pl.'s Resp. 56.1 ¶ 64.)

### 3.  Arrest and Search

Following the incident, Nero was arrested, placed in handcuffs, and transported to MVPD Headquarters by Karoo.  (Defs.' 56.1 ¶ 85; Pl.'s Resp. 56.1 ¶ 85.)  Also following the incident, Plaintiff was arrested, placed in handcuffs, and transported to MVPD Headquarters by Hylton and Cerqua.  (Defs.' 56.1 ¶ 86; Pl.'s Resp. 56.1 ¶ 86.)  Plaintiff alleges that after he was brought to MVPD Headquarters he was put into a rectangular holding cell which was connected directly to the garage (sally port).  (Defs.' 56.1 ¶ 87; Pl.'s Resp. 56.1 ¶ 87.)  There were no other prisoners in the holding cell, although Plaintiff contends that there were other detainees around and able to see Plaintiff in the cell.  (Defs.' 56.1 ¶ 89; Pl.'s Resp. 56.1 ¶ 89.)

Plaintiff alleges that he was questioned by the two officers who arrested him, Hylton and Cerqua, as well as a female and male correctional officer.  (PSOAF ¶ 60; *see also* Defs.' 56.1 ¶ 88; Pl.'s Resp. 56.1 ¶ 88.)  Further, Plaintiff states that after approximately ten minutes of questioning, the "Dominican officer" who arrested him (Hylton or Cerqua) told Plaintiff that they were going to conduct a strip search of him.  (PSAOF ¶ 61; *see also* Defs.' 56.1 ¶¶ 88, 91; Pl.'s Resp. 56.1 ¶¶ 88, 91.)  Defendants contend that Plaintiff recognized the officer as Dominican because he spoke Spanish and said his wife was Dominican.  (Defs.' 56.1 ¶ 88.)  Plaintiff clarifies that Plaintiff identified the "Dominican" officer as one of the arresting officers who transported him the MVDP Headquarters and is either Defendant Cerqua or Hylton.  (Pl.'s Resp. 56.1 ¶ 88.)  Furthermore, Plaintiff contends that he described his arresting officers, Cerqua and Hylton as a "Dominican officer" and an "Indian officer," who could be Arabic in origin, but Plaintiff could not be entirely certain.  (*Id.*; *see also* Donnell Decl. Ex. 1 (Plaintiff Depo. Tr.) at 96:13–97:3.)

Plaintiff asserts that after being told that he was going to be strip searched, he was asked to stand up, turn around and then to pull down his pants and underwear to his ankles and squat three times and cough.  (Defs.' 56.1 ¶ 92; Pl.'s Resp. 56.1 ¶ 92.)  Plaintiff contends that his undershirt and sweatshirt were still on during the alleged search.  (Defs.' 56.1 ¶ 93; Pl.'s Resp. 56.1 ¶ 93.)  Plaintiff does not claim to have been touched during the alleged strip search.  (Defs.' 56.1 ¶ 94; Pl.'s Resp. 56.1 ¶ 94.)  Plaintiff states that during the alleged search the "Dominican officer" ordered the commands and was standing directly behind him.  (Defs.' 56.1 ¶ 95; Pl.'s Resp. 56.1 ¶ 95.)  Plaintiff also claims that the other arresting officer was present just outside the holding cell, where he, along with the male and female correctional officers, could see everything.  (PSOAF ¶ 65.)

7

The Parties dispute the identity of the "Dominican officer" as Hylton or Cerqua. Defendants claim that Hylton is Black, does not speak Spanish, is not Dominican, and was not married on October 5, 2019.  (Defs.' 56.1 ¶ 96.)  Moreover, Defendants contend that Hylton has never conducted a strip search, has never observed one of his fellow officers conduct a strip search, and does not recall being involved in a strip search of plaintiff on October 5, 2019. (Defs.' 56.1 ¶¶ 97–99.)  Plaintiff admits that Hylton may not recall the incident, but maintains that Hylton was involved in Plaintiff's strip search on October 5, 2019.  (Pl.'s Resp. 56.1 ¶¶ 96–99.)

As to Cerqua, Defendants state that he is Italian, not Dominican, does not speak Spanish, and was not married on October 5, 2019.  (Defs.' 56.1 ¶ 101.)  Moreover, Defendants assert that Cerqua has never conducted or observed a fellow office conduct a strip search, and he did not observe the Plaintiff being strip searched on October 5, 2019.  (Defs.' 56.1 ¶¶ 102–103). Plaintiff disputes the Defendants' contentions, stating that Cerqua was involved in Plaintiff's strip search on October 5, 2019.  (Pl.'s Resp. 56.1 ¶¶ 101–103.)

### 4.  The Complaint Against Plaintiff

On October 7, 2019, Burnett swore to a felony complaint that charged Plaintiff with attempted assault in the second degree in violation of Section 120.05(2) of the New York Penal Law ("NYPL").  (Defs.' 56.1 ¶¶ 65–66; Pl.'s Resp. 56.1 ¶¶ 65–66.)  The felony complaint alleged that Plaintiff aided, abetted and acted in concert with Nero, who struck victim Jose with a baseball bat.  (Defs.' 56.1 ¶ 67; Pl.'s Resp. 56.1 ¶ 67.)  The felony complaint recited that Plaintiff "stated that he accompanied [Nero] to the victim's apartment, but claimed he did not touch the victim."  (Defs.' 56.1 ¶ 68; Pl.'s Resp. 56.1 ¶ 68.)

On November 18, 2019, Lloyd, who was not working the date of the underlying incident and arrest, signed a superseding misdemeanor information that was prepared by the District Attorney's Office.  (Defs.' 56.1 ¶¶ 70–71; Pl.'s Resp. 56.1 ¶¶ 70–71.)  The superseding misdemeanor information charged Plaintiff with four criminal offenses: (a) assault (3rd degree), in violation of N.Y.P.L. Section 120.00(1); (b) harassment (2d degree), in violation of N.Y.P.L. Section 240.26(1); (c) criminal possession of a weapon (4th degree), in violation of N.Y.P.L. Section 265.01(2); and (d) endangering the welfare of a child, in violation of N.Y.P.L. Section 260.10(1).  (Defs.' 56.1 ¶ 72; Pl.'s Resp. 56.1 ¶ 72.)  The superseding misdemeanor information alleged that Plaintiff aided, abetted and acted in concert with Nero, who struck victim Jose with a baseball bat.  (Defs.' 56.1 ¶ 73; Pl.'s Resp. 56.1 ¶ 73.)  The superseding misdemeanor information recited that Plaintiff "stated that he accompanied [Nero] to the victim's apartment but claimed he did not touch the victim."  (Defs.' 56.1 ¶ 74; Pl.'s Resp. 56.1 ¶ 74.)  The allegation in the superseding misdemeanor information regarding endangering the welfare of a child was directed only at Nero, and alleged that while "the co-defendants were attacking [Jose], [Nero] did knowingly act in a manner likely to be injurious to the physical mental or moral welfare [of a ] child less than seventeen years old, (COUNT FOUR), [by] push[ing] the victim's daughter [] . . . against a wall."  (Defs.' 56.1 ¶ 75; Pl.'s Resp. 56.1 ¶ 75.)

In February 2020, all charges were dropped against Plaintiff.  (PSOAF ¶ 83.)  Plaintiff claims that as a result of the false arrest, strip search and malicious prosecution, Plaintiff suffered emotionally, and financially.  (PSOAF ¶ 84.)

B.  Procedural History

Plaintiff filed his initial Complaint on March 13, 2021.  (Compl. (Dkt. No. 1).)  Defendants filed a pre-motion letter on May 17, 2021.  (Letter from Andrew C. Quinn, Esq. to

Court (May 17, 2021) (Dkt. No. 18).)  Plaintiff responded on May 24, 2021.  (Letter from Karen A. Newirth, Esq. to Court (May 24, 2021) (Dkt. No. 19).)  On June 6, 2021, Plaintiff filed a letter, requesting an extension of time to file an amended complaint, which the Court granted. (Dkt. Nos. 20–21.)  Plaintiff filed his First Amended Complaint ("FAC") on June 14, 2021. (FAC (Dkt. No. 22).)

Thereafter, Defendants filed a pre-motion letter to dismiss the FAC on June 28, 2021. (Letter from Andrew C. Quinn, Esq. to Court (June 28, 2021) (Dkt. No. 23).)  Plaintiff responded on July 6, 2021.  (Letter from Karen A. Newirth, Esq. to Court (July 6, 2021) (Dkt. No. 24).)  On October 6, 2021, the Court held a pre-motion conference, during which the Court agreed to let Plaintiff amend the FAC.  (*See* Dkt. (minute entry dated Oct. 7, 2021).)  Plaintiff filed the SAC on October 26, 2021.  (SAC (Dkt. No. 38).)

On November 2, 2021, Defendants filed a pre-motion letter seeking leave to file a motion to dismiss the SAC.  (Letter from Marykate Acquisto, Esq. to Court (Nov. 11, 2021) (Dkt. No. 41).).  The Court granted the request and approved the Parties' briefing schedule.  (*See* Memo Endorsement (Dkt. No. 42).)  Defendants filed their Motion to Dismiss and supporting papers on December 7, 2021.  (*See* Not. of Mot. (Dkt. No. 45); Decl. of Steven Bushnell (Dkt. No. 46); Defs.' Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 47).)  Following several extensions, (*see* Dkt. Nos. 49, 51), Plaintiff timely filed his Opposition on January 7, 2022, (Pl.'s Mem. of Law in Opp'n. to Mot. to Dismiss (Dkt. No. 52).).  Finally, Defendants filed a Reply on January 21, 2022.  (Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 53).)  On July 19, 2022, the Court denied in part and granted in part Defendants' Motion to Dismiss. (*See* Mot. to Dismiss Order ("MTD Order") (Dkt. No. 54).)

The Parties proposed a case management plan on August 1, 2022, (Proposed Case Management Plan (Dkt. No. 56)), which the Court approved, (Case Management and Scheduling Order (Dkt. No. 58)).  The Court also referred the Parties to Magistrate Judge Paul E. Davison for all non-dispositive, pre-trial matters. (*See* Order (Dkt. No. 57).)

On March 15, 2023, Defendants submitted a pre-motion letter requesting to file for summary judgment.  (Letter from Lalit K. Loomba, Esq. to Court (Mar. 15, 2023) (Dkt. No. 65).)  Plaintiffs responded on March 22, 2023.  (Letter from Heather Lewis Donnell, Esq. to Court (Mar. 22, 2023) (Dkt. No. 66).)  On April 4, 2023, the Court held a pre-motion conference, during which the Court set a briefing schedule.  (*See* Dkt. (minute entry dated Apr. 4, 2023).)  On April 28, 2023, Defendants filed their Motion for Summary Judgment and accompanying papers.  (Not. of Mot.; Defs.' 56.1; Decl. of Lalit K. Loomba ("Loomba Decl.") (Dkt. No. 71); Defs.' Mem.)  After a request for an extension from Plaintiff that the Court granted, (Dkt. Nos. 74–75), Plaintiff filed his opposition papers on June 16 and 17, 2023.  (Decl. of Heather Lewis Donnell ("Donnell Decl.") (Dkt. No. 76); PSOAF; Pl.'s Mem.; Pl.'s Resp. 56.1.)  On July 6, 2023, Defendants filed their Reply. (Reply Aff. of Lalit K. Loomba ("Reply Loomba Aff.") (Dkt. No. 80); Defs.' Reply Mem. of Law in Supp. to Mot. for Summ. J. ("Defs.' Reply Mem.") (Dkt. No. 81).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same); *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022) (same); *Cambridge Funding Source*

*LLC v. Emco Oilfield Servs. LLC*, No. 22-CV-10741, 2023 WL 7405862, at \*4 (S.D.N.Y. Nov. 9, 2023) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "The movant 'bears the initial burden of showing that there is no genuine dispute as to a material fact.'"  *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018)); *see also LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23, 2023 WL 6610764, at \*7 (S.D.N.Y. Oct. 10, 2023) (same); *Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at \*4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Reg. Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at \*3 (S.D.N.Y. Mar. 10, 2022) (same). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that h[er] allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023) (same), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566, 2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading." (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009))).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)). "At this stage, 'the role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept. 28, 2023) (alteration adopted) (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)). Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'" *Sullivan v. Nat'l Express LLC*, No. 21-CV-5789, 2023 WL 6279255, at *8 (S.D.N.Y. Sept. 26, 2023) (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp.*, 477 U.S. at 323–24)).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am.,*

*Inc.,* 164 F.3d 736, 746 (2d Cir. 1998)).  "'[W]here a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'"  *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (quoting *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P.56(c)(4))); *see also E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ." (internal citation omitted)); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal citation omitted)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Martinez v. Pao's Cleaning, Inc.*, No. 16-CV-6939, 2018 WL 6303829, at *2 (E.D.N.Y. Dec. 3, 2018) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005))  However, although witness credibility is usually a question of fact for the jury, *Yu Zhang v. Sabrina USA Inc.*, No. 18-CV-12332, 2021 WL 1198932, at *3 (S.D.N.Y. Mar. 30, 2021), "[b]road, conclusory attacks on the credibility of a witness without more [are] insufficient to raise a genuine issue of material fact that would defeat a motion for summary judgment," *Sec. & Exch. Comm'n v. Airborne Wireless Network*, No. 21-CV-1772, 2023 WL 5938527, at *6 (S.D.N.Y. Sept. 12, 2023) (internal quotation marks and citation omitted); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009) ("If

the moving party has made a properly supported motion for summary judgment, the plaintiff

may not respond simply with general attacks upon the defendant's credibility." (alterations

adopted) (internal citation omitted)).  As such, "when opposing a motion for summary judgment,

the non-moving party may not respond simply with general attacks upon the declarant's

credibility, but rather must identify affirmative evidence from which a jury could find that the

non-moving party has carried its burden of proof."  *Moritz v. Town of Warwick*, No. 15-CV-

5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (alterations adopted) (internal

quotation marks and citation omitted); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97

F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a

motion for summary judgment,' a court may be justified in dismissing a claim when the

'plaintiff's version of the events is in such discord with the record evidence as to be wholly

fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y. Mar.

11, 2010))).

### B.  Analysis

Plaintiff raises claims pursuant to 42 U.S.C. § 1983 and New York state law, including

claims for false arrest, unlawful search, federal and state malicious prosecution, and respondeat

superior.  (SAC ¶¶ 104–55.)  Defendants have moved for summary judgment as to all counts.

(*See* Not. of Mot.; *see also* Defs.' Mem.)  The Court considers each of Defendants' arguments in

turn.

#### 1.  False Arrest

Plaintiff brings a claim for false arrest against Hylton and Cerqua arising from the events

of October 5, 2019.  (SAC ¶¶ 104–10.)  Defendants have moved for summary judgment, arguing

that Hylton and Cerqua had probable cause to arrest Plaintiff, and therefore the claim should be

dismissed as to both officers.  (*See* Defs.' Mem. 9–13.)  Alternatively, Defendants contend that

there was arguable probable cause to arrest Plaintiff, and thus, Hylton and Cerqua are entitled to

qualified immunity.  (*See id.*)  Plaintiff counters that the only fact the Court can properly

consider in deciding whether Hylton and Cerqua had probable cause to arrest Plaintiff is in

dispute, and therefore summary judgment should be precluded.  (*See* Pl.'s Mem. 10–11.)

Plaintiff further argues that Hylton and Cerqua are not entitled to qualified immunity because

disputes of material fact as to their knowledge must be presented to the finder of fact.  (*See id.*

12–13.)  The Court addresses each of these disputes in turn.

"A [Section] 1983 claim for false arrest, resting on the Fourth Amendment right of an

individual to be free from unreasonable seizures, including arrest without probable cause is

substantially the same as a claim for false arrest under New York law."  *Beach v. City of New*

*York*, No. 21-CV-6737, 2023 WL 5576398, at *3 (S.D.N.Y. Aug. 28, 2023) (alterations adopted)

(quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "To state a claim for false arrest

under New York law, a plaintiff must show that: (1) the defendant intentionally confined the

plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to

the confinement, and (4) the confinement was not otherwise justified."  *Silas v. City of New York*,

No. 18-CV-7122, 2023 WL 5532856, at *6 (E.D.N.Y. Aug. 28, 2023) (internal quotation marks

and citation omitted); *see also Hussey v. Rosen,* No. 23-CV-4378, 2023 WL 5611647, at *3

(S.D.N.Y. Aug. 28, 2023) (same).  "The existence of probable cause to arrest constitutes

justification and is a complete defense to an action for false arrest under [Section] 1983."  *Dillon*

*v. Rosen*, No. 22-CV-7035, 2022 WL 4538397, at *3 (S.D.N.Y. Sept. 28, 2022) (alteration

adopted) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007)); *see also Beach*,

2023 WL 5576398, at *3 ("The existence of probable cause to arrest is a defense to a false arrest

claim."). Similarly, qualified immunity is a defense to a claim of false arrest. *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015); *Delgado v. City of New York*, No. 19-CV-6320, 2023 WL 6390134, at *7 (S.D.N.Y. Oct. 2, 2023) ("Even absent probable cause, an officer will be entitled to qualified immunity on a claim for false arrest if there was 'arguable probable cause' for an arrest."). Thus, a claim for false arrest will not lie so long as the arresting officer had probable cause to arrest the plaintiff for some crime, *Delgado*, 2023 WL 6390134, at *8 ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004))), or the officer is otherwise entitled to qualified immunity, *see id.* ("[E]ven if probable cause is lacking, . . . the Court should dismiss false arrest claims on the basis of qualified immunity." (citing, inter alia, *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016))).

### a.  Probable Cause

Defendants argue that Plaintiff's false arrest claim fails because at the time of his arrest there was probable cause to arrest him on the basis of assault, harassment in the second degree, and accessorial liability. (Defs.' Mem. 11–12.) Specifically, Defendants rely on the fact that "Jose told [] Hylton in the immediate aftermath of the incident that [Plaintiff] entered into his apartment along with [Nero] and repeatedly struck him with a closed fist." (*Id.* (citing Defs.' 56.1 ¶ 58).) In addition, Defendant's point to Burnett's interview with Jose at the MVPD Headquarters, during which Jose stated that "he was 'bum rushed' by [Plaintiff, Nero, and Nero's nephew,] and that [Plaintiff] ha[d] 'pushed him around.'" (*Id.* at 12 (alteration adopted) (quoting Defs.' 56.1 ¶ 63).) Finally, Defendants claim that "Jose told [] Burnett that [Nero,

Plaintiff, and Nero's nephew] all aided in the attack inside his home."  (*Id.* (citing Defs.' 56.1 ¶ 63).)

"Probable cause requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"  *McKinley v. Crevatas*, No. 20-CV-3606, 2023 WL 4364182, at *5 (S.D.N.Y. July 6, 2023) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)).  "Probable cause is judged based on 'an objective basis.'"  *Brathwaite v. City of New York*, No. 19-CV-9235, 2023 WL 5713189, at *5 (S.D.N.Y. Sept. 5, 2023) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007)).  "In practice, 'whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Barkai v. Nuendorf*, No. 21-CV-4060, 2023 WL 2691712, at *18 (S.D.N.Y. Mar. 29, 2023) (alteration adopted) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)); *see also Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) ("To determine the existence of probable cause, a court considers the totality of the circumstances[] based on a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." (internal quotation marks and citation omitted)).

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ."  *Delgado*, 2023 WL 6390134, at *7 (quoting *Weyant*, 101 F.3d at 852).  "In contrast, 'where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence vel non of probable cause is to be decided by the jury.'"  *Barkai*, 2023 WL 2691712, at *18 (alteration adopted) (italics omitted) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).

"Probable cause is 'a fluid concept not readily, or even usefully, reduced to a neat set of legal rules. While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties.'" *King v. Nesto*, No. 19-CV-1466, 2023 WL 2456701, at *5 (D. Conn. Mar. 10, 2023) (alterations adopted) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)). "Thus, according to the Supreme Court, when courts review a situation frozen in ink and perform ex post facto probable cause analyses with the benefit of near-unlimited time, they are to think about 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Barkai*, 2023 WL 2691712, at *18 (quoting *Illinois v. Gates*, 462 U.S. 213, 241 (1983)).

Finally, "probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." *Aurecchione v. Falco*, No. 22-CV-4538, 2023 WL 6255529, at *10 (S.D.N.Y. Sept. 25, 2023) (quoting *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994)). Once a government official has a reasonable basis to believe that there is probable cause to arrest, the official "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2015) (internal quotation marks and citation omitted). "In sum, probable cause does not demand any showing that a good-faith belief be 'correct or [even] more likely true than false.' It requires only such facts as make wrongdoing or the discovery of evidence thereof probable." *Walczyk*, 496 F.3d at 157 (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

As an initial matter, the Court does not consider the statements Jose made to Burnett at the MVPD Headquarters because these statements were made following Plaintiff's arrest. (*See* Loomba Decl. Ex. E (Incident Report) (noting first that Plaintiff was "placed under arrest and

19

transported to the MVPD," and second that Jose was transported to the police station for a complete statement).)  Such statements do not have any bearing on the probable cause analysis because the determination of whether an officer has probable cause to make the arrest depends only on "facts known to the arresting officer *at the time of the arrest*."  *Barkai*, No. 21-CV-4060, 2023 WL 2691712, at *18 (emphasis added) (internal quotation marks and citation omitted).

The only fact that Defendants put forth to support probable cause, which the Court can properly consider, is the fact that "[t]he [I]ncident [R]eport narrative indicates that . . . Jose[] told [] Hylton that he had been struck by [P]laintiff several times with a closed fist."  (Defs.' 56.1 ¶ 58.)  However, the underlying fact is disputed.  Although Plaintiff admits that the "Additional Narrative section of the MVPD Incident Report states that that [Plaintiff] . . . struck Jose repeatedly with closed fists," he disputes the fact that "Jose told [] Hylton that [Plaintiff] struck him repeatedly with closed fists."  (Pl.'s Resp. 56.1 ¶ 58.)  Plaintiff points to Jose's testimony, in which Jose stated that although "[t]here was contact" between him and Plaintiff, "it wasn't with a closed fist."  (Donnell Decl. Ex. 3 (Jose Depo. Tr.) at 46:19–24.)  In response to Counsel's next question, confirming that Jose did not make the statement regarding the closed fist to Hylton and instead just stated that he was "bum rushed," Jose replied "Right".  (*Id.* at 46:25–47:3.) Moreover, Plaintiff contends that following the incident, Nero "called 911 to report what had happened . . ." and "told the 911 dispatcher that she had hit Jose with a bat on that call." (PSOAF ¶ 37 (citing Donnell Decl. Ex. 2 (Nero Depo. Tr.) at 46:18–47:4).)  When Hylton and Cerqua arrived at the scene, Nero again "immediately identified herself as the individual who struck Jose in the head with the bat."  (PSOAF ¶ 39 (citing Donnell Decl. Ex. 2 (Nero Depo.) at 48:4–9; *id.* Ex. 1 (Plaintiff Depo.) at 87:22-88:8; *id.* Ex. 5 (Cerqua Depo. Tr.) at 53:18-54:1).)

Accordingly, Defendants fail to establish that there are undisputed facts that would demonstrate that Hylton and Cerqua had probable cause to arrest Plaintiff for assault, harassment in the second degree, or accessory liability.  On the contrary, viewing the evidence in the light most favorable to Plaintiff, and considering the totality of the circumstances, the Court cannot conclude as a matter of law that Hylton and Cerqua had probable cause to arrest Plaintiff.  *See McKinley*, 2023 WL 4364182, at *6 ("[Q]uestions of historical fact regarding the officers' knowledge at the time of arrest are to be resolved by the jury." (internal quotation marks and citation omitted); *Huaman v. Sirois*, No. 13-CV-484, 2015 WL 5797005, at *9 (D. Conn. Sept. 30, 2015) ("Where parties dispute *what facts were known* to police officers at the time an individual was arrested, resolution is for the jury[.]" (emphasis in original) (internal quotation marks and citation omitted)); *see also Jackson v. City of New York*, 939 F. Supp. 2d 235, 249 (E.D.N.Y. 2013) (denying summary judgment on a false arrest claim where there existed a genuine dispute as to whether officers had probable cause to justify Plaintiff's arrest).  Therefore, Hylton and Cerqua are not entitled to summary judgment on the false arrest claim on the basis of the probable cause defense.  *See Jenkins*, 478 F.3d at 88 ("[I]f the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims."); *Goonewardena v. Spinelli*, No. 15-CV-5239, 2020 WL 1557745, at *6–7 (E.D.N.Y. Mar. 5, 2020) (recommending the denial of summary judgment on plaintiff's federal and state false arrest claims as inappropriate in light of the parties' "dueling versions" of probable cause facts) *report and recommendation adopted in relevant part by* 2020 WL 1550724 (E.D.N.Y. Mar. 31, 2020); *Westbrooks v. City of Buffalo*, No. 11-CV-994, 2014 WL 297107, at *2 (W.D.N.Y. Jan. 27, 2014) (holding that defendants' reliance on a disputed fact in their probable cause argument "alone precludes summary judgment").

### b.  Qualified Immunity

Alternatively, Defendants maintain that Hylton and Cerqua are entitled to qualified immunity as to Plaintiff's false arrest claim.  (Defs.' Mem. 12–13.)  In particular, Defendants argue that "Hylton was confronted with a scene where a victim claimed to have been hit on the head with a baseball bat," which was "confirmed by the large bump forming on Jose's bald head."  (*Id.* at 12.)  Jose's "claim was further confirmed by [Nero] having admitted to committing the assault."  (*Id.*)  Additionally, "Jose further told Hylton that [Plaintiff] punched him repeatedly, and that he entered the apartment at the same time as [Nero] who then struck him."  Thus, Defendants contend that "[a] reasonable officer possessing this information could have 'reasonably believed that probable cause existed.'"  (*Id.* at 13 (quoting *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001).)

A police officer or other government official will be protected from liability for his discretionary actions by the doctrine of qualified immunity "where '(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.'"  *Delgado*, 2023 WL 6390134, at *7 (quoting *Jenkins*, 478 F.3d at 87); *see also Cerrone*, 246 F.3d at 199 (same).  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and it protects "all but the plainly incompetent or those who knowingly violate the law."  *City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)); *see also Bangs v. Smith*, 84 F.4th 87, 101 (2d Cir. 2023) (same); *Murphy v. City of Elmira*, No. 18-CV-6572, 2023 WL 5938777, at *10 (W.D.N.Y. Sept. 12, 2023) (same).  "In the case of allegations to which probable cause is a complete defense, such as false arrest or

imprisonment, the Second Circuit has defined the standard of qualified immunity as one of 'arguable probable cause.'" *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013) (quoting *Cerrone*, 246 F.3d at 202), *aff'd*, 751 F.3d 78 (2d Cir. 2014); *see also Sentementes v. Lamont*, No. 20-CV-1826, 2023 WL 1818544, at *6 (D. Conn. Feb. 8, 2023) (same); *Kosmidis v. Port Auth. of N.Y & N.J.*, No. 18-CV-8413, 2021 WL 4442812, at *3 (S.D.N.Y. Sept. 28, 2021) (same). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed." *Aurecchione*, 2023 WL 6255529, at *10 (quoting *Cerrone*, 246 F.3d at 202–03). In other words, an officer is entitled to qualified immunity if "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Grytsyk v. Morales*, No. 19-CV-3470, 2023 WL 6122693, at *4 (S.D.N.Y. Sept. 19, 2023) (quoting *Escalera*, 361 F.3d at 743); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (same).

With regard to Defendants' argument that there was arguable probable cause because the officers were confronted with a scene where a victim had been hit in the head by a baseball bat, which was confirmed by a bump on the victim's head and Nero's admission to the assault, the Court finds this argument unconvincing. These undisputed facts do not support the conclusion that *Plaintiff* may have been involved in criminal activity. In fact, Nero's admission informed the officers that she was the party responsible for hitting Jose with the bat, not Plaintiff. Moreover, to the extent Defendants rely on the fact that Plaintiff was at the scene when Nero hit Jose to establish arguable probable cause, this fact is not sufficient to support an inference of culpability. *See Smith v. Village of Brockport*, No. 19-CV-6404, 2022 WL 597465, at *17

(W.D.N.Y. Feb. 28, 2022) ("Police do not have particularized probable cause to make an arrest simply because a suspect has suspicious acquaintances, or happens to be at the scene of a crime." (alteration adopted) (quoting *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017))); *see also Burgess v. City of New York*, No. 15-CV-5525, 2018 WL 1581971, at *3 (E.D.N.Y. Mar. 29, 2018) ("[M]ere proximity to others independently suspected of criminal activity, does not, without more, give rise to probable cause." (alteration adopted) (internal quotation marks and citation omitted)); *Perez v. Duran*, 962 F. Supp. 2d 533, 538 (S.D.N.Y. 2013) ("Physical proximity to criminal behavior without more is insufficient to establish probable cause.").

As for Defendants' remaining contention that Jose told Hylton that Plaintiff punched him repeatedly with a closed fist, as already discussed above, this is disputed.  While it is possible that a jury's findings of fact as to this disputed issue may compel a conclusion that Hylton and Cerqua had probable cause—or at least arguable probable cause—to arrest Plaintiff, the Court cannot make such a determination at this stage.  Accordingly, because there is a question that cannot be resolved by the Court as a matter of law, Hylton and Cerqua are not entitled to summary judgment on the false arrest claim on qualified immunity grounds.  *Grytsyk*, 2023 WL 6122693, at *8 (holding that defendants were not entitled to summary judgment based on qualified immunity because at most, there were triable issues of fact as to whether there was probable cause or arguable probable to arrest plaintiff); *see also Grant v. City of Syracuse*, No. 15-CV-445, 2017 WL 5564605, at *6 (N.D.N.Y. Nov. 17, 2017) (denying summary judgment on qualified immunity grounds, where there were disputed "material issues of fact as to whether [the plaintiff's] conduct prior to his arrest was disorderly, and thus whether the [a]rresting [o]fficers' decision to arrest him was objectively reasonable"); *Milfort v. Prevete*, 922 F. Supp. 2d 398, 407 (E.D.N.Y. 2013) (finding that the officers were not entitled to summary judgment on

the basis of qualified immunity as to an arrestee's Section 1983 false arrest and false imprisonment claims because there were disputed issues of material fact as to the reasonableness of the officers' actions).

### 2.  Unlawful Search

Plaintiff brings a claim for the unlawful search of his person against Hylton and Cerqua. (SAC ¶¶ 104–10.)  Defendants have moved for summary judgment, arguing that Hylton and Cerqua did not participate in the strip search, and that Plaintiff has not adduced any evidence to the contrary.  (*See* Defs.' Mem. at 19–20.)  Plaintiff, on the other hand, suggests that the jury must decide this claim because there are contested material fact issues.  (Pl.'s Mem. at 7.)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Blue v. City of New York*, No. 14-CV-7836, 2018 WL 1136613, at *14 (S.D.N.Y. Mar. 1, 2018) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).  "Whether a defendant is personally involved is a question of fact, such that summary judgment cannot be granted on this ground if the personal involvement of a defendant is in dispute."  *Id.*

Here, the record demonstrates a genuine dispute of material fact with respect to the unlawful search claim, namely whether Hylton and Cerqua participated in the search. Defendants point to Plaintiff's statement, identifying the officer who conducted the strip search as Dominican because the officer spoke Spanish, and his wife was Dominican.  (*See* Defs.' Mem. at 19.)  Defendants contend that because neither Hylton nor Cerqua speaks Spanish, or was married on October 5, 2019, neither can be one of the officers that conducted the search. (*Id.*; *see also* Loomba Decl. Ex N (Decl. of Hylton) (stating that he is "not of Dominican descent," "do[es] not speak Spanish," and was "not married on October 5, 2019."); *id.* Ex. O

(Decl. of Cerqua) (same).)  Plaintiff, on the other hand, claims that the two arresting officer,

Hylton and Cerqua, were the same two officers who ordered and participated in the strip search.

(Pl.'s Mem. at 7 (citing PSOAF ¶¶ 55–66 (stating that "Cerqua and Hylton . . . strip/visual cavity

searched Plaintiff by ordering him to remove his pants and underwear and to squat and cough

three times")); *see also* Donnell Decl. Ex. 1 (Plaintiff Depo. Tr.) at 96:5–115:8, 118:18–21

(Plaintiff speculating that the races of his arresting officers were Dominican and Indian, and

testifying that those same officers that conducted the arrest, transported him to MVPD, and then

questioned and searched him in the holding cell).)  "While summary judgment may be

appropriate when a plaintiff has failed to identify a 'particular defendant as having strip-searched

him,' *Cannon v. Port Auth. of N.Y. & N.J.*, No. 15-CV-4579, 2020 WL 6290665, at *5 (S.D.N.Y.

Oct. 27, 2020) (quoting *Caceres v. Port Auth. of N.Y. & N.J.*, No. 06-CV-1558, 2008 WL

4386851, *12 (S.D.N.Y. Sept. 24, 2008)), here, Plaintiff has specifically alleged that his arresting

officers were the individuals that conducted the search, (*see* PSOAF ¶¶ 55–66).  Although

Plaintiff did not identify his arresting officers by name during his deposition testimony, his

testimony regarding their identity as the officers who arrested him, transported him to MVPD,

questioned him, and then searched him, is both specific and consistent.  (*See* Donnell Decl. Ex. 1

(Plaintiff Depo. Tr.) at 96:5–115:8, 118:18–21.)  The Court finds this identification sufficiently

specific to raise a genuine dispute of material fact as to Hylton and Cerqua's involvement in the

search, even if Plaintiff guessed wrong as to the ethnicity or marital status of the officers.  *See*

*Cannon*, 2020 WL 6290665, at *5 (plaintiff's testimony that "one of the [o]fficers who attacked

him in the street conducted the strip search" was specific enough to survive a summary judgment

motion (quoting *Williams v. City of New York*, No. 05-CV-10230, 2007 WL 2214390, at *12

(S.D.N.Y. July 26, 2007)); *see also McKinley*, 2023 WL 4364182, at *15 (crediting the non-

26

moving party's version of disputed facts and denying summary judgment on a strip search claim, even where defendants contended that no search occurred.)

Accordingly, given the genuine dispute of material fact, the Court determines that summary judgment on this claim is improper.

### 3.  Federal and State Malicious Prosecution Claims

Plaintiff has alleged federal and state malicious prosecution claims against Burnett and Lloyd.  (SAC ¶¶ 111–15, 142–46.)  Defendants have moved for summary judgment on these claims, contending that the prosecutor's independent decision to charge Plaintiff on the felony and misdemeanor indictments, coupled with the fact that the officers did not mislead or pressure the prosecutor, breaks the "chain of causation."  (Defs.' Mem. at 13–17.)  Defendants also maintain that Plaintiff's claims fail because there was probable cause to prosecute Plaintiff.  (*Id.*)  Finally, Defendants hastily suggest that, in any event, Defendants are entitled to qualified immunity on these claims.  (*Id.* at 17.)  Plaintiff asserts that Defendants' chain of causation argument is flawed "because both the felony and misdemeanor indictments contained false facts that, taking the record in the light most favorable to Plaintiff, a jury could find Defendants Burnett and Lloyd knew were false regarding Plaintiff's involvement in the assault of Jose." (Pl.'s Mem. at 13–16.)  In addition, Plaintiff contends that Defendants' reliance on probable cause as a defense is misplaced because the existence of probable cause depends on disputed issues of material fact.  (*Id.*)  As for qualified immunity, Plaintiff states that Defendants waive the argument, and in any event, the argument lacks merit.  (*Id.* at 16.)

"In order to prevail on a [Section] 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law."  *Ames v. City of*

*New York*, No. 20-CV-11081, 2023 WL 2647642, at *5 (S.D.N.Y. Mar. 27, 2023) (quoting

*Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)). "Under New York law,

'[t]o prevail on a claim of malicious prosecution, four elements must be shown: [i] the defendant

initiated a prosecution against plaintiff, [ii] without probable cause to believe the proceeding can

succeed, [iii] the proceeding was begun with malice and, [iv] the matter terminated in plaintiff's

favor.'" *Da Mata v. City of New York*, No. 21-CV-155, 2023 WL 112449, at *11 (S.D.N.Y. Jan.

5, 2023) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).

Additionally, "[f]or a malicious prosecution claim under Section 1983, a plaintiff also must

demonstrate a 'sufficient post-arraignment liberty restraint.'" *Kee v. City of New York*, 12 F.4th

150, 162 (2d Cir. 2021) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir.

2000)).

At issue here are the initiation of prosecution and probable cause elements of the claim,

as well as whether qualified immunity applies. The Court addresses each of these issues in turn.

### a.  Chain of Causation

Defendants first argue that the prosecutor's independent decision to charge Plaintiff

"[i]mmunizes" Burnett and Lloyd. (Defs.' Mem. at 16.)

"To satisfy the first element of a malicious prosecution claim against a police officer, the

'plaintiff must show that the officer brought formal charges and had the person arraigned, or

filled out complaining and corroborating affidavits or swore to and signed a felony complaint.

Alternatively, an officer initiates a prosecution by creating material, false information and

forwarding that information to a prosecutor or by withholding material information from a

prosecutor.'" *Rutherford v. City of Mount Vernon*, — F. Supp. 3d —, 2023 WL 6395375, at *16

(S.D.N.Y. Sept. 29, 2023) (quoting *Israel v. City of New York*, No. 16-CV-6809, 2018 WL

11219076, at *6 (S.D.N.Y. Sept. 29, 2018)); *see also Aguirre v. City of New York*, No. 15-CV-6043, 2017 WL 4236552, at *9 (E.D.N.Y. Sept. 22, 2017) (same).  However "[i]f the prosecution relied on independent, untainted information to establish probable cause, a complaining official will not be responsible for the prosecution that follows."  *Ortiz v. Wagstaff*, 523 F. Supp. 3d 347, 365 (W.D.N.Y. 2021) (quoting *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016)).  "Where this is the case, 'the chain of causation is broken by the intervening exercise of independent judgment.'"  *Id.* (alteration adopted) (quoting *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999)).  "However, the prosecutors cannot serve as a superseding cause where they relied on evidence fabricated by the defendant."  *Id.* (citing *Bermudez v. City of New York*, 790 F.3d 368, 375 (2d Cir. 2015)).

Here, there is no dispute that a prosecution was initiated against Plaintiff, and that Burnett swore to a felony complaint that charged Plaintiff with attempted assault in the second degree. (Defs.' 56.1 ¶¶ 65–66; Pl.'s Resp. 56.1 ¶¶ 65–66; *see also* Loomba Decl. Ex. J (Felony Compl.).) There is also no dispute that Lloyd signed a superseding misdemeanor information that charged Plaintiff with assault in the third degree, harassment in the second degree, criminal possession of a weapon in the fourth degree, and endangering the welfare of a child.  (Defs.' 56.1 ¶ 72; Pl.'s Resp. 56.1 ¶ 72; *see also* Loomba Decl. Ex. L (Superseding Misdemeanor Information).)  By swearing to and signing the charging instruments, Burnett and Lloyd participated in the initiation of the prosecution.  *See Delanuez v. City of Yonkers*, No. 20-CV-4476, 2022 WL 16540682, at *7 (S.D.N.Y. Oct. 28, 2022) (holding that Plaintiff satisfied the first element of a malicious prosecution claim "by showing that officers . . . swore to and signed a felony complaint" (quoting *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382–83 (S.D.N.Y. 2005)).

As to the chain of causation, the Court determines that it cannot, at this stage, decide as a matter of law whether the causal chain was broken by the prosecutor's actions. Plaintiff claims that both the felony and misdemeanor indictments contained false facts. (Pl.'s Mem. at 13–14.) Specifically, Plaintiff contends the felony criminal indictment, which Burnett swore to, states that Plaintiff attacked Jose, even though Burnett knew based on his interview with Jose that that was not true. (*Id.* at 14–15; *see also* PSOAF ¶¶ 72, 75; Donnell Decl. Ex. 13 (Felony Comp.).) Similarly, Plaintiff asserts that the superseding misdemeanor, which Lloyd swore to, states that Plaintiff intended to cause physical injury to, and did cause injury to, a victim, even though there was no evidence to support such a contention. (Pl.'s Mem. at 15; *see also* PSOAF ¶¶ 72, 82; Donnell Decl. Ex. 17 (Superseding Misdemeanor Information).) Taking the record in the light most favorable to Plaintiff, a jury could find that Burnett and Lloyd knew that these facts were false at the time they swore to the charging instruments. Moreover, to the extent these facts are found to be false, the prosecutor's actions would not break the chain of causation. *Ortiz*, 523 F. Supp. 3d at 365 ("[T]he prosecutors cannot serve as a superseding cause where they relied on evidence fabricated by the defendant."). Therefore, the Court cannot grant summary judgment on the malicious prosecution claims on the grounds that the prosecutor's actions broke the causal chain.

### b. Probable Cause

Defendants also argue that Plaintiff's malicious prosecution claim fails because Burnett and Lloyd had probable cause to charge Plaintiff with each of the criminal offenses set forth in the accusatory instruments. (Defs.' Mem. at 16–17.)

"Probable cause is a 'complete defense' to malicious prosecution." *Rutherford*, 2023 WL 6395375, at *18 (quoting *Jeanty v. Cerminaro*, No. 21-1974-CV, 2023 WL 325012, at *5 (2d

Cir. Jan. 20, 2023) (summary order)); *see also V.A. v. City of New York*, No. 22-CV-773, 2023 WL 6254790, at *8 (S.D.N.Y. Sept. 26, 2023) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)) (same). "In the context of a malicious prosecution claim, probable cause under New York law is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Kurtz v. Hansell*, — F. Supp. 3d —, 2023 WL 2648190, at *8 (S.D.N.Y. Mar. 27, 2023) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)). Furthermore, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases," *Lewis v. Westchester County*, No. 20-CV-9017, 2023 WL 5610302, at *5 (S.D.N.Y. Aug. 30, 2023) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013)), and "unlike false arrest claims, the defendant must have possessed probable cause as to each offense charged," *id.* (quoting *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014)).

Here, the same facts that undermine the existence of probable cause to arrest in this case, (*see supra* Section II.B.1.a), also undermine the existence of probable cause to prosecute, *see Diop v. City of New York*, 50 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) (denying summary judgment on malicious prosecution claim because "the same facts that undermine the existence of probable cause to arrest in this case also undermine the existence of probable cause to prosecute"); *see also Walker v. Carrozzo*, — F. Supp. 3d —, 2023 WL 2664610, at *14 (S.D.N.Y. Mar. 28, 2023) (similar); *Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 319 (D. Conn. 2009) ("While probable cause for arrest is distinct from probable cause for prosecution, lack of probable cause to arrest implies lack of probable cause to prosecute."). To be sure, there are additional facts relevant to the probable cause determination in the malicious prosecution context. Namely, the information

learned after Plaintiff's arrest, especially during Jose's interview, including Jose's statements

about Plaintiff "bum-rushing" and pushing him.  (Defs.' 56.1 ¶ 63.)  However, these facts are

still in dispute, as evidenced by the fact that Jose testified during his deposition that these

statements are only somewhat accurate and not necessarily worded the way Jose would have

worded them.  (Pl.'s Resp. 56.1 ¶ 63; Donnell Decl. Ex. 3 (Jose Depo. Tr.) at 51:19–52:4.)

Accordingly, considering the totality of circumstances, the Court is unable to conclude as a

matter of law that there was probable cause to prosecute Plaintiff.  *See Walker*, 2023 WL

2664610, at *14 (denying defendants summary judgment on malicious prosecution claim, where

there are factual issues as to whether defendants had probable cause to prosecute plaintiff); *see*

*also Rutherford*, 2023 WL 6395375, at *18 (same).  Defendants thus are not entitled to summary

judgment, on basis of probable cause, on Plaintiff's malicious prosecution claims.

### c.  Qualified Immunity

Finally, Defendants contend, in a cursory sentence, that it was "not manifestly

unreasonable for plaintiff to be charged with the offenses listed in the felony complaint and

superseding information, and therefore[,] Burnett, and [] Lloyd . . . are entitled to qualified

immunity."  (Defs.' Mem. at 17 (citing *Peterec v. Hilliard*, No. 12-CV-3944, 2014 WL 6972475,

at *4 (S.D.N.Y. Dec. 8, 2014)).

As an initial matter, the Court will deem an argument waived, where a party's argument

is notably underdeveloped.  *See Piotrowski v. Rocky Point Union Free Sch. Dist.*, No. 18-CV-

6262, 2023 WL 2710341, at *13 (E.D.N.Y. Mar. 30, 2023) (where the party had only made

passing references to its argument in its briefing, the court held that the party's argument was "so

underdeveloped that the Court deem[ed] it waived" (quoting *Molina v. Faust Goetz Schenker &*

*Blee, LLP*, 230 F. Supp. 3d 279, 287 n.39 (S.D.N.Y. 2017)); *see also Grytsyk*, 2023 WL

6122693, at *9 n.7 ("Defendants do not set forth any discernable argument for qualified immunity with respect to the malicious prosecution claim. Therefore, the Court deems the argument waived."); *Dixon v. Stedman*, No. 22-CV-3581, 2023 WL 2710405, at *4 (E.D.N.Y. Mar. 30, 2023) (same); *Cardenas v. Edita's Bar & Rest., Inc.*, No. 17-CV-5150, 2021 WL 4480570, at *7 (E.D.N.Y. Sept. 30, 2021) (same). The Court finds that Defendants' passing remark that Burnett and Lloyd are entitled to qualified immunity on the malicious prosecution claims, without a sliver of an explanation, is deemed waived.

However, even assuming *arguendo* that Defendants properly presented the argument, it still fails on the merits. Based on the present record, Burnett and Lloyd are not entitled to qualified immunity from the malicious prosecution claims because, for the reasons discussed above, arguable probable cause is lacking, and the material facts are otherwise in dispute. (*See supra* Section II.B.1.a; Defs.' 56.1 ¶ 63; Pl.'s Resp. 56.1 ¶ 63; Donnell Decl. Ex. 3 (Jose Depo. Tr.) at 51:19–52:4.) *See Walker*, 2023 WL 2664610, at *18 ("Because the Court cannot determine whether there was arguable probable cause to arrest Plaintiff, it also cannot determine whether there was arguable probable cause to believe Plaintiff could be successfully prosecuted for the obstructing governmental administration offense or a controlled substance offense based on the heroin discovered after handcuffing."); *see also Grytsyk*, 2023 WL 6122693, at *8 (denying summary judgement because there was a genuine dispute of fact as to whether defendants had arguable probable cause to initiate prosecution.) Therefore, because there are questions that cannot be resolved by the Court as a matter of law at this stage, Burnett and Lloyd are not entitled to summary judgment on qualified immunity grounds.

### 4.  Supervisory Liability

Plaintiff also originally attempted to assert a supervisory liability claim pursuant to Section 1983 against, among others, Mastrogiorgio and McKennie.  (SAC ¶¶ 133-35.)[4] Defendants move for summary judgment as to this claim, arguing that Plaintiff cannot establish Mastrogiorgio's, or McKennie's personal involvement in the alleged constitutional deprivation, and therefore cannot maintain a Section 1983 supervisory liability claim against them.  (*See* Defs.' Mem. at 18).  Contrary to the Defendants' argument, Plaintiff states that Mastrogiorgio and McKennie were personally involved in Plaintiff's arrest because they signed and approved the Incident Reports regarding Plaintiff.  (*See* Pl.'s Mem. at 17–18.)  The Court finds both Defendants' and Plaintiff's arguments unavailing.

At the motion to dismiss stage, the Court determined that the Parties "argue[d] solely about specific [D]efendants' personal involvement in the underlying offenses," and therefore, that the Court would "review[] and adjudge[] only questions of personal involvement in the underlying violations rather than a separate [supervisory liability] claim."  (MTD Order at 35.) Following the Court's decision, the Plaintiff made no attempt to clarify that he sought to bring a separate supervisory liability claim.  Namely, Plaintiff did not seek to amend, submit a motion for reconsideration, file a letter trying to clarify, make any mention of this issue in the pre-motion letter regarding summary judgment, or take any other steps to modify the Court's understanding of the issue.  (*See generally* Dkt.)  For the first time since the MTD Order, the Parties, in their briefing for the instant Motion, provide argument related to a separate supervisory liability claim against Mastrogiorgio and McKennie.  (*See* Defs.' Mem. of Law in

---

[4] At this stage, Plaintiff only pursues a supervisory liability claim against Mastrogiorgio and McKennie.  (*See* Pl.'s Mem. at 16–18.)

Supp. to Mot. for Summ. J. (Defs.' Mem.) at 18–19 (Dkt. No. 72); Pl.'s Mem. at 16–18.) However, because the Court previously decided that the claim was not properly pled or argued as independent from Plaintiff's underlying claims, a separate supervisory liability claim did not survive the Motion to Dismiss.  (*See* MTD Order at 35.)  Accordingly, the Court need not address this already-dismissed claim on summary judgment.

### 5.  State Respondeat Superior Liability

Plaintiff has alleged a state respondeat superior liability claim against Mount Vernon premised on his state malicious prosecution claim.  (SAC ¶¶ 152–155; Pl.'s Mem. at 18.) Defendants have moved for summary judgment on this claim, arguing that, because they are entitled to summary judgment as a matter of law on the state malicious prosecution claim, Plaintiff's respondeat superior claim should also be dismissed.  (Defs.' Mem. at 20.)  Plaintiff, to the contrary, asserts that the Court should deny Defendants' motion for summary judgment on Plaintiff's state malicious prosecution claim, and therefore, also sustain Plaintiff's respondeat superior claim.  (Pl.'s Mem. at 18.)

"Under New York law, 'the doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment.'"  *Rizk v. City of New York*, 462 F. Supp. 3d 203, 230–31 (E.D.N.Y. 2020) (alteration adopted) (quoting *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 n.7 (2d Cir. 2015)); *see also Bailey v. City of New York*, 79 F. Supp. 3d 424, 451 (E.D.N.Y. 2015) ("New York courts have held municipalities liable under a theory of respondeat superior for malicious prosecution." (italics omitted)).  The respondeat superior claim, therefore, depends on the plaintiff establishing a state-law tort claim.  *See Rizk*, 462 F. Supp. 3d at 231; *see also Bellamy v. City of New York*, 914 F.3d 727, 744 n.17 (2d Cir. 2019) (same).

Here, the Court has denied Defendants' motion for summary judgment as to Plaintiff's state malicious prosecution claim against Burnett and Lloyd.  (*See supra* Section II.B.3.) Therefore, to the extent Plaintiff seeks to impose liability on Mount Vernon for the state malicious prosecution claim, he is allowed to proceed.  *Brathwaite*, 2023 WL 5713189, at *9 (holding that plaintiff's respondeat superior claim against the city could proceed because plaintiff's state malicious prosecution claim survived summary judgment); *Ramos v. City of New York*, No. 15-CV-6085, 2017 WL 3267736, at *12 (S.D.N.Y. July 31, 2017) (holding that because plaintiffs had a viable state claim, they could pursue their respondeat superior claim against the city), *on reconsideration*, No. 15-CV-6085, 2017 WL 3575697 (S.D.N.Y. Aug. 17, 2017); *Rhooms v. City of New York*, No. 11-CV-5910, 2017 WL 1214430, at *12 (E.D.N.Y. Mar. 31, 2017) (denying summary judgment on respondeat superior theory of liability where underlying state claims on which such liability would be predicated had survived summary judgment).  Thus, summary judgment on Plaintiff's respondeat superior claim is denied.

## III.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied. Specifically, Defendants' motion is denied as to Plaintiff's false arrest and unlawful search claims against Hylton and Cerqua, Plaintiff's federal and state malicious prosecution claims against Burnett and Lloyd, and Plaintiff's state respondeat superior liability claim against Mount Vernon.

The Court will hold a status conference on January 9, 2024, at 2:00PM.  The Clerk of Court is respectfully directed to terminate the pending Motion.  (*See* Dkt. No. 69.)

SO ORDERED.

Dated:   December 18, 2023
          White Plains, New York

KENNETH M. KARAS
United States District Judge